# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

DAVIES ENTERPRISES, LLC, CRUISING §
KITCHENS, LLC, CAMERON DAVIES & §
MARY K. DAVIES §
  §
    *Plaintiffs* §
V. §    **CIVIL CASE NO.: 5:23-CV-01527-JKP-HJB**
  §
BLUE SKY BANK & MARK C. TAYLOR §
  §
    *Defendants* §

## PLAINTIFFS' MOTION TO REMAND

TO THE HONORABLE JUDGE PULIAM:

COMES NOW, Plaintiffs, Davies Enterprises, LLC, Cruising Kitchens, LLC, Cameron Davies and Mary K. Davies (hereinafter collectively "Plaintiffs") and file this Motion to Remand respectfully requesting that this Court reject Defendants' previous improper removal, remand this matter to state court. In this regard, Plaintiffs would respectfully show unto this Honorable Court the following:

## I.    INTRODUCTION AND PROCEDURAL HISTORY

1. On or about August 25, 2021, Plaintiffs and Defendant Blue Sky Bank entered into entered into several Deed of Trust, Security Agreement and Fixture Filing documents plus Commercial Loan Agreements and associated Promissory Notes and /or guarantees of those various obligations (collectively the "Loan Documents"). On or about November 13, 2023, Defendant, Mark C. Taylor, sent three (3) Notices of Substitute Trustee's Sale seeking to non-judicially foreclose upon three (3) tracts of real property and improvements on December 5, 2023. This lawsuit was originally filed by Plaintiffs in the 438th Judicial District Court of Bexar County, Texas on or about December 4, 2023. A true and correct copy of Plaintiffs' Original Petition for Injunctive Relief

and Damages ("Plaintiffs' Original Petition") is attached hereto as Exhibit A and incorporated by reference herein as if fully copied and set forth at length. On December 4, 2023, Plaintiffs requested, and were granted, a Temporary Restraining Order against Defendants to prevent the attempted non-judicial foreclosure. A true and correct copy of the Temporary Restraining Order is attached hereto as Exhibit B and incorporated by reference herein as if fully copied and set forth at length.

2. The lawsuit alleges claim against both initial Defendants, Blue Sky Bank and Mark C. Taylor, arising out of efforts of Defendants to proceed with a non-judicial foreclosure on certain real property and improvements located in Bexar County, Texas. These claims included breach of contract, fraud, tortious interference with contract, declaratory judgment and injunctive relief. Specifically, the Plaintiffs alleged in the Plaintiffs' Original Petition that Defendant, Mark C. Taylor breached written contracts by failing to provide proper notices to Plaintiffs as required by the loan documents and Texas law and also in breach of the written Forbearance Agreement.

3. A Temporary Injunction hearing was scheduled for December 18, 2023, beginning at 9:00 a.m. in the presiding district court for Bexar County, Texas. This case was removed by Defendants on December 14, 2023, based upon diversity jurisdiction pursuant to 28 U.S.C. §1332(a). *See* Notice of Removal, Document 1, paragraph 8.

4. On or about December 27, 2023, Defendant, Mark C. Taylor sent an email to counsel for Plaintiffs advising that Defendants intend to file a Rule 12(b)(6)/12(c) Motion and advising of the alleged deficiencies in the Plaintiffs' Original Petition. On or about January 2, 2024, Plaintiffs filed a formal advisory with the Court advising that Plaintiffs intended to amend their complaint and on or about January 8, 2024, Plaintiffs filed their First Amended Complaint pursuant to this

Court's Standing Order in Civil Cases assigned to Judge Jason Pulliam. *See* Plaintiffs' First Amended Complaint, Document 8.

5. On or about January 8, 2024, Plaintiffs filed an Opposed Motion for Leave to Join Party (Motion for Leave") seeking leave to join Erik White as a named Defendant in this matter. *See* Motion for Leave to Join Party, Document 7. This Motion for Leave remains pending at the time of the filing of this Motion to Remand.

5. Plaintiffs' Motion to Remand is timely filed within the 30-day period provided by 28 U.S.C. §1447.

6. Since Defendant, Mark C. Taylor, and potential Defendant, Erik White, are both Texas citizens the complete diversity required for diversity jurisdiction does not exist in this case and Plaintiffs respectfully request that this Court remand this case back to District Court of Bexar County. , Texas.

## II. <u>ARGUMENTS AND AUTHORITIES</u>

<u>STANDARD OF REVIEW</u>

7. Federal courts are courts of limited jurisdiction and can only hear cases permitted under Article III of the Constitution and through a "jurisdictional grant authorized by Congress." *In re Fraser*, 75 F. Supp. 2d 572, 576 (E.D. Tex. 1999). Federal Courts are "duty-bound to examine their own subject-matter jurisdiction and may not proceed where it is apparent that jurisdiction does not exist." *Texas Medicine Resources, LLP v. Molina Healthcare of Texas, Inc.*, 356 F. Supp. 3d 612, 615 (N.D. Tex. 2019, (citing *Union Planters Bank National Association v. Salih*, 369 F. 3d 457, 460 (5th Cir. 2004)). If the court's subject matter jurisdiction is challenged, "the burden of proof falls on the party claiming jurisdiction, and the showing must be made by a preponderance of the evidence." *Vantage Trailers v. Beall Corporation*, 567 F. 3d 745, 748 (5th Cir. 2009).

8. Importantly, "any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Manguno v. Prudential Property & Casualty Insurance Company*, 276 F. 3d 720, 723 (5th Cir. 2002). Likewise, any "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Texas Medicine Resources, LLP*, at 616. If subject matter jurisdiction does not exist, "a federal court must remand the suit to the state court where it originated." *Nelson v. St. Paul Fire & Marine Insurance Company*, 897 F. Supp. 328, 330 (S.D. Tex. 1995).

NO DIVERSITY JURISDICTION

A.  Joinder of Defendant Erik White Will Destroy Diversity

9. In their Motion for Leave Plaintiffs seek leave to join Texas citizen, Erik White, as a Defendant based on acts and omissions of Erik White that were included in the Plaintiffs' Original Petition. In the event that the Motion for Leave is granted, joinder of Defendant, Erik White, will destroy the complete diversity required for this Court to maintain diversity jurisdiction. *Cobb v. Delta Exports, Inc.*, 186 F. 3d 675, 677 (5th Cir. 1999). In addition, joinder of Defendant, Erik White, will destroy diversity jurisdiction under the in-state Defendant barrier. *See Crockett v. R.J. Reynolds Tobacco Company*, 436 F. 3d 529, 532 (5th Cir. 2006).

B.  Defendant Mark C. Taylor is Not a Nominal Defendant

10. Defendants allege in the notice of removal that the citizenship of Defendant Mark C. Taylor is disregarded for purposes of diversity jurisdiction because Defendant, Mark C. Tayor is nominal party citing *Eisenberg v. Deutsche Ban Trust Co. Americas*, SA-11-CV-384-XR, 2011 WL 2636135 (W.D. Tex. July 5, 2011) in support of this proposition. This is true if, but only if, three conditions are met including, in applicable part, that the plaintiff did not allege defects in notice or

other misconduct by the trustee. This requirement is clearly not met in this case because Plaintiffs have alleged defects in notice and a breach of contract by the trustee, Defendant Mark C. Taylor.

11. In a very similar case Honorable Judge Orlando L. Garcia found that "[h]owever, in circumstances where a plaintiff asserts actual misconduct on the part of the trustee, a court must assess whether such allegations give rise to a reasonable basis for the plaintiff to recover against the trustee in state court." *Huerta v. United States Bank N.A.*, No. SA-13-CV-00987-OLG, 2014 WL 12586774 (W.D. Tex. April 28, 2014). In analyzing the caselaw regarding this issue, Judge Garcia noted that "[w]hen presented with lack of notice claims against non-diverse trustees, other federal district courts have declined to find improper joinder and have remanded the cases." *Supra* at 2 (internal citations omitted). In this case, there is no joinder issue because the initial lawsuit named the substitute trustee, Defendant, Mark C. Taylor, as a party and made direct claims against him. Under these circumstances it is clear that the required complete diversity does not exist in this case.

12. In the *Huerta* case, Judge Garcia discusses the notice requirements contained in §51.002 of the Texas Property Code and finds that these duties may also apply to the trustee citing *First State Bank v. Keilman*, 851 S.W. 2d 914, 924 (Tex App.- Austin 1993, writ denied). "Federal courts applying Texas law have consistently held that the Property Code requires that a debtor be served with two notices prior to foreclosure: a notice of default and a notice of sale." *Huerta,* at 2. Judge Garcia analyzes several cases that have found allegations concerning lack of the required notices is sufficient to make the trustee more than a nominal party and are sufficient to require a remand. In summary, Judge Garcia finds that " [t]hese cases affirm that a trustee is under a duty to ensure that notices of the foreclosure sale and default are sent in accordance with §51.002." *Id.* In this

case there was no notice of default sent to Plaintiffs in connection with the December 5, 2023, foreclosure sale.

C. Breaches of Contract

13. The August 25, 2021, Deed of Trust, Security Agreement and Fixture Filing that is the basis for Defendants' efforts to non-judicially foreclose upon the real properties and improvements in issue includes in applicable part in paragraph 10.04 as follows "If Grantor fails to reasonably cure within such 35-day period Beneficiary, at Beneficiary's option, may then proceed to cause Trustee to exercise the power of sale granted herein, including all statutory notice and sale provisions." A true and complete copy of one of the three Deed of Trust, Security Agreement and Fixture Filing documents is attached hereto as Exhibit C and incorporated by reference herein as if fully copied and set forth at length. This same paragraph 10.04 is included in all three Deed of Trust documents. This provision creates a contractual duty on the trustee to  meet the statutory notice and sale provisions when exercising the power of sale. Defendant, Mark C. Taylor, acting as Substitute Trustee, breached this duty.

14. The Forbearance Agreement provides in applicable part that "Lender agrees to forbear from exercising its rights and remedies under the Loan Documents through December 7, 2023 (the "Forbearance Period"), subject to paragraph (b) below and to the terms and conditions set forth herein." The three (3) Notice of Substitute Trustee's Sale sent by Defendant, Mark C. Taylor, are dated November 13, 2023, and constitute a direct and intentional violation of the terms of the Forbearance Agreement.

D. In-State Defendant Barrier Destroys Diversity Jurisdiction

15. The claims asserted against Defendant, Mark C. Taylor, destroy complete diversity required for diversity jurisdiction under the in-state Defendant barrier. *Crockett v. R.J. Reynolds*, Supra.

### III. <u>CONCLUSION</u>

16. The First Amended Complaint filed by Plaintiffs and the Plaintiffs Original Petition, filed prior to removal, clearly and unambiguously make claims of lack of notice and breach of contract directly against Defendant, Mark C. Taylor. Under these circumstances Defendant Mark C. Taylor is not a nominal Defendant and his Texas citizenship also destroys complete diversity required for this Court to have jurisdiction over this matter. In addition, in the event that leave is granted to join Erik White as a named Defendant, the Texas citizenship of Erik White will destroy diversity jurisdiction. Any ambiguity in Plaintiffs' pleading is "construed against removal and in favor of remand to the state court," and this case must, therefore, be remanded. *See Mumfrey v. CVS Pharmacy, Inc.*, 719 F. 3d 392, 397 (5th Cir. 2013) ("Any ambiguities are construed against removal and in favor of remand to state court."). Finally, the claims asserted against Texas citizen Mark C. Taylor and potentially asserted against Texas citizen Erik White, destroys diversity jurisdiction pursuant to the in-state Defendant barrier.

### IV. <u>CERTIFICATE OF CONFERENCE</u>

17. By my signature below I certify that I conferred with attorney Mark C. Taylor in a good faith effort to resolve the potential remand of this case to state court. Unfortunately, we were not able to reach any agreement because Mr. Taylor believes that this matter was properly removed based upon diversity jurisdiction and should not be remanded.

### VI. <u>PRAYER</u>

18. Based upon the above and foregoing, Plaintiffs request that the Court find that there is no diversity jurisdiction and this case should be immediately remanded to the 438th Judicial District Court of Bexar County, Texas, the state court from which it was previously removed.

Respectfully submitted,

David P. Strolle, Jr.
Texas Bar No: 19408700

GRANSTAFF, GAEDKE & EDGMON, P.C.
5535 Fredericksburg Road, Suite 110
San Antonio, Texas 78229
Telephone:     (210) 348-6600 ext. 203
Facsimile:     (210) 366-0892
E-mail:        dstrolle@caglaw.net

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of January, 2024, I electronically filed the foregoing

Motion to Remand with the Clerk of the Court using the CM/ECF system which will send

notification of such filing to the following counsel of record:

Mark C. Taylor
William R. "Trip" Nix
Nicholas R. Miller
HOLLAND & KNIGHT LLP
100 Congress Avenue, Suite 1800
Austin, Texas 78701

Facsimile:     (512) 685-6417
Email:         mark.taylor@hklaw.com
               trip.nix@hklaw.com
               nick.miller@hklaw.com

**ATTORNEYS FOR DEFENDANTS**

David P. Strolle, Jr.

EXHIBIT
A

NO. _____

| | | |
|---|---|---|
| DAVIES ENTERPRISE, LLC, CRUISING | § | IN THE DISTRICT COURT |
| KITCHENS, LLC, CAMERON DAVIES | § | |
| And MARY K. DAVIES | § | |
| *Plaintiffs* | § | |
| | § | |
| v. | § | ____JUDICIAL DISTRICT |
| | § | |
| BLUE SKY BANK and MARK C. | § | |
| TAYLOR | § | |
| *Defendant* | § | BEXAR COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION FOR INJUNCTIVE RELIEF AND DAMAGES

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, **DAVIES ENTERPRISE, LLC, CRUISING KITCHENS, LLC,**

**CAMERON DAVIES and MARY K. DAVIES** (hereinafter collectively "Plaintiffs") and file this

Original Petition against Blue Sky Bank ("BSB") and Mark C. Taylor, Substitute Trustee ("Taylor")

and for cause of action will respectfully show unto this Honorable Court the following:

### I.
### CLAIMS FOR RELIEF

Pursuant to Texas Rules of Civil Procedure 47, the Plaintiffs hereby submits this claim for

monetary relief in excess of One Million dollars ($1,000,000.00) relief. In this case, Plaintiffs are

also seeking non-monetary relief including injunctive relief.

### II.
### DISCOVERY CONTROL PLAN

Plaintiffs intend to conduct discovery under Level 3 of the Texas Rules of Civil Procedure.

### III.
### PARTIES

Plaintiff, **DAVIES ENTERPRISE, LLC**, is a Texas Limited liability Company with its principal

office located at 2100 Mannix Drive, San Antonio, Bexar County, Texas.

Plaintiff, **CRUISING KITCHENS, LLC**, is a Texas Limited liability Company with its principal

office located at 2100 Mannix Drive, San Antonio, Bexar County, Texas.

Plaintiffs, **CAMERON DAVIES** and **MARY K. DAVIES**, are individuals residing in San Antonio, Bexar County, Texas.

Defendant, **BLUE SKY BANK**, ("BSB") is an out of state financial institution authorized to do business in the State of Texas and may be served by serving Lydia Gonzales, its registered agent, at 13750 San Pedro, Suite 275, San Antonio, Texas 78232 or wherever she may be found.

Defendant, **MARK C. TAYLOR**, ("Taylor") is an individual and may be served at his office address 100 Congress Avenue, Suite 1800, Austin, Travis County, Texas 78701, or wherever he may be found.

## IV,
### FACTS

I.  On August 25, 2021, Plaintiffs signed several Deed of Trust, Security Agreement and Fixture Filing documents plus Commercial Loan Agreements and associated Promissory Notes and/or guarantees of those obligations in favor of BSB in connection with certain loans that were made by BSB to the Plaintiffs in connection with the purchase of the three (3) tracts of real property described in paragraph 2 below.

2.  The properties made the subject matter of this suit consist of unimproved real property and real property and improvements located at 14732 Bulverde Road and 314 Nolan Street all of which are located in San Antonio, Bexar County, Texas ("the Properties"). The Properties are more particularly described on the Exhibits to the three (3) Notices of Substitute Trustee's Sale previously filed by Defendants. A true and correct copy of these three (3) Notices are attached hereto as Exhibits A, B and C and are incorporated by reference herein as if fully copied and set forth at length.

3.  The Deed of Trust, Security Agreement and Fixture Filings and Commercial Loan Agreements and associated Promissory Notes include some mandatory obligations of BSB in order to conduct a Non-Judicial Foreclosure of the Properties. Included in BSB's obligations under the Deed of Trust is the duty to provide Plaintiffs with proper and timely notice of default and an opportunity to cure before BSB can accelerate the Term Loan Facilities, Commercial Loan Agreements and associated Promissory Notes.

4.      On or about August 14, 2023, Plaintiffs and BSB entered into a formal written Forbearance Agreement which provides, in applicable part, as follows:

**"Lender agrees to forbear from exercising its rights and remedies under the Loan Documents through December 7, 2023 (the "Forbearance Period"), subject to paragraph (b) below and to the terms and conditions set forth herein."**

A true and correct copy of the Forbearance Agreement is attached hereto as Exhibit D and is incorporated by reference herein as if fully copied and set forth at length.

5.      During the negotiations leading up to execution of the Forbearance Agreement, Mr. Barry Gibson, Vice President of BSB, expressly represented to the Plaintiffs that if the Plaintiffs made a payment of at least One Million dollars ($1,000,000.00) to BSB, this would cure all defaults and allow the Parties to void the Forbearance Agreement.

6.      Following execution of the Forbearance Agreement, BSB both directly and acting though its agent, the Private Receiver/Finance Administrator, Mr. Erik White of Haney Partners in Austin,  began implementing an intentional and calculated scheme to prevent Plaintiffs from taking actions necessary to bring the Plaintiffs obligations to BSB current. These actions included, but where not limited to, the following:

A.   Denying Plaintiffs, the ability to lease approximately fifty percent (50%) of the 314 Nolan property for rent of approximately Forty Thousand dollars ($40,000.00) per month. The debt service for 314 Nolan is approximately Twenty-Six Thousand dollars ($26,000.00) per month;

B.   Denying Plaintiffs, the ability to extract any equity from the Properties or other real property assets owned by Plaintiffs including removing real property assets of the Plaintiffs that were previously listed for sale; and,

C.   Interfering with and preventing Plaintiffs from reaching an agreement with Reef Global whereby Reef Global was going to make a lump sum cash payment to

Plaintiffs in the amount of approximately One Million Five Hundred Thousand dollars ($1,500,000.00).

7.     The Properties are currently posted for non-judicial foreclosure by Defendants on December 5, 2023 at the Bexar County Courthouse by the Substitute Trustee, Defendant Taylor. The Properties made the basis of the foreclosure sale are not ripe for foreclosure according to Texas law.

8.     The Properties are very valuable and essential to the business operations of Plaintiffs. The Forbearance Agreement specifically provides by its terms that BSB will forbear and from exercising its rights and remedies under the Loan Documents which include the Deed of Trust, Security Agreement and Fixture Filing documents with Plaintiffs as Grantor and BSB as Beneficiary. In addition, these same Loan Documents specifically give Plaintiffs the right to written notice of any default and time to cure. Plaintiffs have not received timely adequate and lawful notice and BSB has no right under Texas law to conduct a Non-Judicial Foreclosure in violation of the terms of the Forbearance Agreement.

9.     The Defendants have no legal right to foreclose on the Properties but have posted the Properties for foreclosure in violation of the Forbearance Agreement, the Loan Documents and Texas Law.

10.     Plaintiffs further request that the Defendants be Temporary Restraining Order be issued immediately and without notice restraining Defendants, and each of them, from proceeding with a non-judicial foreclosure on the Properties because the Plaintiffs have a substantial amount of equity in the Properties and foreclosure would result in an unjust enrichment to the Defendant.

11.     Plaintiffs have no adequate remedy al law and will suffer irreparable harm in that, unless restrained by this Honorable Court, Defendants will proceed to sell the Properties in question and foreclosure on the Deeds of Trust.

12.   Plaintiff asserts that $1,000.00 is an adequate bond for a restraining order in this case because the collateral of the loan is real property and improvements that cannot readily be transferred or moved anywhere.

## V.
## CONDITIONS PRECEDENT

13.   Plaintiffs assert that all conditions precedent to the filing of this lawsuit have occurred and/or been waived.

## VI.
## BREACH OF CONTRACT

14. Defendant, Blue Sky Bank, has breached the terms of the Forbearance Agreement and the Loan documents which has proximately caused damages to Plaintiffs for which they hereby sue.

## VII.
## FRAUD

15.   BSB, acting by and through its Vice President, Barry Gibson, made representations of material facts which were false when made or were made as positive assertions that were made recklessly without knowledge of the truth with the intent that the Plaintiffs rely upon those misrepresentations which the Plaintiffs did to their detriment.

## VIII.
## TORTIOUS INTERFERENCE WITH CONTRACT

16.   Defendant, Blue Sky Bank, both directly and acting through its agent, Mr. Erik White, knowingly and intentionally interfered with a contract entered into by and between Plaintiff, Cruising Kitchens, and third-party, Reef Global, whereby Reef Global was going to pay Cruising Kitchens approximately One Million Five Hundred Thousand dollars ($1,500,000.00). As a result of the acts and omissions of BSB, Reef Global did not make any payment to Cruising Kitchens thereby causing Cruising Kitchens to suffer damages in the amount of One Million Five Hundred Thousand dollars ($1,500,000.00) for which they hereby sue.

## IX.
## DECLARATORY JUDGMENT

17.    The declaratory judgment act provides that a person interest under a deed, will, written contract, or other writing constituting a contract may have the court determine any question of the construction of validity arising under the instrument and obtain a declaration of rights, status or other legal relations under it. *Texas Civil Practices & Remedies Code §37.004(a).* Plaintiffs request a declaratory judgment that BSB has no legal right to conduct a Non-Judicial Foreclosure on the Properties.

## X.
## INJUNCTIVE RELIEF

18.    Plaintiffs are entitled to injunctive relief against the Defendants and Plaintiffs will suffer imminent and irreparable harm as a result of improper conduct of the Defendants. In particular, the Plaintiffs will show that they have a probable right to the relief requested and they will suffer irreparable injury as a result or the acts of the Defendants for which there is no adequate remedy at law, . Therefore, the Plaintiffs request that this Honorable Court issue injunctive relief against the Defendants.  This Plaintiffs' Original Petition is verified as required by law.

## XI.
## ATTORNEY FEES

19.    Plaintiffs assert that it was necessary for Plaintiffs to hire the law firm of Granstaff, Gaedke & Edgmon, P.C. to represent Plaintiffs in this matter and enforce the Forbearance Agreement and Loan Documents previously entered into by the Parties by filing this lawsuit.  Plaintiffs are therefore requesting reimbursement from Defendants of all reasonable and necessary attorneys' fees and expenses incurred by Plaintiffs throughout the trial of this matter and any appeals

## XII.
## PRAYER

WHEREFORE PREMISES CONSIDERED Plaintiffs pray that this Honorable Court issue an Ex-Parte Temporary Restraining Order enjoining the Defendants from proceeding with the non-judicial foreclosure sale currently scheduled for December 5, 2023 beginning at 10:00 a.m. ·

and that Defendants be cited to appear and after notice and a hearing, the Plaintiffs recover a judgment against the Defendants for the following:

1.     a Temporary Injunction after notice and a hearing;

2.     actual damages in excess of the minimum jurisdictional limits of the court;

3.     a finding that BSB has no right to proceed with a Non-Judicial Foreclosure;

4.     reasonable and necessary attorneys' fees;

5.     specific and general damages (including penalties);

6.     prejudgment and post-judgment interest at the maximum rate allowed by law;

7.     court costs; and,

8.     all such other and further relief, at law or in equity to which Plaintiffs may, by this pleading or proper amendment hereto, show themselves justly entitled.

Respectfully submitted,

GRANSTAFF, GAEDKE & EDGMON, P.C.
5535 Fredericksburg Rd., Suite 110
San Antonio, Texas 78229
Telephone: (210) 348-6600
Facsimile: (210) 366-0892
Email: dstrolle@caglaw.net


By: _____
     David P. Strolle, Jr.
     State Bar No. 19408700
     **ATTORNEY FOR PLAINTIFFS**

## VERIFICATION

**STATE OF TEXAS**

**COUNTY OF BEXAR**

Before me, the undersigned notary, on this day personally appeared affiant, Cameron Davies, a person whose identity is known to me and under oath testified as follows:

"My name is Cameron Davies. I am an officer and authorized representative of Davies Enterprises, LLC and Cruising Kitchens, LLC. I am over 18, have never been convicted of a crime and I am otherwise qualified to make this verification.

I have read Section IV. of the Plaintiffs' Original Petition for Injunctive Relief and Damages and hereby verify that the facts stated in that Section IV. entitled Facts are within my personal knowledge and are true and correct."

_____
Cameron Davies, Individually and as
Authorized Agent of Davies Enterprises,
LLC and Cruising Kitchens, LLC


SWORN TO and SUBSCRIBED before me the undersigned notary public on this the 4 day of December, 2023.

BLANCA A LIMON
Notary Public, State of Texas
My Comm. Exp. 06-01-2026
Notary ID 13378979-2

_____
Notary Public, State of Texas



**EXHIBIT B**

## NO. 2023-CI-25557

| | | |
|---|---|---|
| DAVIES ENTERPRISE, LLC, CRUISING KITCHENS, LLC, CAMERON DAVIES And MARY K. DAVIES *Plaintiffs* | § § § § § | IN THE DISTRICT COURT |
| v. | § § | 438th JUDICIAL DISTRICT |
| BLUE SKY BANK and MARK C. TAYLOR *Defendant* | § § § | BEXAR COUNTY, TEXAS |

### TEMPORARY RESTRAINING ORDER

On December 4, 20023, the Plaintiffs Original Petition for Injunctive Relief and Damages filed by Plaintiffs, **DAVIES ENTERPRISE, LLC, CRUISING KITCHENS, LLC, CAMERON DAVIES AND MARY K. DAVIES,** seeking a Temporary Restraining Order was heard before this Honorable Court.

Based upon the pleadings, records, documents filed by counsel, and the arguments of counsel at the hearing, IT CLEARLY APPEARS:

A. The unless Defendants, Blue Sky Bank and Mark C Taylor, Substitute Trustee, are immediately restrained from proceeding with a non-judicial foreclosure of the real property and improvements described on the Exhibits to the three (3) Notices of Substitute Trustee's Sale attached to Plaintiffs Original Petition for Injunctive Relief and Damages as Exhibits A, B and C, Defendants, Blue Sky Bank and Mark C Taylor, will proceed with the non-judicial foreclosure sale on December 5th, 2023 beginning at 10:00 a.m. which is before notice and a hearing on Plaintiff's request for a temporary injunction can be held.

B. Plaintiffs will suffer irreparable harm if Defendants, Blue Sky Bank and Mark C. Taylor, are not immediately restrained because no adequate remedy at will give Plaintiffs complete, final relief because once the non-judicial foreclosure sale is complete it is final.

DOCUMENT SCANNED AS FILED

IT IS THEREFORE ORDERED, ADJUGED AND DECREED that Defendants, BLUE SKY BANK and MARK C TAYLOR, and all of Defendants officers, agents, servants, employees, successors and assigns, and the attorneys are ORDERED to immediately cease and desist from proceeding with the non-judicial foreclosure sale of the real property and improvements previously noticed. and scheduled for December 5, 2023 beginning at 10:00 a.m. from the date of entry of this order until fourteen (14) days thereafter, or until further order of this Court.

IT IS FURTHER ORDERED ADJUDGED AND DECREED that Plaintiff's request for a temporary injunction is set to be heard on December 18th, 2023 at 9:00 a.m. in the Presiding District Courtroom (Room 109/ 1st floor) located in Bexar County Courthouse, 100 Dolorosa, San Antonio, Texas 78205. Defendants, Blue Sky Bank and Mark C Taylor, are commanded to appear at that time and show cause, if any exist, why a temporary injunction should not be issues against said Defendants.

At the designated time above, report in-person to the Presiding Civil District Courtroom (Room 109) located at the Bexar County Courthouse. 100 Dolorosa, San Antonio, Texas 78205. If you plan to introduce documents and evidence during your hearing, you must prepare to share them on Zoom using personal computer or smart device equipped with a wireless modem or air card and Zoom app or Zoom software installed, Wi-Fi may not be available at court.

1. Time Announced is 2 hours
2. Telephone number and emails for all attorneys or self-represented litigants

Mark C Taylor Mark.Taylor@hklaw.com

Blue Sky Bank c/o Lydia Gonzales 13750 San Pedro, Suite 275, San Antonio, Texas 78232.

The Clerk of the above-entitled Court shall issue a temporary restraining order in conformity with the law and the rems of this order upon the filing by Plaintiffs of the bond hereinafter set.

This Order shall not be effective until Plaintiff's deposit with the Clerk, a bond in the amount of $ 1000⁰⁰ in conformity with the law.

DEC 0 4 2023

SIGNED and ENTERED on _____ at _____

_____
Judge Presiding

Rosie Alvarado
Presiding Judge
438th Judicial District
Bexar County, Texas

Respectfully submitted,

GRANSTAFF, GAEDKE & EDGMON, P.C.
5535 Fredericksburg Rd., Suite 110
San Antonio, Texas 78229
Telephone: (210) 348-6600
Facsimile: (210) 366-0892
Email: dstrolle@caglaw.net

By: _____
David P. Strolle, Jr.
State Bar No. 19408700

**ATTORNEY FOR PLAINTIFFS**

Doc# 20210236808 08/26/2021 2:50PM Page 1 of 26 Lucy Adame-Clark, Bexar County Clerk



Recordation Requested By:
Blue Sky Bank
3353 East 41ˢᵗ Street
Tulsa, OK 74135

Send Tax Notices To:
Davies Enterprises, LLC
1314 East Sonterra Blvd.
San Antonio, TX 78258

---

(SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY) *7A# 21006790*

## DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING
## CITY OF SAN ANTONIO, COUNTY OF BEXAR, STATE OF TEXAS
[ 314 Nolan Street ]

**THIS DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING** (the "Deed of Trust") made this 25th day of August, 2021, by and between **DAVIES ENTERPRISES, LLC,** a Texas limited liability company, having a mailing address of 1314 East Sonterra Blvd., San Antonio, Texas 78258 ("Grantor"), party of the first part, **GENTNER F. DRUMMOND,** having a mailing address of Drummond Law, PLLC, 1500 South Utica Avenue, Suite 400, Tulsa, Oklahoma 74104 ("Trustee"), party of the second part, and **BLUE SKY BANK,** having a mailing address of 3353 East 41ˢᵗ Street, Tulsa, Oklahoma 74135 ("Beneficiary") party of the third part.

Capitalized terms herein are defined in Article 2.00.

## 1.00   RECITALS

1.01   *The Loan.*  Grantor is indebted to Beneficiary for a Term Loan Facility in the principal sum of FOUR MILLION FOUR HUNDRED SIXTY-FOUR THOUSAND FIVE HUNDRED THIRTY-FOUR AND 00/100 DOLLARS ($4,464,534.00), as evidenced by the Grantor's Commercial Loan Agreement of even date ("Loan Agreement") and its associated promissory note, as well as certain commercial guarantees of repayment of said Note to the Beneficiary under, in part, that certain Loan Agreement.

1.02   *Obligations Secured.*  This Deed of Trust secures (a) the full and punctual payment of the Loan according to the terms of the Note, (b) the payment of all sums due to Beneficiary according to the terms of any of the Loan Documents, and (c) the performance of, and compliance with, all of the obligations of Grantor (express or implied) contained in the Loan Documents.

## 2.00   DEFINITIONS.  Whenever capitalized in this Deed of Trust, the following terms shall have the meaning given in this Section 2.00, unless the context clearly indicates a contrary intent.

2.01   *Assignment of Leases And Rents.*  "Assignment of Leases and Rents" means the general Assignment Of Leases and Rents in favor of Beneficiary executed by Grantor of even date herewith, pursuant to which Grantor has, among other things, assigned rents under all Leases to Beneficiary as additional security for the Loan.

2.02     *Beneficiary.*  "Beneficiary" means **BLUE SKY BANK**, Beneficiary's successors and assigns, and any subsequent holder of the Note.

2.03     *Controlling Party.*  "Controlling Party" means any Person, directly or indirectly, possessing the power to direct or cause the direction of the management and policies of Grantor, whether through the ownership or control of voting securities or rights, by contract or otherwise.

2.04     *Deed of Trust.*  "Deed of Trust" means this instrument, including all current and future supplements, amendments, and attachments thereto.

2.05     *Default.*  "Default" means: (a) the failure of Grantor to perform, cause to be performed, abide by, comply with, or observe any duty or obligation imposed upon Grantor by the Loan Documents, if not cured within any applicable grace period; (b) the breach of any of Grantor's warranties or covenants contained in any of the Loan Documents; (c) a misrepresentation by Grantor, Grantor's counsel, or any other Person on behalf of Grantor, in any of the Loan Documents; and (d) any event, happening, or condition which would constitute an Event of Default if not cured within any applicable grace period.

2.06     *Encumbrances.*  "Encumbrances" includes all liens, mortgages, rights, leases, restrictions, easements, deeds of trust, covenants, agreements, rights of way, rights of redemption, security interests, conditional sales agreements, land installment contracts, options, and all other burdens or charges.

2.07     *Event of Default.*  "Event of Default" has the meaning given and provided in Section 10.01.

2.08     *Escrow Account.*  "Escrow Account" means the Account which may be maintained pursuant to Section 6.02.

2.09     *Grantor.*  "Grantor" means the party identified as such in the introductory paragraph of this Deed of Trust, and Grantor's successors and assigns, including any subsequent owner of all or any portion of Grantor's interest in the Trust Property.

2.10     *Guaranty.*  "Guaranty" means the respective Commercial Guaranty in favor of Beneficiary executed by the following:

(i)      Cruising Kitchens, LLC;
(ii)     Cameron Davies, individually; and
(iii)    Mary K. Davies, Individually,

pursuant to which the above-named guarantee, among other things, the full and prompt payment and performance of the Borrower's obligations under the Loan Documents.

2.11   *Land.*  "Land" means the land more particularly described in Exhibit "A" to this Deed of Trust.

2.12   *Law.*  "Law" means all federal, state, county, and municipal laws, regulations, rules, and ordinances, and all rules, regulations and orders of any other governmental authority including common law and rulings, decisions and interpretations of all judicial, quasi-judicial, and administrative bodies.

2.13   *Lease.*  "Lease" means each lease which purports to convey any interest of Grantor in any portion of the Trust Property and includes subleases and assignments of leases.

2.14   *Legal Action.*  "Legal Action" includes all suits or other proceedings brought at law or in equity or before any administrative agency, governmental body, or arbitrator which in any manner relate to the Trust Property or arise out of or relate to any of the Loan Documents.

2.15   *Loan.*  "Loan" means the loan by Beneficiary to the Grantor in the principal amount of FOUR MILLION FOUR HUNDRED SIXTY-FOUR THOUSAND FIVE HUNDRED THIRTY-FOUR AND 00/100 DOLLARS ($4,464,534.00), as evidenced by the Note.

2.16   *Loan Documents.*  "Loan Documents" means this Deed of Trust, the Term Note, the Commercial Loan Agreement, the Security Agreement and the Limited Commercial Guaranties, and any and all certificates, opinions, assignments and other documents executed in connection herewith or therewith, and all current and future supplements, amendments, and attachments thereto.

2.17   *Note.*  "Note" shall mean the promissory note of Grantor of even date herewith in the principal sum of FOUR MILLION FOUR HUNDRED SIXTY-FOUR THOUSAND FIVE HUNDRED THIRTY-FOUR AND 00/100 DOLLARS ($4,464,534.00), payable to the order of Beneficiary and evidencing the Loan, including all current and future supplements, amendments and attachments thereto and having a maturity date of August 25, 2031, subject to future extensions or modifications.

2.18   *Operate.*  "Operate" means to operate, use, manage, lease, contract, and control, including the right to repair, renew, replace, alter, add, better, and improve.

2.19   *Penalty Rate.*  "Penalty Rate" means an interest rate of **five (5.00%) percentage** points per annum above the contract interest rate otherwise payable on the Loan pursuant to the terms and provisions of the Note, during the time period that the Penalty Rate is applicable.

2.20   *Permitted Encumbrances.*  "Permitted Encumbrances" means this Deed of Trust and all Encumbrances as to which Beneficiary has given Beneficiary's prior written approval, liens arising for real estate taxes or public charges for sewage, water, drainage or other public improvements not yet due and payable, liens being contested as permitted herein, and Leases not in violation of Section 7.04.

2.21    *Person.* "Person" means any individual, corporation, partnership, association, trust, joint venture, or any other legal entity.

2.22    *Property.* "Property" has the meaning given in Section 3.03.

2.23    *Real Property.* "Real Property" means the Land, together with the improvements and rights identified in Section 3.01 and all other portions of the Trust Property which legally may be deemed to be real property under Section 3.07.

2.24    *Rents.* "Rents" includes all rents, profits, royalties, issues, revenues, income, proceeds, earnings, and products generated by or arising out of the Trust Property.

2.25    *Risk.* "Risk" includes risk of loss or damage by fire, lightning, windstorm, hail, explosion, riot, riot attending a strike, civil strife, civil commotion, aircraft, vehicles, smoke, vandalism, malicious mischief, boiler explosion, and any other risk customarily insured against by persons operating property similar in kind to the Trust Property.

2.26    *Taking.* "Taking" includes any taking by condemnation or eminent domain, any sale in lieu of condemnation under threat thereof, the alteration of the grade of any street, or any other injury to or decrease in the value of the Trust Property by any public or quasi-public authority or corporation or any other person having the power of eminent domain.

2.27    *Taxes.* "Taxes" includes all taxes, excises, documentary stamp and transfer taxes, recording taxes, assessments, and other public charges levied or assessed upon the Trust Property, upon the Loan, or upon any Loan Document.

2.28    *Tenant.* "Tenant" means any lessee of Grantor under any Lease, and any sub-lessee or assignee of a Lease.

2.29    *Title Policy.* "Title Policy" means that certain pro forma policy of title insurance issued by Fidelity National Title, File No. FAH21006790.

2.30    *Trustee.* "Trustee" means **Gentner F. Drummond**, or any additional, successor, replacement, or substitute trustee permitted by Section 9.02.

2.31    *Trust Property.* "Trust Property" has the meaning given in Section 3.06.

2.32    *Uniform Commercial Code.* "Uniform Commercial Code" means the Uniform Commercial Code as adopted by the States of Oklahoma and Texas, and any amendments thereto or reenactments thereof.

## 3.00   GRANTING CLAUSES.

3.01    *Lien on Real Property.* Grantor, in consideration of the Loan and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, grants and assigns to

Trustee, in trust for the benefit of Beneficiary, all the Land situated at **314 Nolan Street, City of San Antonio, County of Bexar, State of Texas**, described more particularly in **Exhibit "A"** attached hereto as a part hereof, together with (a) all buildings and improvements now or hereafter located thereon, (b) all rights, rights of way, air rights, riparian rights, franchises, licenses, easements, tenements, hereditaments, appurtenances, accessions and other rights and privileges now or hereafter belonging to the Land or the buildings and improvements thereupon, now owned or hereafter acquired by Grantor.

3.02   *Lien on Fixtures and Personal Property.*   Grantor further grants and assigns to Trustee all of the machines, apparatus, equipment, fixtures and articles of personal property now or hereafter located on the Land or in any improvements thereon (other than that owned by any Tenant), and all the right, title and interest of the Grantor in and to any of such property which may be subject to any title retention or security agreement or instrument having priority over this Deed of Trust.

3.03   *Property.*   All of the property described in Sections 3.01 and 3.02 is hereinafter collectively called the "Property."

3.04   *Lien on Rents and Other Rights.*   Grantor further grants and assigns to Trustee, in trust for the benefit of Beneficiary, (a) all Rents, including, without limitation, to the extent permitted by applicable law, all cash or security deposits to secure performance by Tenants (whether such cash or securities are to be held until the expiration of the terms of Leases or are to be applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms), (b) all of the estate, right, title, use, claim and demand of every nature whatsoever, at law or in equity, which Grantor may now have or may hereafter acquire in and to the Property, and (c) all right, title and interest of Grantor in and to all extensions, betterments, renewals, substitutes and replacements of, and all additions and appurtenances to, the Property, hereafter acquired by or released to Grantor, or constructed, assembled or placed by or for Grantor on the Property, and all in conversion of the security constituted thereby.

3.05   *Lien on Insurance Policies and Condemnation Awards.*   Grantor further grants and assigns to Trustee, in trust for the benefit of Beneficiary, all insurance policies and insurance proceeds pertaining to the Property and all awards or payments, including interest thereon and the right to receive the same, which may be made with respect to any of the Property as a result of any taking or any injury to or decrease in the value of the Property.

3.06   *The Trust Property.*   All of the property described in this Article 3.00 is collectively called the "Trust Property."

3.07   *Security Interest under the Uniform Commercial Code.*   Any portion of the Trust Property which by law is or may be real property shall be deemed to be a part of the Real Property for the purposes of this Deed of Trust.   The remainder of the Trust Property shall be subject to the Uniform Commercial Code and this Deed of Trust shall constitute a Security Agreement with respect thereto. Grantor hereby grants to Beneficiary a security interest in that portion of the trust Property not deemed a part of the Real Property for the purpose of securing performance of all of Grantor's obligations under the Loan Documents.   With respect to such security interest

Doc# 20210236808 08/26/2021 2:50PM Page 6 of 26 Lucy Adame-Clark, Bexar County Clerk

(a) Beneficiary may exercise all rights granted or to be granted a secured party under the Uniform Commercial Code and (b) upon the occurrence of an Event of Default Beneficiary shall have a right of possession superior to any right of possession of Grantor or any person claiming through or on behalf of Grantor.

**4.00   HABENDUM CLAUSE AND DEFEASANCES.**

4.01   *Habendum Clause.*  Trustee shall have and hold the Trust Property in fee simple, upon the terms and trust herein set forth.

4.02   *Termination of the Trust.*  If all obligations of Grantor under this Deed of Trust and the other Loan Documents, are paid and satisfied in accordance with the terms hereof and thereof, the estate hereby granted shall cease and the Trust Property shall be released to Grantor, at the reasonable cost of Grantor, and Beneficiary shall promptly (within ten (10) business days) prepare and record a release, in form reasonably acceptable to Grantor, of the Deed of Trust and all other related instruments which have been previously recorded in connection with the Loan.

**5.00   REPRESENTATIONS AND WARRANTIES.**

5.01   *Warranty of Title and Further Assurances.*  Grantor warrants that it has the right and authority to convey the Trust Property and warrants generally title to the Trust Property and that Grantor will execute such further assurances as may be requested.

5.02   *Purpose of the Loan.*  Grantor warrants that the Loan is given for an actual loan of money for business purposes and not for personal, residential or agricultural purposes.

5.03   *Existence, Good Standing, Power and Authority of Grantor.* · Grantor is a limited liability company of the State of Delaware, is in good standing and doing business in the State of Texas, and will maintain Grantor's good standing and existence until all of Grantor's obligations under the Loan Documents have been performed and satisfied.  The execution and delivery of the Loan Documents, the carrying out of the transactions contemplated by the loan Documents, and the performance of Grantor's and any guarantor's obligations under the Loan Documents, have been duly authorized by all necessary action and will not conflict with or result in a breach of Law or any agreement or other instrument to which Grantor or any guarantor is bound.  The Loan Documents are valid and binding on Grantor and any guarantor thereof and are enforceable against Grantor and each such guarantor in accordance with their respective terms, as applicable.

**6.0   COVENANTS, RIGHTS, AND DUTIES OF GRANTOR GENERALLY.**

6.01   *Covenant to Pay Loan and to Perform Obligations under the Terms of the Loan Documents.*  Grantor covenants that Grantor shall punctually (a) pay to Beneficiary the principal and interest of the Loan and all other costs and indebtedness secured hereby according to the terms of the Note and other Loan Documents, and (b) perform and satisfy all other obligations of Grantor under the Loan Documents.

Doc# 20210236808 08/26/2021 2:50PM Page 7 of 26 Lucy Adame-Clark, Bexar County Clerk

6.02    *Escrow Account*

6.02.1  Upon written request of Beneficiary, Grantor shall pay to Beneficiary monthly installments, each of which shall be equal to one-twelfth (1/12) of the sum of (a) the estimated annual premiums for all insurance policies required by Sections 8.01, 8.02 and 8.03 hereof, and (b) the estimated annual Taxes pertaining to the Trust Property, to be held by Beneficiary in the Escrow Account and disbursed by Beneficiary to pay the insurance premiums as they become due and Taxes before any penalty or interest shall accrue thereon. Payments shall be made on the day of the month designated by Beneficiary. No interest shall be payable by Beneficiary on the Escrow Account unless, and then only to the extent that, applicable Law shall otherwise require. All overpayments to the Escrow Account shall be applied to reduce future payments to the Escrow Account, if any, or shall be returned to Grantor, in the sole discretion of Beneficiary.

6.02.2  Upon the reasonable written request of Beneficiary, Grantor shall pay such additional sums into the Escrow Account as Beneficiary reasonably determines are necessary, so that one month prior to the date Grantor is required to make payments of insurance premiums, or Taxes, as the case may be, payments can be made therefor out of the Escrow Account.

6.02.3  Grantor hereby grants Beneficiary a security interest in the sums on deposit in the Escrow Account to secure the obligations secured hereby, and upon the occurrence of an Event of Default, Beneficiary may, unless prohibited by applicable Law, apply the balance of the Escrow Account to Operate the Trust Property or to satisfy Grantor's obligations under the Loan Documents, as Beneficiary may reasonably elect.

6.03    *Compliance with Laws.* Grantor shall materially comply with all Laws a breach of which would materially and adversely affect (a) the financial condition of Grantor, (b) the ability to use buildings and other improvements on the Land for the purposes for which they were designed or intended, (c) the value or status of the Trust Property, or (d) the value or status of the Trustee's title to the Trust Property.

6.04    *Notice with Respect to Ownership and Control of Grantor.* If Grantor is a limited liability company Grantor will at all times promptly notify Beneficiary of all changes in ownership of membership interests of Grantor and any other change with respect to the identity of a Controlling Party. At any time Beneficiary may request, Grantor shall furnish a complete statement, sworn to under penalty of perjury by a manager/managing member of Grantor setting forth all of the members of Grantor and the extent of their respective membership interest or control (but not their financial interest or investment in same). In the event Grantor is aware of any other Person having a beneficial interest in such membership interests, the statement shall also set forth the name of such Person and the extent of all such interests.

6.05    *Statement of Amount Owing and Defenses.* Within thirty (30) days after its actual receipt of a written request from Grantor, Beneficiary shall certify, in writing, the amount of principal and interest then owing on the Loan, with Beneficiary to reasonably assist with such calculations.

Doc# 20210236808 08/26/2021 2:50PM Page 8 of 26 Lucy Adame-Clark, Bexar County Clerk

6.06   *Changes in Applicable Tax Laws.*   In the event (a) any Law is hereafter enacted which imposes a Tax upon the Loan, any of the Loan Documents, or the transactions evidenced or contemplated by any (of the Loan Documents, or (b) any Law now in force governing the taxation of deeds of trust, debts secured by deeds of trust, or the manner of collecting any such Tax shall be changed or modified, in any manner so as to impose a Tax upon the Loan, any of the Loan Documents or the transactions evidenced or contemplated by any of the Loan Documents, (including, without limitation, a requirement that revenue stamps be affixed to any or all of the Loan Documents), Grantor promptly will pay any such tax. If Grantor fails to make prompt payment, or if any Law either prohibits Grantor from making the payment or would penalize Beneficiary if Grantor makes the payment, then the failure, prohibition, or penalty, shall entitle Beneficiary to exercise all rights hereunder as though an Event of Default had occurred.

6.07   *Further Assurances and Continuation Statements.*   Grantor from time to time (but no more often than quarterly) shall execute, acknowledge, deliver and record, at Grantor's sole cost and expense, all further instruments, deeds, conveyances, supplemental deeds of trust, assignments, financing statements, transfers, and assurances as in the reasonable opinion of Beneficiary's counsel may be reasonably necessary (a) to preserve, continue, and protect the interest of Trustee or Beneficiary in the Trust Property, (b) to perfect the grant to the Trustee of every part of the Trust Property, (c) to facilitate the execution of this trust, (d) to secure the rights and remedies of Trustee and Beneficiary under this Deed of Trust and the other Loan Documents, or (e) to transfer to any successor Trustee or purchaser at a sale hereunder the Trust Property, funds, and powers now or hereafter held in trust hereunder. Grantor, at the prior written request of Beneficiary, shall promptly execute any continuation statements required by the Uniform Commercial Code to maintain the lien on any portion of the Trust Property subject to the Uniform Commercial Code.

6.08   *Expenses.*   Grantor shall reimburse Beneficiary and Trustee for any sums actually incurred, including attorney's fees and expenses, incurred or expended by them (a) in connection with any action or proceeding reasonably necessary to sustain the lien, security interest, priority, or validity of any Loan Document, (b) to protect, enforce, interpret, or construe any of their rights under the Loan Documents, (c) for any title examination or title insurance policy relating to the title of the Trust Property, or (d) for any other purpose contemplated by the Loan Documents. Grantor shall, upon written demand, pay all such sums. All such reasonable sums so expended by Beneficiary and/or Trustee shall be secured by this Deed of Trust. In any action or proceeding to foreclose this Deed of Trust or to recover or collect the Loan, the provisions of Law allowing the recovery of costs, disbursements, and allowances shall be in addition to the rights given by this Section 6.08.

**7.00   RIGHTS AND DUTIES OF GRANTOR WITH RESPECT TO MANAGEMENT AND USE OF THE TRUST PROPERTY.**

7.01   *Control by Grantor.*   Until the happening of an Event of Default, Grantor shall have the right to possess and enjoy the Trust Property and, except as prohibited by the Loan Documents, to receive the Rents.

7.02   *Management.*   At all times Grantor shall provide competent and responsible management to Operate the Trust Property.  If Beneficiary so requests, all management and service contracts involving the Trust Property shall be subject to reasonable approval in writing by Beneficiary prior to their execution and, once approved by Beneficiary, shall not be amended or terminated without Beneficiary's prior written approval, which approval will not be unreasonably withheld.

7.03   *Financial Statements; Books and Records.*   Grantor shall furnish to Beneficiary annual financial and operating statements of Grantor and of the Trust Property.  Such statements shall show all items of income and expense for the operation of the Trust Property, shall be certified by Grantor and shall be prepared in accordance with generally accepted accounting principles applied on a consistent basis.  All such financial and operating statements shall be supplied not later than the dates provided for in the Loan Agreement.  Grantor promptly will advise Beneficiary of any material change in such fiscal year.  Grantor agrees to make Grantor's books and records relating to the operation of the Trust Property available for inspection by Beneficiary, upon request at any reasonable time (but not more often than quarterly), at Grantor's principal place of business or at such other location in the State of Texas as Beneficiary may reasonably request.

7.04   *Leases.*   All Leases shall be subject to the prior written approval of Beneficiary, which approval will not be reasonably withheld.  Grantor will materially comply with Grantor's obligations under all Leases.  Grantor, within thirty (30) days after the written request from Beneficiary, shall deliver to Beneficiary a detailed list and description of all Leases with copies thereof and such additional information as may be requested by Beneficiary.  Upon demand by Beneficiary, Grantor will transfer and assign to Beneficiary or Trustee, in a form reasonably satisfactory to Beneficiary, Grantor's interest in any Lease as further security for the obligations secured hereby.  No such assignment shall impose upon Trustee or Beneficiary any liability to perform Grantor's obligations under any Lease.

7.05   *Enforcement of Leases, Amendment, Waiver, etc.*   Grantor will reasonably enforce all Leases according to their terms and shall take such action to that end as may be reasonably requested by Trustee or Beneficiary, regardless of whether any such Lease has been assigned to Beneficiary or Trustee. Grantor shall not, without the prior written consent of Beneficiary, which consent will not be unreasonably withheld, (a) cancel or terminate, or consent to or accept any cancellation, termination, or surrender of any Lease, or permit any event with in Grantor's control to occur which would terminate or cancel any Lease, (b) amend or materially modify any Lease, (c) waive any material default under or breach of any Lease, (d) consent to or permit any prepayment or discount of rent or advance rent under any Lease, or (e) give any consent, waiver, or approval under any Lease or take any other action with respect to any Lease which may impair the value of Beneficiary's interest in the Trust Property or the position or interest of Trustee with respect to the Trust Property. Grantor shall materially comply with and perform all duties and obligations imposed upon or assumed by Grantor in all Leases.

7.06   *Subordination and Attornment.*   In the event of a foreclosure sale pursuant to this Deed of Trust, each Tenant shall, upon prior written request, attorn to and acknowledge any purchaser at foreclosure or grantee in lieu of foreclosure as landlord and the purchaser will not be

9

Doc# 20210236808 08/26/2021 2:50PM Page 10 of 26 Lucy Adame-Clark, Bexar County Clerk

required to credit any Tenant under any Lease with rent paid more than one (1) month in advance. All Leases shall be subject and subordinate to modifications of and amendments to the Loan Documents and any additional financing or refinancing of the Trust Property by or for Beneficiary.

7.07   *Restriction on Assignment of Rents.*   Grantor shall not assign the Rents arising from the Trust Property or any part thereof or any interest therein without the prior written consent of Beneficiary.  Any attempted assignment, pledge, hypothecation, or grant without such consent shall be null and void.

7.08   *Alterations and Additional Improvements.*   Grantor shall make no structural alterations or material nonstructural alterations to the Trust Property or construct any additional improvements on the Land without the prior written consent of Beneficiary, which consent will not be unreasonably withheld.  All alterations or improvements shall be completed and paid for by Grantor within a reasonable time.  All alterations or improvements shall be erected (a) in a good and workmanlike manner strictly in accordance with all applicable Law, (b) entirely on the Land, (c) without encroaching upon any easement, right of way, or land of others, (d) so as not to violate any applicable use, height, set-back or other applicable restriction, and (e) without permitting any mechanic's lien to attach to the Trust Property which is not being contested as permitted in Section 7.13.  All alterations, additions, and additional improvements to the Trust Property shall automatically be a part of the Trust Property and shall be subject to this Deed of Trust.

7.09   *Restrictions on Sale and Transfer of the Trust Property.*   Grantor shall not permit the Trust Property, or any part or portion thereof or any interest therein, to be transferred (whether by voluntary or involuntary conveyance, merger, operation of law, or otherwise) without the prior written consent of Beneficiary, which consent will not be unreasonably withheld.  Any transferee of the Trust Property or any part or portion thereof or any interest therein, by virtue of its acceptance of the transfer, shall (without in any way affecting Grantor's liability under the Loan Documents) be conclusively deemed to have agreed to assume primary personal liability for the performance of the Grantor's obligations under the Loan Documents.  This section shall not apply to any Taking, any disposition permitted by Section 7.12, any Lease entered into in compliance with Section 7.04, or any disposition by Trustee or Beneficiary by foreclosure hereunder or as otherwise permitted by the Loan Documents.

7.10   *Restriction on Encumbrances.*   Grantor shall not knowingly allow any Encumbrances on the Trust Property except the Permitted Encumbrances.  Grantor shall give Beneficiary prompt written notice of any material default in or under any Permitted Encumbrances and any written notice of foreclosure or threat of foreclosure.  Grantor shall materially comply with its obligations under all Permitted Encumbrances.  Beneficiary may, at its election and after providing Grantor with prior written notice and allowing Grantor a ten (10) business day period in which to reasonably resolve the situation, satisfy any Encumbrance (other than a Permitted Encumbrance not then in default), and Grantor shall, on demand, reimburse Beneficiary for any reasonable sums advanced for such satisfaction together with interest at the Penalty Rate accruing from the date of satisfaction, which sums shall be secured hereby.

7.11   *Maintenance, Waste, Repair and Inspection.*   Grantor shall: (a) keep and maintain the Trust Property in good order, condition, and repair and make all equipment replacements and

repairs reasonably necessary to insure that the security for the Loan is not impaired; (b) not commit or suffer any waste of the Trust Property; (c) promptly protect and conserve any portion of the Trust Property remaining after any material damage to, or partial destruction of, the Trust Property; (d) promptly repair, restore, replace or rebuild any portion of the Trust Property which is materially damaged or destroyed; (e) promptly restore the balance of the Trust Property remaining after any Taking; (f) permit Beneficiary or Beneficiary's designee to inspect the Trust Property at all reasonable times (but not more often than twice per calendar year, and only after reasonable prior written notice to Grantor); and (g) not make any material change in the grade of the Trust Property or permit any excavation of or on the Trust Property (except as may be reasonably necessary in connection with Grantor's intended development).

7.12    *Removal and Replacement of Equipment and Improvements.*  No part of the Trust Property, except supplies consumed in the normal course of business and operations, and items consistent with Grantor's work on its intended development of the Land, shall be removed from the Land, demolished, or materially altered without the prior written consent of Beneficiary, with such consent not to be unreasonably withheld.  Grantor may, without consent and free from the lien and security interest of this Deed of Trust, remove and dispose of any worn out or obsolete fixtures or equipment which are a part of the Trust Property upon thirty (30) days prior written notice to Beneficiary.  Prior to or simultaneously with their removal, such fixtures and equipment shall be replaced (if consistent with Grantor's intended development of the Land) with fixtures or equipment of equal or greater value.  The replacement fixtures or equipment shall be free of all Encumbrances, shall be automatically subject to the lien and security interest of this Deed of Trust, and shall be automatically subject to the granting clauses hereof.  Upon the sale of any removed fixtures and equipment which are not replaced, the proceeds shall be applied as a prepayment of the Loan, to be applied in inverse order of maturity. All sales shall be conducted in a commercially reasonable manner with a bona fide effort to obtain a sale price of at least market value.

7.13    *Taxes and Permitted Contests.*  Grantor shall pay or cause to be paid: (a) all Taxes (other than those payable by Beneficiary from the Escrow Account) on or before the date any interest or penalty begins to accrue or attach thereto; and (b) all lawful claims which, if unpaid, might become a lien or charge upon the Trust Property to such an extent as to affect materially and adversely Grantor's ability to use the Trust Property for the purposes for which it was designed or intended.  Provided however, that Grantor shall not be required to pay any Taxes or claim the amount, validity or payment thereof which is being contested, in good faith, by appropriate legal proceedings, and so long as, in the sole reasonable opinion of Beneficiary, no part of the Trust Property is in material danger of being sold, forfeited or lost and the contest is not materially impairing the security for the Loan.  Upon payment thereof, Grantor shall promptly supply Beneficiary with receipts showing the payment of the Taxes or claim.

7.14    *Restrictive Covenants, Zoning, etc.*  No restrictive covenant, zoning change, or other restriction affecting the Trust Property may be entered into, requested by or consented to by Grantor without the prior written consent of Beneficiary with such consent not to be unreasonably withheld.

7.15    *Preservation of Appurtenances.*  Grantor will do all things reasonably necessary to preserve intact and unimpaired, all easements, appurtenances, and other interests and rights in favor of, or constituting any portion of, the Trust Property.

## 8.00  INSURANCE AND CONDEMNATION.

8.01  *Casualty Insurance and Allocation in Event of Loss.*  Grantor shall maintain, keep and carry casualty insurance on the Trust Property, or shall cause to be maintained, kept or carried casualty insurance on the Trust Property, for the benefit of Grantor, Trustee and Beneficiary against all Risks.  The limits, form, co-insurance clauses, and insurer for all such policies shall be reasonably satisfactory to Beneficiary.  Grantor shall assign and deliver to Beneficiary copies of all such policies.  The policies shall contain a standard mortgagee loss payable endorsement providing that all payments shall be made to the sole order of Trustee and Beneficiary to be applied by them in accordance with the terms of this Deed of Trust.  Within ten (10) days prior to the expiration of any policy, Grantor shall supply Beneficiary with a renewal policy marked "Premium Paid."  All proceeds under such policies shall be paid to Trustee and Beneficiary to be applied, if no Default is then outstanding, in accordance with the provisions of any lease on the Trust Property, or, if none, then (a) if funds sufficient to restore the Trust Property are available from such insurance proceeds (together with other funds supplied or caused to be supplied by Grantor) and no Default is then outstanding, to the restoration of the Trust Property; or (b) if sufficient funds are not available to restore the Trust Property or a Default is then outstanding, to prepayment of amounts due under the Note, in inverse order of maturity.  All moneys not utilized for the restoration of the Trust Property shall be applied as a prepayment of amounts due under the Note, in inverse order of maturity.  If proceeds of insurance are used to restore the Trust Property, as aforesaid, neither Trustee nor Beneficiary shall be obligated to see to the proper allocation thereof, nor shall any such amount so used be deemed a payment of any indebtedness secured by this Deed of Trust.  Proceeds of insurance to be used for restoration purposes shall be held by Beneficiary and disbursed under such terms and conditions, to such Persons, and at such times, as Beneficiary may reasonably determine.

8.02  *Liability Insurance.*  Unless waived by Trustee and Beneficiary, Grantor will maintain, or cause to be maintained, liability and indemnity insurance with respect to the Trust Property in such amounts, with such companies, and subject to such terms and conditions as Beneficiary may reasonably direct and approve.  Such policies of insurance shall name Trustee and Beneficiary as additional insureds thereunder and within ten (10) days prior to the expiration of any such policy Grantor shall supply Beneficiary with a renewal policy marked "Premium Paid".

8.03  *Business Interruption Insurance.*  Unless waived by Beneficiary, Grantor shall also carry and maintain, or cause to be carried and maintained, rental interruption insurance on the Trust Property in the same manner and under the same conditions (to the extent applicable) as provided in Section 8.02.

8.04  *Condemnation and Allocation of Condemnation Awards.*  Grantor, immediately upon obtaining knowledge of the institution of any proceeding for a Taking, will notify Trustee and Beneficiary of such proceedings.  Trustee or Beneficiary may participate in any such proceedings, and Grantor will, from time to time, deliver to Trustee or Beneficiary all instruments reasonably requested by them to permit such participation.  Any award or payment made as a result of any Taking shall be paid to Trustee and Beneficiary, jointly, to be applied, if no Default is then outstanding, in accordance with the provisions of any lease on the Trust Property, or, if none, then (a) if funds sufficient to restore the remainder Trust Property are available from such award or

payment (together with other funds supplied or caused to be supplied by Grantor) and no Default is then outstanding, to the restoration of the remainder of the Trust Property, or (b) if sufficient funds are not available to restore the remainder of the Trust Property, or a default is then outstanding to prepayment of amounts due under the Note in inverse order of maturity. All moneys not utilized for the repair or restoration of the remainder of the Trust Property shall be applied as a prepayment of amounts due under the Note, in inverse order of maturity. The application of any award or payment as a prepayment of amounts due under the Note shall take effect only on the actual date of the receipt of the payment or award by Trustee and Beneficiary. In the event any payment or award is used to restore the Trust Property, as aforesaid, neither Trustee nor Beneficiary shall be obligated to see to the proper allocation thereof nor shall any amount so used be deemed a payment of any indebtedness secured by this Deed of Trust. Payments or awards to be used for restoration purposes, as aforesaid, shall be held by Beneficiary and disbursed under such terms and conditions, to such Persons, and at such times, as Beneficiary may determine.

## 9.00   THE TRUSTEE(S).

9.01   *Endorsement and Execution of Documents.*   Upon the written request of Beneficiary, Trustee shall, without liability or notice to Grantor, execute, consent to, or join in any instrument or agreement in connection with or reasonably necessary to effectuate the purposes of the Loan Documents. Grantor hereby irrevocably designates Trustee as Grantor's attorney-in-fact to execute, acknowledge, and deliver, on Grantor's behalf and in Grantor's name, all instruments or agreements necessary to implement the provisions of Section 3.07, contemplated by Section 6.07, or necessary to further perfect the lien created by this Deed of Trust on the Trust Property.   This power of attorney shall be deemed to be coupled with an interest and shall survive any disability of Grantor.

9.02   *Substitution of Trustee(s).*   Beneficiary may, by filing a deed of appointment in the office where this instrument is recorded, appoint additional or replacement trustees and may remove Trustee, from time to time, with notice to Grantor and Trustee and without specifying any reason. In the event of the death of Trustee, Beneficiary shall be entitled to seek the appointment of a successor Trustee pursuant to the provisions of the operative statutes then in effect.

9.03   *Terms of Trustee's Acceptance.*   Trustee accepts the trust created by this Deed of Trust upon the following terms and conditions.

9.03.1   Trustee may reasonably exercise any of Trustee's powers through appointment of attorneys-in-fact or agents.

9.03.2   Trustee shall not be liable for any matter or cause arising under this Deed of Trust or in connection therewith except by reason of Trustee's own willful misconduct.

9.03.3   Trustee may select and employ legal counsel at the reasonable expense of Grantor.

9.03.4   Trustee shall be under no obligation to take any action upon any Event of Default unless Trustee is furnished security or indemnify, in form reasonably satisfactory to Trustee, against costs, expenses, and liabilities actually incurred by Trustee.

Doc# 20210236808 08/26/2021 2:50PM Page 14 of 26 Lucy Adame-Clark, Bexar County Clerk

9.03.5  A Trustee may resign upon thirty (30) days written notice to Beneficiary and Grantor.

9.04  *Trustee's Reimbursement.*  Grantor shall reimburse Trustee for all reasonable disbursements and expenses incurred by reason of this Deed of Trust.

9.05  *Save Harmless Clause.*  Grantor shall indemnity and save harmless Beneficiary and Trustee, singularly and jointly, from all costs and expenses, including reasonable attorneys' fees, incurred by them or any of them by reason of this Deed of Trust, including any Legal Action to which Beneficiary or Trustee shall become a party.  Any money so paid or expended by Beneficiary or Trustee shall be due and payable upon demand and shall be secured by this Deed of Trust.

## 10.00  DEFAULT.

10.01  *Event of Default.*  Events of Default are expressed in Article VIII of the Loan Agreement.

10.02  *Payment or Performance by Trustees or Beneficiary.*  Upon Default, Trustee or Beneficiary may, at their option, make any payments or take any other actions they reasonably deem necessary or desirable to cure the Default or conserve the Trust Property.  Grantor shall, upon written demand, reimburse Trustee or Beneficiary for all reasonable sums so advanced or expenses incurred by them, together with interest at the Penalty Rate from the date of advance or payment of the same, which sums shall be secured by this Deed of Trust.  In such event, and to the extent permitted by applicable law, Trustee or Beneficiary may enter upon the Trust Property with prior written notice to Grantor or judicial process and may take any reasonable action to enforce Grantor's rights under this Section 10.02 without liability to Grantor.

10.03  *Possession by Trustees or Beneficiary.*  Upon the occurrence of an Event of Default and to the extent permitted by applicable law, Trustee or Beneficiary may enter upon and take possession of the Trust Property without notice to Grantor, judicial process, or the appointment of a receiver.  To the extent permitted by applicable law, Trustee or Beneficiary may exclude all persons from the Trust Property and may proceed to operate the Trust Property and receive all Rents. Trustee or Beneficiary and Trustee shall have the right as agent for Grantor, either in the name of Grantor or otherwise.  Neither Trustee nor Beneficiary shall be liable to Grantor for taking possession of the Trust Property, as aforesaid, nor shall they be required to make repairs or replacements, and they shall be liable to account only for Rents actually received by them. All Rents collected by Trustee or Beneficiary shall be applied to the extent permitted by applicable law (a) first, to pay all expenses incurred in taking possession of the Trust Property, (b) second, to pay costs and expenses to Operate the Trust Property and/or to comply with the terms of the Loan Documents, including reasonable attorney's fees, (e) third, to pay all sums secured by the Loan Documents in the order of priority selected by Beneficiary, and (d) fourth, with the balance, if any, to Grantor or such other Person as may be entitled thereto.  Neither the Assignment of Rents and Leases nor any other assignment of Leases shall impose upon Trustee or Beneficiary any liability to perform Grantor's obligations under any Lease.

14

Doc# 20210236808 08/26/2021 2:50PM Page 15 of 26 Lucy Adame-Clark, Bexar County Clerk

10.04  *Acceleration of the Note.*  Upon an Event of Default, pursuant to the grant of the power of sale as provided hereinabove, Beneficiary shall be entitled to exercise the provisions providing for a foreclosure by power of sale; PROVIDED, HOWEVER, that in connection with such election, Beneficiary shall first give Grantor a written notice of Beneficiary's intention to foreclose by power of sale hereunder addressed to Grantor as provided herein (the "Notice").  Such Notice shall (i) state with reasonable specificity, the nature of the events of default hereunder, (ii) advise Grantor that Grantor has the right to cure such default for a period of thirty-five (35) days from the date of sending of the Notice and thereby reinstate this Deed of Trust, (iii) advise Grantor of the amount of money or action necessary to effect a cure, and (iv) advise Grantor that the Loan secured hereby may be accelerated and the Deed of Trust foreclosed through power of sale if such event of default is not so cured within such 35-day period.  If Grantor fails to reasonably cure within such 35-day period Beneficiary, at Beneficiary's option, may then proceed to cause Trustee to exercise the power of sale granted herein, including all statutory notice and sale provisions.  Acceleration of maturity, once claimed by Beneficiary, may at the option of Beneficiary, be rescinded by written acknowledgment to that effect by Beneficiary, but the tender and acceptance of partial payments alone shall not in any way affect or rescind such acceleration of maturity.

10.05  *Collection of Rents.*  Upon the occurrence of an Event of Default and written demand by Beneficiary to the Tenants, all Rents shall be payable directly to Beneficiary.

10.06  *Judicial Foreclosure and Power of Sale.*  Beneficiary may, without notice, demand or presentment, which are hereby waived by Grantor, declare the entire unpaid balance immediately due and payable and Beneficiary may proceed to foreclose this Deed of Trust through judicial proceedings, and in the event of judicial foreclosure, the Court shall direct the sale of the Mortgaged Property to be with or without appraisement, as Beneficiary may elect at the time judgment is rendered.

As an alternative to the foregoing, Grantor assents to the sale of the Trust Property by Trustee upon the occurrence of an Event of Default and Grantor authorizes and empowers Trustee, upon the occurrence of an Event of Default, to sell Grantor's interest in the Trust Property, in accordance with the property laws of the State of Texas, in accordance with the Texas Property Code Section 51.004 ("the Act") or any other Law.  The Trust Property or any interest therein may be sold upon such terms and iii as many parcels as Trustee may, in Trustee's sole discretion, elect.

10.07  *Application and Proceeds of Sale.*  Upon a foreclosure sale, the purchaser shall receive that portion of or interest in the Trust Property purchased by it free from any claims of Grantor and without any liability to see to the application of the purchase money. The net proceeds from the sale, after deduction of all costs of the sale, shall be applied in accordance with applicable provisions of the Act.

10.08  *Deficiency of Proceeds.*  If, after a foreclosure sale, a deficiency exists in the net proceeds of such sale, Beneficiary shall be entitled to a deficiency judgment or decree for such deficiency which shall bear interest at the Penalty Rate.

10.09   *Insurance or Condemnation after Deficiency.*   If the Trust Property is sold at a foreclosure sale prior to receipt of a condemnation award or payment, Beneficiary shall receive and apply the proceeds of the award or payment toward the satisfaction of any deficiency resulting from the foreclosure sale, whether or not a deficiency judgment is sought, recovered, or denied.

10.10   *Right of the Beneficiary to Bid.*   Beneficiary and/or Trustee may bid and become the purchaser at a foreclosure sale under this Deed of Trust.

10.11   *Trustee's Bond.*   Grantor waives any right to require the person authorized to make the sale to post a bond in any foreclosure proceeding.

10.12   *Appointment of a Receiver.*   Upon the occurrence of an Event of Default, Beneficiary shall be entitled to the immediate appointment of a receiver for the Trust Property, without regard to the value of the Trust Property or the solvency of any person liable for payment of the amounts due under the Loan Documents.

10.13   *Remedies Cumulative.*   All rights, powers, and remedies of Beneficiary or Trustee provided for in the Loan Documents are cumulative and concurrent and shall be in addition to and not exclusive of any appropriate legal or equitable remedy provided by Law or contract.  Exercise of any right, power, or remedy shall not preclude the simultaneous or subsequent exercise of any other by Beneficiary or Trustee.

10.14   *Rights under the Uniform Commercial Code.*   Upon the occurrence of an Event of Default, Grantor shall assemble and make available to Beneficiary and Trustee those portions of the Trust Property which consist of personal property at a place to be designated by Trustee, and Beneficiary and Trustee may exercise all the rights and remedies of a secured party under the Uniform Commercial Code.  Any notices required by the Uniform Commercial Code shall be deemed reasonable if mailed certified mail, return receipt requested, postage prepaid, by Beneficiary or Trustee to Grantor.  Disposition of the Trust Property shall be deemed commercially reasonable if made pursuant to a public offering advertised at least twice in a newspaper of general circulation in the County where the Trust Property is located.

10.15   *Right to Determine Which Leases Survive.*   If disclosed in the advertisement of a sale, a foreclosure sale may be made subject to one or more Leases of the Trust Property.

**11.00   MISCELLANEOUS.**

11.01   *Waivers.*   No term of any Loan Document shall be deemed waived unless the waiver shall be in writing and signed by the parties making the waiver. Any failure by Beneficiary or Trustee to insist upon Grantor's strict performance of any of the terms of the Loan Documents shall not be deemed or construed as a waiver of those or any other terms. Any delay in exercising or enforcing any rights with respect to a Default or an Event of Default shall not bar Beneficiary or Trustee from exercising any rights under the Loan Documents, or at law or in equity.

Doc# 20210236808 08/26/2021 2:50PM Page 17 of 26 Lucy Adame-Clark, Bexar County Clerk

11.02   *Consents.*

11.02.1  Beneficiary may (a) release any person liable under the Loan Documents, (b) release any part of the security, (c) extend the time of payment of the Loan, and/or (d) modify the terms of the Loan Documents, regardless of consideration and without notice to or consent by the holder of any subordinate lien on the Trust Property. No release, extension or modification of the security held under the Loan Documents shall impair or affect the lien of this Deed of Trust or the priority of such lien over any subordinate lien.

11.02.2  Regardless of whether a Person has been given notice or has given its prior consent, it shall not be relieved of any obligation under any Loan Document by reason of (a) the failure of Beneficiary, Trustee, or any other Person to take any action, foreclose, or otherwise enforce any provision of the Loan Documents, (b) the release of any other Person liable under any Loan Document, (c) the release of any portion of the security under the Loan Documents, or (d) any agreement or stipulation between any subsequent owners of the Trust Property and Beneficiary extending the time of payment or modifying the terms of any Loan Document.

11.03   *Headings.*  All Article and Section headings are for convenience only and shall not be interpreted to enlarge or restrict the provisions of this Deed of Trust.

11.04   Notices.  All notices shall be in writing and, unless otherwise specified in a written notice, shall be sent to the respective addresses of the parties as follows:

| | |
|---|---|
| Beneficiary: | Blue Sky Bank<br>3353 East 41st Street<br>Tulsa, Oklahoma 74135<br>Attention:    Jay Swali, Vice President |
| Grantor: | Davies Enterprises, LLC<br>1314 East Sonterra Blvd.<br>San Antonio, Texas 78258<br>Attention:    Cameron Davies, Manager |
| Trustee: | Gentner F. Drummond, Esq.<br>Drummond Law, PLLC<br>1500 South Utica Avenue, Suite 400<br>Tulsa, Oklahoma 74104 |

A notice may be hand-delivered or mailed, postage prepaid, first class, registered or certified mail or by a nationally recognized overnight delivery service.  Any notice sent by mail shall be deemed to have been received on the second (2nd) business day following the date of mailing. Notices sent by overnight delivery service shall be deemed to have been received on the first business day following deposit with such delivery service.

17

A notice may be hand-delivered or mailed, postage prepaid, first class, registered or certified mail or by a nationally recognized overnight delivery service. Any notice sent by mail shall be deemed to have been received on the second (2nd) business day following the date of mailing. Notices sent by overnight delivery service shall be deemed to have been received on the first business day following deposit with such delivery service.

11.05 *Binding Effect.* No transfer of any portion of the Trust Property or any interest thereon shall relieve any transferor of its obligations under the Loan Documents. No transferor of any obligation under any Loan Document shall be relieved of its obligations by any modification of any Loan Document subsequent to the transfer.

11.06 *Amendment.* No Loan Document may be modified except in writing signed by (a) Beneficiary and/or Trustee, and (b) Grantor.

11.07 *Severability.* In the event any provision of this Deed of Trust shall be held invalid or unenforceable by any court of competent jurisdiction, such holding shall not invalidate or render unenforceable any other provision hereof.

11.08 *Notices from Governmental Authorities Affecting the Trust Property.* Any notice from any governmental or quasi-governmental authority or corporation with respect to the Trust Property sent to or known by Grantor shall be promptly transmitted to Beneficiary and Trustee.

11.09 *Applicable Law.* All Loan Documents shall be governed by the Laws of the State of Oklahoma without regard to the principles of conflict of laws.

11.10 *Time of the Essence.* Time is of the essence with respect to the Loan Documents.

11.11 *Effect of Payments.* Any payment or other performance made in accordance with the Loan Documents by any Person other than Grantor shall not entitle such Person to any right of subrogation under the Loan Documents, unless expressly consented to in writing by Beneficiary.

11.12 *Word Forms.* The use of any gender, tense, or conjugation herein shall be applicable to all genders, tenses and conjugations. The use of the singular shall include the plural and the plural shall include the singular.

11.13 *Usury.* Notwithstanding any provision herein or in the Note, the total liability for payments in the nature of interest shall not exceed the limits now imposed by the usury laws of the State of Oklahoma, or if the holder of the Note and this Deed of Trust shall ever be entitled to receive, collect or apply, as interest on the indebtedness, any amount in excess of the maximum legal rate of interest permitted to be charged by applicable law, and, in the event any holder of the Note and this Deed of Trust ever receives, collects or applies, as interest, any such excess, such amount which would be excessive interest shall be applied to the reduction of the unpaid principal balance of the indebtedness, and if the principal balance of the indebtedness is paid in full, any remaining excess shall be forthwith paid to Beneficiary. In determining whether or not the interest paid or payable under any specific contingency exceeds the highest lawful rate, Beneficiary and

Grantor shall, to the maximum extent permitted under applicable law: (a) characterize any non-principal payment as an expense, fee or premium rather than as interest; (b) exclude voluntary prepayments and the effects thereof; and (c) "spread" the total amount of interest on this Note throughout the entire term hereof so that the interest rate is uniform throughout the entire term thereof.

**EXECUTED** the day and year first written hereinabove.

**GRANTOR:**

Signed, sealed and delivered
In the presence of:

_____
Witness

**DAVIES ENTERPRISES, LLC**
a Texas Limited Liability Company

C. D. _____ (SEAL)
By:     Cameron Davies, Manager

State of ____Texas____

County of ____Bexar____

Sworn to and subscribed before me this ____24____ day of August, 2021, by **Cameron Davies**, the Manager of Davies Enterprises, LLC, personally known to me or proved to me on the basis of satisfactory evidence to be the person who appeared before me, and he acknowledged said instrument to be his free act and deed and the free act and deed of the limited liability company.

_____
Notary Public

JOSHUA DAVIES
Notary ID #131731063
My Commission Expires
September 20, 2022

My Commission Expires: ____9/20/22____

(AFFIX NOTARY SEAL)

THE STATE OF TEXAS          §
                            §
COUNTY OF BEXAR             §

     **BEFORE ME**, the undersigned authority, on this day personally appeared Cameron Davies, Manager of Davies Enterprises, LLC, a Texas limited liability company, known to me to be the person whose name is subscribed to the foregoing instrument, and he acknowledged to me that he executed the same for the purposes and consideration therein expressed, in the capacity therein stated and as the act and deed of said limited liability company.

     **GIVEN UNDER MY HAND AND SEAL OF OFFICE** on this the _24_ day of August, 2021.

STAMP NAME AND DATE OF
EXPIRATION OF COMMISSION        
BELOW:                          NOTARY PUBLIC, STATE OF TEXAS

JOSHUA DAVIES
Notary ID #131731063
My Commission Expires
September 20, 2022

**Exhibit "A"**

Legal Description

(Property Address:  314 Nolan Street, San Antonio, Texas 78_____)

## EXHIBIT "A"

A 3.78 ACRE TRACT OF LAND OUT OF N.C.B. 558, BLOCK 39, CITY OF SAN ANTONIO, BEXAR COUNTY, TEXAS, AND BEING THAT SAME 3.452 ACRE TRACT DESCRIBED IN DEED TO LANE AVENUE ASSOCIATES, LW, OF RECORD IN VOLUME 15869, PAGE 1763 , OFFICIAL PUBLIC RECORDS, BEXAR COUNTY, TEXAS, A TRACT CALLED A PORTION OF LOT 1, BLOCK 39, N.C.B. 558, DESCRIBED IN DEED TO LANE AVENUE ASSOCIATES, LLC, OF RECORD IN VOLUME 16489, PAGE 716 , OFFICIAL PUBLIC RECORDS, BEXAR COUNTY, TEXAS, A TRACT CALLED THE NORTH 42.2 FEET OF LOT 8, BLOCK 39, N.C.B, 558, AS DESCRIBED 1/4 DEED TO LANE AVENUE ASSOCIATES, LLC, OF RECORD IN DOCUMENT NO. 20180083243 , OFFICIAL PUBLIC RECORDS, BEXAR COUNTY, TEXAS, A TRACT CALLED THE SOUTH 37.2 FEET OF THE NORTH 79.4 FEET OF LOT 8, BLOCK 39, N.C.B. 558, AS DESCRIBED IN DEED TO LANE AVENUE ASSOCIATES, LLC, OF RECORD IN DOCUMENT NO. 20180092983 , OFFICIAL PUBLIC RECORDS, BEXAR COUNTY, TEXAS, AND TRACTS I, II AND III, AS DESCRIBED IN DEED TO LANE AVENUE ASSOCIATES, LW, OF RECORD IN DOCUMENT NO. 20180130296 , OFFICIAL PUBLIC RECORDS, BEXAR COUNTY, TEXAS AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:
NOTE: (BASIS OF BEARING IS TEXAS SOUTH CENTRAL ZONE, NAD83.)

BEGINNING: At a point in the west right of way line of Union Pacific Rail Road and the south right of way line of Nolan Street (Variable Width Right of Way), for the northeast corner of the 3.452 Acre Tract and This Tract, and the POINT OF BEGINNING, from which a PK nail found for reference bears S 00°16'46" E, a distance of 5.41 feet;

THENCE: S 00°16'46" E, 410.72 feet, departing the south right of way line of Nolan Street, with the west right of way line of the Union Pacific Rail Road and the east line of the 3.452 Acre Tract and This Tract to a VC iron rod found in the north right of way line of Dawson Street (33.2 Foot Right of Way), for the southeast corner of the 3.452 Acre Tract and This Tract;

THENCE: S 89°35'14" W, departing the west right of way line of Union Pacific Rail Road, with the north right of way line of Dawson Street and the south line of the 3.452 Acre Tract and This Tract, at a distance of 356.92 feet passing a 34" iron rod found for the southeast corner of the southern most tract conveyed to Lane Avenue Associates, LLC, of record in Document No. 20180130296 , Official Public Records, Bexar County, Texas, and the southwest corner of the 3.452 Acre Tract and continuing with the south line of the southern most Lane Avenue Associates; LLC Tract, This Tract and the north right of way line of Dawson Street, for a total distance of 416.47 feet to a 34" iron rod found in the east right of way line of Chestnut Street for the southwest corner of the southern most Lane Avenue Associates, LLC Tract, and This Tract;

THENCE: N 00°16'46" W, 194.91 feet, departing the north right of way line of Dawson Street, with the east right of way line of Chestnut Street, the west line of 3 tracts conveyed to Lane Avenue Associates, LLC., of record in Document No. 20180130296 , Official Public Records, Bexar County, Texas, a tract conveyed to Lane Avenue Associates, LLC, of record in Document No. 20180092983 , Official Public Records, Bexar County, Texas, and another tract conveyed to Lane Avenue Associates, LLC, of record in Document No. 20180083243 , Official Public Records, Bexar County, Texas, and a west line of This Tract to a W' iron rod with cap stamped

A-1

"RICKMAN" set in the south right of way line of Booker Street (27.8 Foot Right of Way — not open on the ground) for the northwest corner of the Lane Avenue Associates, LLC, Tract conveyed in Document No. 20180083243 , Official Public Records, Bexar County, Texas, and This Tract;

THENCE: With the south, east and north lines of Booker Street, a north line of the Lane Avenue Associates, LLC, Tract conveyed in Document No. 20180083243, Official Public Records, Bexar County, Texas, and a north, west and south line of the 3.452 Acre Tract and This Tract, the following calls and distances:

N 89°35'14" E, at a distance of 59.17 feet, passing a 'A" iron rod found for the northeast corner of the Lane Avenue Associates, LLC, Tract conveyed in Document No. 20180083243, Official Public Records, Bexar County, Texas, and a northwest corner of the 3.452 Acre Tract and This Tract and continuing for a total distance of 111.87 feet to a 14" iron rod found for the southeast corner of the east terminus of Booker Street and a reentrant corner of the 3.452 Acre Tract and This Tract;

N 00°16'46" W, 27.52 feet to a Y2" iron rod found for the northeast corner of the east terminus of Booker Street and a reentrant corner of the 3.452 Acre Tract and This Tract; S 89°35'14" W, 52.32 feet to a 'A" iron rod found for the southeast corner of a tract conveyed to Ricardo & Lourdes M. Ramirez, of record in Volume 15364, Page 494, Official Public Records, Bexar County, Texas, and a southwest corner of the 3.452 Acre Tract and This Tract;

THENCE: N 00°16'46" W, 45.37 feet, with the east line of the Ramirez Tract and the west line of the 3.452 Acre Tract and This Tract, to a 'A" iron rod with cap stamped "RICKMAN" set for the southeast corner of the Tract called a Portion of Lot 1, and the northeast corner of the Ramirez Tract, and a reentrant corner of This Tract;

THENCE: S 89°35'14" W, 59.55 feet, departing the west line of the 3.452 Acre Tract, with the north line of the Ramirez Tract, the south line of the Tract called a portion of Lot 1 and This Tract, to a 'A" iron rod with cap stamped "RICKMAN" set in the east right of way line of Chestnut Street (34 Foot Right of Way) for the northwest corner of the Ramirez Tract, the southwest corner of the Tract called a portion of Lot 1, and the most westerly southwest corner of This Tract;

THENCE: N 00°16'46" W, with the east right of way line of Chestnut Street, the west line of the Tract called a Portion of Lot 1, and This Tract, at a distance of 52 feet passing a 'A" iron rod found for the northwest corner of the Tract called a Portion of Lot 1 and the most westerly southwest corner of the 3.452 Acre Tract, continuing with the west line of the 3.452 Acre Tract for a total distance of 129.87 feet to a 1/2" iron rod found for the south corner of the southeast cutback corner of the intersection of Chestnut Street and Nolan Street, for a northwest corner of the 3.452 Acre Tract and This Tract;

THENCE: N 44°01'39" E, 8.54 feet, with the southeast line of the southeast cutback corner of Chestnut Street and Nolan Street, and a northwest line of the 3.452 Acre Tract and This Tract, to a 1/2" iron rod found for the north corner of the southeast cutback corner, and a northwest corner of the 3.452 Acre Tract and This Tract;

A-2

THENCE: With the south right of way line of Nolan Street, and the north line of the 3.452 Acre Tract and This Tract, the following calls and distances:

N 89°35'14" E, 53.58 feet to a 1/2" iron rod found for an angle point;

N 00°16'46" W, 6.95 feet to a point for an angle point;

N 89°35'14" E, 356.92 feet to the POINT OF BEGINNING and containing 3.78 acres of land in the City of San Antonio, Bexar County, Texas.

### EXHIBIT "A"

A 0.06 ACRE TRACT OF LAND OUT OF LOT 1, BLOCK 39, N.C.B. 558, CITY OF SAN ANTONIO, BEXAR COUNTY, TEXAS, AND BEING THAT SAME TRACT OF LAND DESCRIBED IN DEED TO RICARDO AND LOURDES M. RAMIREZ OF RECORD IN VOLUME 15365, PAGE 494, OFFICIAL PUBLIC RECORDS, BEXAR COUNTY, TEXAS, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS: NOTE: (BASIS OF BEARING IS TEXAS SOUTH CENTRAL ZONE, NAD83.)

BEGINNING: At a PK Nail found in the east right of way line Chestnut Street (34 Foot Right of Way), for a southwest corner of a 3.78 Acre Tract described in deed to 314 Nolan, LLC, of record in Document No. 20210048798, Official Public Records, Bexar County, Texas, and the northwest corner of This Tract and the POINT OF BEGINNING;

THENCE: N 89°35'14" E, 59.55 feet, departing the east right of way line of Chestnut Street, with a south line of the 3.78 Acre Tract and the north line of This Tract to a 'A" iron rod with cap stamped "RICKMAN" found for a reentrant corner of the 3.78 Acre Tract and the northeast corner of This Tract;

THENCE: S 00°16'46" E, 45.37 feet, with a west line of the 3.78 Acre Tract and the east line of This Tract to a' " iron rod with cap found in the north right of way line of Booker Street (27.8 Foot Right of Way) for the southeast corner of This Tract;

THENCE: S 89°35'14" W, 59.55 feet, with the north right of way line of Booker Street and the south line of This Tract to a V2" iron rod with cap stamped "RICKMAN" set for the intersection of the east right of way line of Chestnut Street and the north right of way line of Booker Street and the southwest corner of This Tract;

THENCE: N 00°16'46" W, 45.37 feet with the east right of way line of Chestnut Street and the west line of This Tract to the POINT OF BEGINNING and containing 0.06 acres of land in the City of San Antonio, Bexar County, Texas.

**File Information**

**eFILED IN THE OFFICIAL PUBLIC eRECORDS OF BEXAR COUNTY**
**LUCY ADAME-CLARK, BEXAR COUNTY CLERK**

| | |
|---|---|
| **Document Number:** | 20210236808 |
| **Recorded Date:** | August 26, 2021 |
| **Recorded Time:** | 2:50 PM |
| **Total Pages:** | 26 |
| **Total Fees:** | $122.00 |

**\*\* THIS PAGE IS PART OF THE DOCUMENT \*\***

**\*\* Do Not Remove \*\***

Any provision herein which restricts the sale or use of the described real property because of race is invalid and unenforceable under Federal law

STATE OF TEXAS, COUNTY OF BEXAR

I hereby Certify that this instrument was eFILED in File Number Sequence on this date and at the time stamped hereon by me and was duly eRECORDED in the Official Public Record of Bexar County, Texas on: 8/26/2021 2:50 PM



Lucy Adame-Clark
Bexar County Clerk