## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

DAVIES ENTERPRISES, LLC, CRUISING §
KITCHENS, LLC, CAMERON DAVIES & §
MARY K. DAVIES §
                          §
     *Plaintiffs* §
V.                               § **CIVIL CASE NO.: 5:23-CV-01527-JKP-HJB**
                          §
BLUE SKY BANK & MARK C. TAYLOR §
                          §
     *Defendants* §

## PLAINTIFFS' FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE JASON PULLIAM:

**DAVIES ENTERPRISE, LLC, CRUISING KITCHENS, LLC, CAMERON DAVIES and MARY K. DAVIES** (hereinafter collectively "Plaintiffs") file this First Amended Complaint against Defendants, Blue Sky Bank ("BSB") and Mark C. Taylor ("Taylor") and for cause of action will respectfully show unto this Honorable Court the following:

## I.
## JURISDICTION AND VENUE

1.    The subject matter of this controversy is within the jurisdictional limits of this court. Plaintiffs seek monetary relief over $1,000,000.00.

2.    Defendants previously removed this cause based upon diversity jurisdiction. Venue is mandatory in the Western District of Texas- San Antonio Division because the real property and improvements that are made the basis of this lawsuit are located in San Antonio, Bexar County, Texas.

## II.
## PARTIES

3.    Plaintiffs, Davies Enterprises, LLC and Cruising Kitchens, LLC, are Texas Limited Liability Companies with their principal place of business in San Antonio, Bexar County, Texas. Plaintiffs, Cameron Davies and Mary K. Davies are individual residents of Bexar County, Texas.

4.      Defendants, Blue Sky Bank and Mark C. Taylor, have previously filed a Notice of Removal and a Defendants' Original Answer and have made an appearance in this cause for all purposes. No further service on these Defendants is necessary at this time.

## III.
### FACTS

5.   On August 25, 2021, Plaintiffs signed several Deed of Trust, Security Agreement and Fixture Filing documents plus Commercial Loan Agreements and associated Promissory Notes and/or guarantees of those obligations in favor of BSB in connection with certain loans that were made by BSB to the Plaintiffs in connection with the purchase of tracts of real property described in paragraph 6. below.

6.   The properties made the subject matter of this suit consist of unimproved real property and real property and improvements located at 14732 Bulverde Road and 314 Nolan Street all of which are located in San Antonio, Bexar County, Texas ("the Properties"). The Properties are more particularly described on the Exhibits to the three (3) Notices of Substitute Trustee's Sale previously filed by Defendants dated November 13, 2023. A true and correct copy of these three (3) Notices are attached hereto as Exhibits A, B and C and are incorporated by reference herein as if fully copied and set forth at length.

7.   The Deed of Trust, Security Agreement and Fixture Filings ("Deed of Trust"), Commercial Loan Agreements and associated Promissory Notes include mandatory obligations of BSB in order to conduct a Non-Judicial Foreclosure of the Properties. Included in BSB's obligations under Paragraph 10.04 of the Deed of Trust documents is the duty to provide Plaintiffs with proper and timely notice of default and the intention to foreclose and provide a 35-day opportunity to cure any alleged default before BSB can accelerate the Term Loan Facilities, Commercial Loan Agreements and associated Promissory Notes. In the event that Plaintiffs do not timely cure any alleged default, BSB has the option to cause the Trustee to proceed with a foreclosure provided the Trustee provides all statutory notice and sale provisions. A true and correct copy of a representative Deed of Trust, Security Agreement and Fixture Filing documents are attached

hereto as Exhibit D, and are incorporated by reference herein as if fully copied and set forth at length.

8.     On or about August 14, 2023, Plaintiffs and BSB entered into a formal written Forbearance Agreement which provides, in applicable part, as follows:

**"Lender agrees to forbear from exercising its rights and remedies under the Loan Documents through December 7, 2023 (the "Forbearance Period"), subject to paragraph (b) below and to the terms and conditions set forth herein."**

In the event that Plaintiffs did not bring their obligations to BSB current with a the provided fourteen (14) day time period, pursuant to paragraph 2.1.1(b), the Forbearance Agreement named Erik White of Harney Partners in Austin, Texas ("White") as a private receiver/financial administrator. A true and correct copy of the Forbearance Agreement is attached hereto as Exhibit E and is incorporated by reference herein as if fully copied and set forth at length.

9.   During the negotiations leading up to execution of the Forbearance Agreement, Mr. Barry Gibson, Vice President of BSB, expressly represented to the Plaintiffs that if the Plaintiffs executed the Forbearance Agreement and later made a payment of at least One Million dollars ($1,000,000.00) to BSB, this would cure all defaults and BSB would agree to void the Forbearance Agreement. Plaintiffs relied upon these and other representations made by BSB, in executing the Forbearance Agreement.

10. Following execution of the Forbearance Agreement, Defendant BSB, both directly and by and through its agent White,  began implementing an intentional and calculated scheme to prevent Plaintiffs from taking actions necessary to bring the Plaintiffs obligations to BSB current. These actions included, but where not limited to, the following:

a.   White denying Plaintiffs, the ability to lease approximately fifty percent (50%) of the 314 Nolan property for rent of approximately Forty Thousand dollars ($40,000.00) per month. The debt service for 314 Nolan is approximately Twenty-Six Thousand

3

dollars ($26,000.00) per month;

b. Defendant BSB, both directly and by and through its agent White, denying Plaintiffs, the ability to extract any equity from the Properties or other real property and/or personal property assets owned by Plaintiffs including White removing the listing for real property assets of the Plaintiffs that were previously listed for sale; and,

c. Defendant BSB interfering with an August 15, 2019, written contract between Plaintiff, Cruising Kitchens, and Vessel Enterprises, LLC, doing business as Reef Global (hereinafter "Reef"), pursuant to which Reef was going to make a lump sum cash payment to Plaintiffs in the amount of approximately One Million Five Hundred Thousand dollars ($1,500,000.00). BSB was actually aware of this contract and was aware that Reef was going to make this payment to Plaintiff, Cruising Kitchens, and BSB took direct action to prevent this payment from being made.

11. On or about November 13, 2023, the Properties were posted by Defendant Taylor, via three (3) Notices of Substitute Trustee's Sale for non-judicial foreclosure scheduled for December 5, 2023 at the Bexar County Courthouse. The Properties made the basis of the foreclosure sale were not ripe for foreclosure according to the Forbearance Agreement, the Deed of Trust documents and Texas law.

12. The Properties are very valuable and essential to the business operations of Plaintiffs. The Forbearance Agreement specifically provides by its terms that BSB and its agents, including Defendant, Mark C. Taylor, will forbear and from exercising its rights and remedies under the Loan Documents which include the Deed of Trust documents with Plaintiffs as Grantor and BSB as Beneficiary. In addition, these same Loan Documents specifically give Plaintiffs the right to written notice of any default and 35-day opportunity to cure and alleged default. Plaintiffs have not received timely, adequate and lawful notice of default and intention to foreclose as required by Paragraph 10.04 of the Deed of Trust documents. Under these circumstances Defendants, BSB and Taylor, have no right under Texas law to conduct a Non-Judicial Foreclosure without such notices and in direct violation of the terms of the Forbearance Agreement.

13. The Defendants, BSB and Taylor, have no legal right to proceed with a non-judicial foreclose on the Properties but posted the Properties for foreclosure sale scheduled for December 5, 2023 in violation of the Forbearance Agreement, the Loan Documents and Texas Law.

14. Plaintiffs previously requested, and on December 4, 2023 were granted, a Temporary Restraining Order (TRO) restraining Defendants, and each of them, from proceeding with a non-judicial foreclosure on the Properties. A true and correct copy of the TRO is attached hereto as Exhibit F and incorporated by reference herein as if fully copied and set forth at length.

15. Temporary Injunction hearing was scheduled for December 18, 2023, beginning at 9:00 a.m. in the presiding district court of Bexar County, Texas. Defendants filed a Notice of Removal on December 14, 2023.

**V.**
**CONDITIONS PRECEDENT**

16. Plaintiffs assert that all conditions precedent to the filing of this lawsuit have occurred and/or been waived.

**VI.**
**BREACH OF CONTRACT**

17. Defendants, Blue Sky Bank and Mark C. Taylor, knowingly and intentionally breached the terms of the Forbearance Agreement and the Loan Documents including, without limitation, paragraph 10.04 of the Deed of Trust documents, by proceeding with non-judicial foreclosure proceedings prior to December 7, 2023 and failing to provide Plaintiffs with proper notice and opportunity to cure. These breaches of contract by Defendants have proximately caused damages to Plaintiffs for which Plaintiffs hereby sue.

**VII.**
**FRAUD**

18. BSB, acting by and through its Vice President, Barry Gibson, made representations of material facts which were false when made or were made as positive assertions that were made recklessly, without knowledge of the truth, with the intent that the Plaintiffs rely upon those misrepresentations

5

which the Plaintiffs did rely upon to their detriment. Plaintiffs would not have entered into the Forbearance Agreement but for the representations made by Barry Gibson as an authorized representative of Defendant, Blue Sky Bank. As a direct result of this fraudulent conduct, Plaintiffs have suffered damages for which damages Plaintiffs hereby sue.

## VIII.

## TORTIOUS INTERFERENCE WITH CONTRACT

19.  Defendant, BSB, knowingly and intentionally interfered with the August 15, 2019 contract previously entered into by and between Plaintiff, Cruising Kitchens, and third-party, Reef. Reef owed and advised that Reef was going to pay Plaintiff, Cruising Kitchens, approximately One Million Five Hundred Thousand dollars ($1,500,000.00). After learning about this intended payment, BSB contacted Reef directly and advised Reef not to make the payment to Plaintiff, Cruising Kitchens. As a direct result of the acts and omissions of BSB, Reef did not make any payment to Cruising Kitchens thereby causing Cruising Kitchens to suffer damages in the amount of One Million Five Hundred Thousand dollars ($1,500,000.00) for which Plaintiff, Cruising Kitchens, hereby sues.

20.   Defendant BSB acting by and through its agent White knowingly and intentionally interfered with the August 14, 2023, Forbearance Agreement by refusing to allow Plaintiffs to take actions to become current on Plaintiffs' obligations to BSB. These acts and omissions of Defendant White caused actual damages to Plaintiffs for which Plaintiffs hereby sue.

## IX.
## DECLARATORY JUDGMENT

21. The declaratory judgment act provides that a person interested under a deed, will, written contract, or other writing constituting a contract may have the court determine any question of the construction of validity arising under the instrument and obtain a declaration of rights, status or other legal relations under it. *Texas Civil Practices & Remedies Code §37.004(a).* Plaintiffs request a declaratory judgment that Defendants have no legal right to conduct a Non-Judicial

Foreclosure on the Properties under the Loan Documents and the Forbearance Agreement without first providing proper notices and a right to cure.

## X.
## INJUNCTIVE RELIEF

22. In the event that Defendants elect to post the Properties for Non-Judicial foreclosure prior to the trial of these matters, Plaintiffs will be entitled to injunctive relief against the Defendants because Plaintiffs will suffer imminent and irreparable harm as a result of improper conduct of the Defendants. In particular, the Plaintiffs will show that they have a probable right to the relief requested and they will suffer irreparable injury as a result or the acts of the Defendants for which there is no adequate remedy at law,  Therefore, the Plaintiffs request that in the event that Defendants post the Properties for Non-Judicial foreclosure during the pendency of this matter, this Honorable Court schedule this matter for a Temporary Injunction hearing and, following such hearing issue injunctive relief against the Defendants.  This Plaintiffs' First Amended Complaint is verified as required by law.

## XI.
## ATTORNEY FEES

23. Plaintiffs assert that it was necessary for Plaintiffs to hire the law firm of Granstaff, Gaedke & Edgmon, P.C. to represent Plaintiffs in this matter and enforce the Forbearance Agreement and Loan Documents previously entered into by the Parties by filing this lawsuit.  Plaintiffs are therefore requesting reimbursement from Defendants of all reasonable and necessary attorneys' fees and expenses incurred by Plaintiffs throughout the trial of this matter and any appeals

## PRAYER

WHEREFORE PREMISES CONSIDERED Plaintiffs pray that Defendants be cited to appear and after notice and a hearing, the Plaintiffs recover a judgment against the Defendants for the following:

1. actual damages in excess of the minimum jurisdictional limits of the court;

2. a declaratory judgment be entered finding that Defendants, Blue Sky Bank and Mark C. Taylor have no right to proceed with a Non-Judicial Foreclosure of the Properties without first providing the legally and contractually required notices and right to cure;

3.  reasonable and necessary attorneys' fees;

4.  prejudgment and post-judgment interest at the maximum rate allowed by law;

5.  court costs; and,

6.  all such other and further relief, at law or in equity to which Plaintiffs may, by this pleading or proper amendment hereto, Plaintiffs may show themselves justly entitled.

Respectfully submitted,

GRANSTAFF, GAEDKE & EDGMON, P.C.
5535 Fredericksburg Rd., Suite 110
San Antonio, Texas 78229
Telephone: (210) 348-6600
Facsimile: (210) 366-0892
Email: dstrolle@caglaw.net

By: _____
David P. Strolle, Jr.
State Bar No. 19408700

**ATTORNEYS FOR PLAINTIFFS**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify by my signature above that on the 13th day of March, 2024, I electronically filed the foregoing First Amended Complaint with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Mark C. Taylor
William R. "Trip" Nix
Nicholas R. Miller
HOLLAND & KNIGHT LLP
100 Congress Avenue, Suite 1800
Austin, Texas 78701

Facsimile:    (512) 685-6417
Email:        mark.taylor@hklaw.com
              trip.nix@hklaw.com
              nick.miller@hklaw.com

**ATTORNEYS FOR DEFENDANTS**

<u>**VERIFICATION**</u>

**STATE OF TEXAS**

**COUNTY OF BEXAR**

Before me, the undersigned notary, on this day personally appeared affiant, Cameron Davies, a person whose identity is known to me and under oath testified as follows:

"My name is Cameron Davies. I am an officer and authorized representative of Davies Enterprises, LLC and Cruising Kitchens, LLC. I am over 18, have never been convicted of a crime and I am otherwise qualified to make this verification.

I have read Section III. of the Plaintiffs' First Amended Complaint and hereby verify that the facts stated in Section III. are within my personal knowledge and are true and correct."

Cameron Davies, Individually and as
Authorized Agent of Davies Enterprises,
LLC and Cruising Kitchens, LLC

SWORN TO and SUBSCRIBED before me the undersigned notary public on this the 13 day of March, 2024.

JOANNA ADELINA OREGEL
Notary ID #133026973
My Commission Expires
April 9, 2025

Notary Public, State of Texas

9

# Holland & Knight



100 Congress Avenue, Suite 1800 | Austin, TX 78701 | T 512.685.6400 | F 512.685.6417
Holland & Knight LLP | www.hklaw.com

Mark C. Taylor
+1 512-685-6404
Mark.Taylor@hklaw.com

November 13, 2023

Davies Enterprises, LLC                    *(via Certified Mail, RRR and First Class Mail)*
1314 East Sonterra Blvd.
San Antonio, TX 78258

Re:     That certain Second Deed of Trust, Security Agreement and Fixture Filing dated
        August 25,2021, executed by Borrower/Grantor for the benefit of Beneficiary to
        secure, among other things, Borrower/Grantor's obligations under that certain Term
        Loan Facility in the original principal amount of $3,571,627.00 as evidenced by a
        Commercial Loan Agreement and associated promissory note (the "Term Note #2")
        of even date (as may have been modified), and recorded as document number
        20210236810 of the Official Records of Bexar County, Texas, covering the Subject
        Property.

To Whom It May Concern:

        The undersigned represents Blue Sky Bank, the Beneficiary of the Deed of Trust. Due to
continuing defaults, the maturity of the Note has been accelerated. Attached is a Notice of
Trustee's Sale under the Deed of Trust. The sale is set for December 5, 2023. The sale is set for
10:00 or at any time within 3 hours thereafter.

        To obtain a payoff, you may contact the undersigned.

                            HOLLAND & KNIGHT LLP

                            /s/ Mark C. Taylor

                            Mark C. Taylor
                            For the Firm

MCT:tlg

Enclosure

November 13, 2023
Page 2

cc:     Client

        *(via Certified Mail, RRR and First Class Mail)*
        Cameron Davies
        305 Hill Country Lane
        San Antonio, Texas 78232

        Mary K. Davies
        305 Hill Country Lane
        San Antonio, Texas 78232

## NOTICE OF SUBSTITUTE TRUSTEE'S SALE

STATE OF TEXAS        §
                              §

COUNTY OF BEXAR      §

       Pursuant to authority conferred upon me by that certain Second Deed of Trust Security Agreement and Fixture Filing executed by Davies Enterprises LLC dated August 25, 2021, and duly recorded under document number 20210236810 Official Public Records of Bexar County, Texas (the "Deed of Trust"), Mark Taylor, William Nix, III or Cleveland Burke will, as Substitute Trustee under the Deed of Trust, in order to satisfy certain indebtedness owed to Blue Sky Bank ("Lender"), secured by the Deed of Trust, and at the request of the holder of said indebtedness, default having been made in the payment thereof, sell on Tuesday, December 5, 2023 (that being the first Tuesday of said month), at public auction, to the highest bidder for cash, at 10:00 a.m. of that day or not later than three (3) hours after that time, the property described on *Exhibit A* attached hereto. The sale will occur at the west side of the Bexar County Courthouse (between the Courthouse and the Paul Elizondo Tower), or as designated by the Commissioner's Court, and is open to the public for bidding.

       Because the Deed of Trust may cover both real and personal property, notice is hereby given of Lender's election to proceed as to both the real and personal property covered thereby in accordance with Lender's rights and remedies in respect of the real property, pursuant to Section 9.501(a) of the Texas Business and Commerce Code.

       The address of the undersigned Substitute Trustee (or William Nix III or Cleveland Burke) is 100 Congress Avenue, Suite 1800, Austin, Texas 78701.

       **Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as**

a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.

Executed as of November 13, 2023.

TRUSTEE

Mark Taylor , Substitute Trustee

THE STATE OF TEXAS    §
                      §
COUNTY OF TRAVIS      §

This instrument was acknowledged before me on November 13, 2023 by Mark Taylor, Trustee, in the capacity therein stated.

TAMMY GREENBLUM
NOTARY PUBLIC
ID# 322753-7
State of Texas
Comm. Exp. 01-13-2027

Notary Public in the State of Texas

## EXHIBIT "A"

A 0.06 ACRE TRACT OF LAND OUT OF LOT 1, BLOCK 39, N.C.B. 558, CITY OF SAN ANTONIO, BEXAR COUNTY, TEXAS, AND BEING THAT SAME TRACT OF LAND DESCRIBED IN DEED TO RICARDO AND LOURDES M. RAMIREZ OF RECORD IN VOLUME 15365, PAGE 494, OFFICIAL PUBLIC RECORDS, BEXAR COUNTY, TEXAS, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS: NOTE: (BASIS OF BEARING IS TEXAS SOUTH CENTRAL ZONE, NAD83.)

BEGINNING: At a PK Nail found in the east right of way line Chestnut Street (34 Foot Right of Way), for a southwest corner of a 3.78 Acre Tract described in deed to 314 Nolan, LLC, of record in Document No. 20210048798, Official Public Records, Bexar County, Texas, and the northwest corner of This Tract and the POINT OF BEGINNING;

THENCE: N 89°35'14" E, 59.55 feet, departing the east right of way line of Chestnut Street, with a south line of the 3.78 Acre Tract and the north line of This Tract to a 'A" iron rod with cap stamped "RICKMAN" found for a reentrant corner of the 3.78 Acre Tract and the northeast corner of This Tract;

THENCE: S 00°16'46" E, 45.37 feet, with a west line of the 3.78 Acre Tract and the east line of This Tract to a' " iron rod with cap found in the north right of way line of Booker Street (27.8 Foot Right of Way) for the southeast corner of This Tract;

THENCE: S 89°35'14" W, 59.55 feet, with the north right of way line of Booker Street and the south line of This Tract to a V2" iron rod with cap stamped "RICKMAN" set for the intersection of the east right of way line of Chestnut Street and the north right of way line of Booker Street and the southwest corner of This Tract;

THENCE: N 00°16'46" W, 45.37 feet with the east right of way line of Chestnut Street and the west line of This Tract to the POINT OF BEGINNING and containing 0.06 acres of land in the City of San Antonio, Bexar County, Texas.

## EXHIBIT "A"

A 3.78 ACRE TRACT OF LAND OUT OF N.C.B. 558, BLOCK 39, CITY OF SAN ANTONIO, BEXAR COUNTY, TEXAS, AND BEING THAT SAME 3.452 ACRE TRACT DESCRIBED IN DEED TO LANE AVENUE ASSOCIATES, LW, OF RECORD IN VOLUME 15869, PAGE 1763 , OFFICIAL PUBLIC RECORDS, BEXAR COUNTY, TEXAS, A TRACT CALLED A PORTION OF LOT 1, BLOCK 39, N.C.B. 558, DESCRIBED IN DEED TO LANE AVENUE ASSOCIATES, LLC, OF RECORD IN VOLUME 16489, PAGE 716 , OFFICIAL PUBLIC RECORDS, BEXAR COUNTY, TEXAS, A TRACT CALLED THE NORTH 42.2 FEET OF LOT 8, BLOCK 39, N.C.B. 558, AS DESCRIBED 1/4 DEED TO LANE AVENUE ASSOCIATES, LLC, OF RECORD IN DOCUMENT NO. 20180083243 , OFFICIAL PUBLIC RECORDS, BEXAR COUNTY, TEXAS, A TRACT CALLED THE SOUTH 37.2 FEET OF THE NORTH 79.4 FEET OF LOT 8, BLOCK 39, N.C.B. 558, AS DESCRIBED IN DEED TO LANE AVENUE ASSOCIATES, LLC, OF RECORD IN DOCUMENT NO. 20180092983 , OFFICIAL PUBLIC RECORDS, BEXAR COUNTY, TEXAS, AND TRACTS I, II AND III, AS DESCRIBED IN DEED TO LANE AVENUE ASSOCIATES, LW, OF RECORD IN DOCUMENT NO. 20180130296 , OFFICIAL PUBLIC RECORDS, BEXAR COUNTY, TEXAS AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:
NOTE: (BASIS OF BEARING IS TEXAS SOUTH CENTRAL ZONE, NAD83.)

BEGINNING: At a point in the west right of way line of Union Pacific Rail Road and the south right of way line of Nolan Street (Variable Width Right of Way), for the northeast corner of the 3.452 Acre Tract and This Tract, and the POINT OF BEGINNING, from which a PK nail found for reference bears S 00°16'46" E, a distance of 5.41 feet;

THENCE: S 00°16'46" E, 410.72 feet, departing the south right of way line of Nolan Street, with the west right of way line of the Union Pacific Rail Road and the east line of the 3.452 Acre Tract and This Tract to a VC iron rod found in the north right of way line of Dawson Street (33.2 Foot Right of Way), for the southeast corner of the 3.452 Acre Tract and This Tract;

THENCE: S 89°35'14" W, departing the west right of way line of Union Pacific Rail Road, with the north right of way line of Dawson Street and the south line of the 3.452 Acre Tract and This Tract, at a distance of 356.92 feet passing a 34" iron rod found for the southeast corner of the southern most tract conveyed to Lane Avenue Associates, LLC, of record in Document No. 20180130296 , Official Public Records, Bexar County, Texas, and the southwest corner of the 3.452 Acre Tract and continuing with the south line of the southern most Lane Avenue Associates; LLC Tract, This Tract and the north right of way line of Dawson Street, for a total distance of 416.47 feet to a 34" iron rod found in the east right of way line of Chestnut Street for the southwest corner of the southern most Lane Avenue Associates, LLC Tract, and This Tract;

THENCE: N 00°16'46" W, 194.91 feet, departing the north right of way line of Dawson Street, with the east right of way line of Chestnut Street, the west line of 3 tracts conveyed to Lane Avenue Associates, LLC., of record in Document No. 20180130296 , Official Public Records, Bexar County, Texas, a tract conveyed to Lane Avenue Associates, LLC, of record in Document No. 20180092983 , Official Public Records, Bexar County, Texas, and another tract conveyed to Lane Avenue Associates, LLC, of record in Document No. 20180083243 , Official Public Records, Bexar County, Texas, and a west line of This Tract to a W" iron rod with cap stamped

A-1

"RICKMAN" set in the south right of way line of Booker Street (27.8 Foot Right of Way — not open on the ground) for the northwest corner of the Lane Avenue Associates, LLC, Tract conveyed in Document No. 20180083243 , Official Public Records, Bexar County, Texas, and This Tract;

THENCE: With the south, east and north lines of Booker Street, a north line of the Lane Avenue Associates, LLC, Tract conveyed in Document No. 20180083243, Official Public Records, Bexar County, Texas, and a north, west and south line of the 3.452 Acre Tract and This Tract, the following calls and distances:

N 89°35'14" E, at a distance of 59.17 feet, passing a 'A" iron rod found for the northeast corner of the Lane Avenue Associates, LLC, Tract conveyed in Document No. 20180083243, Official Public Records, Bexar County, Texas, and a northwest corner of the 3.452 Acre Tract and This Tract and continuing for a total distance of 111.87 feet to a 14" iron rod found for the southeast corner of the east terminus of Booker Street and a reentrant corner of the 3.452 Acre Tract and This Tract;

N 00°16'46" W, 27.52 feet to a Y2" iron rod found for the northeast corner of the east terminus of Booker Street and a reentrant corner of the 3.452 Acre Tract and This Tract; S 89°35'14" W, 52.32 feet to a 'A" iron rod found for the southeast corner of a tract conveyed to Ricardo & Lourdes M. Ramirez, of record in Volume 15364, Page 494, Official Public Records, Bexar County, Texas, and a southwest corner of the 3.452 Acre Tract and This Tract;

THENCE: N 00°16'46" W, 45.37 feet, with the east line of the Ramirez Tract and the west line of the 3.452 Acre Tract and This Tract, to a 'A" iron rod with cap stamped "RICKMAN" set for the southeast corner of the Tract called a Portion of Lot 1, and the northeast corner of the Ramirez Tract, and a reentrant corner of This Tract;

THENCE: S 89°35'14" W, 59.55 feet, departing the west line of the 3.452 Acre Tract, with the north line of the Ramirez Tract, the south line of the Tract called a portion of Lot 1 and This Tract, to a 'A" iron rod with cap stamped "RICKMAN" set in the east right of way line of Chestnut Street (34 Foot Right of Way) for the northwest corner of the Ramirez Tract, the southwest corner of the Tract called a portion of Lot 1, and the most westerly southwest corner of This Tract;

THENCE: N 00°16'46" W, with the east right of way line of Chestnut Street, the west line of the Tract called a Portion of Lot 1, and This Tract, at a distance of 52 feet passing a 'A" iron rod found for the northwest corner of the Tract called a Portion of Lot 1 and the most westerly southwest corner of the 3.452 Acre Tract, continuing with the west line of the 3.452 Acre Tract for a total distance of 129.87 feet to a 1/2" iron rod found for the south corner of the southeast cutback corner of the intersection of Chestnut Street and Nolan Street, for a northwest corner of the 3.452 Acre Tract and This Tract;

THENCE: N 44°01'39" E, 8.54 feet, with the southeast line of the southeast cutback corner of Chestnut Street and Nolan Street, and a northwest line of the 3.452 Acre Tract and This Tract, to a 1/2" iron rod found for the north corner of the southeast cutback corner, and a northwest corner of the 3.452 Acre Tract and This Tract;

A-2

THENCE: With the south right of way line of Nolan Street, and the north line of the 3.452 Acre Tract and This Tract, the following calls and distances:

N 89°35'14" E, 53.58 feet to a 1/2" iron rod found for an angle point;

N 00°16'46" W, 6.95 feet to a point for an angle point;

N 89°35'14" E, 356.92 feet to the POINT OF BEGINNING and containing 3.78 acres of land in the City of San Antonio, Bexar County, Texas.

**EXHIBIT "A"**

A 0.06 ACRE TRACT OF LAND OUT OF LOT 1, BLOCK 39, N.C.B. 558, CITY OF SAN ANTONIO, BEXAR COUNTY, TEXAS, AND BEING THAT SAME TRACT OF LAND DESCRIBED IN DEED TO RICARDO AND LOURDES M. RAMIREZ OF RECORD IN VOLUME 15365, PAGE 494, OFFICIAL PUBLIC RECORDS, BEXAR COUNTY, TEXAS, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS: NOTE: (BASIS OF BEARING IS TEXAS SOUTH CENTRAL ZONE, NAD83.)

BEGINNING: At a PK Nail found in the east right of way line Chestnut Street (34 Foot Right of Way), for a southwest corner of a 3.78 Acre Tract described in deed to 314 Nolan, LLC, of record in Document No. 20210048798, Official Public Records, Bexar County, Texas, and the northwest corner of This Tract and the POINT OF BEGINNING;

THENCE: N 89°35'14" E, 59.55 feet, departing the east right of way line of Chestnut Street, with a south line of the 3.78 Acre Tract and the north line of This Tract to a 'A' iron rod with cap stamped "RICKMAN" found for a reentrant corner of the 3.78 Acre Tract and the northeast corner of This Tract;

THENCE: S 00°16'46" E, 45.37 feet, with a west line of the 3.78 Acre Tract and the east line of This Tract to a ' " iron rod with cap found in the north right of way line of Booker Street (27.8 Foot Right of Way) for the southeast corner of This Tract;

THENCE: S 89°35'14" W, 59.55 feet, with the north right of way line of Booker Street and the south line of This Tract to a V2" iron rod with cap stamped "RICKMAN" set for the intersection of the east right of way line of Chestnut Street and the north right of way line of Booker Street and the southwest corner of This Tract;

THENCE: N 00°16'46" W, 45.37 feet with the east right of way line of Chestnut Street and the west line of This Tract to the POINT OF BEGINNING and containing 0.06 acres of land in the City of San Antonio, Bexar County, Texas.

**File Information**

**eFILED IN THE OFFICIAL PUBLIC eRECORDS OF BEXAR COUNTY
LUCY ADAME-CLARK, BEXAR COUNTY CLERK**

| | |
|---|---|
| **Document Number:** | 20230208099 |
| **Recorded Date:** | November 13, 2023 |
| **Recorded Time:** | 12:53 PM |
| **Total Pages:** | 8 |
| **Total Fees:** | $50.00 |

**\*\* THIS PAGE IS PART OF THE DOCUMENT \*\***

**\*\* Do Not Remove \*\***

Any provision herein which restricts the sale or use of the described real property because of race is invalid and unenforceable under Federal law

STATE OF TEXAS, COUNTY OF BEXAR

I hereby Certify that this instrument was eFILED in File Number Sequence on this date and at the time stamped hereon by me and was duly eRECORDED in the Official Public Record of Bexar County, Texas on: 11/13/2023 12:53 PM



Lucy Adame-Clark
Bexar County Clerk

# Holland & Knight



100 Congress Avenue, Suite 1800 | Austin, TX 78701 | T 512.685.6400 | F 512.685.6417
Holland & Knight LLP | www.hklaw.com

Mark C. Taylor
+1 512-685-6404
Mark.Taylor@hklaw.com

November 13, 2023

Davies Enterprises, LLC                    *(via Certified Mail, RRR and First Class Mail)*
1314 East Sonterra Blvd.
San Antonio, TX 78258

Re:   That certain Deed of Trust, Security Agreement and Fixture Filing dated August
      25, 2021, executed by Borrower/Grantor for the benefit of Beneficiary to secure,
      among other things, Borrower/Grantor's obligations under that certain Term Loan
      Facility in the original principal amount of $4,464,534.00 as evidenced by a
      Commercial Loan Agreement and associated promissory note (the "Note") in the
      original principal amount of $4,464,534,00 of even date (as may have been
      modified), and recorded as document number 20210236808 of the Official Records
      of Bexar County, Texas, covering the Subject Property.

To Whom It May Concern:

      The undersigned represents Blue Sky Bank, the Beneficiary of the Deed of Trust. Due to
continuing defaults, the maturity of the Note has been accelerated.  Attached is a Notice of
Trustee's Sale under the Deed of Trust. The sale is set for December 5, 2023. The sale is set for
10:00 or at any time within 3 hours thereafter.

      To obtain a payoff, you may contact the undersigned.

                              HOLLAND & KNIGHT LLP

                              */s/ Mark C. Taylor*

                              Mark C. Taylor
                              For the Firm

MCT:tlg

Enclosure

November 13, 2023
Page 2


cc:   Client

     *(via Certified Mail, RRR and First Class Mail*
     Cameron Davies
     305 Hill Country Lane
     San Antonio, Texas 78232

     Mary K. Davies
     305 Hill Country Lane
     San Antonio, Texas 78232

## NOTICE OF SUBSTITUTE TRUSTEE'S SALE

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF BEXAR | § |

Pursuant to authority conferred upon me by that certain Deed of Trust executed by Davies Enterprises LLC dated August 25, 2021, and duly recorded under document number 20210236808 Official Public Records of Bexar County, Texas (the "Deed of Trust"), Mark Taylor, William Nix, III or Cleveland Burke will, as Substitute Trustee under the Deed of Trust, in order to satisfy certain indebtedness owed to Blue Sky Bank ("Lender"), secured by the Deed of Trust, and at the request of the holder of said indebtedness, default having been made in the payment thereof, sell on Tuesday, December 5, 2023 (that being the first Tuesday of said month), at public auction, to the highest bidder for cash, at 10:00 a.m. of that day or not later than three (3) hours after that time, the property described on *Exhibit A* attached hereto. The sale will occur at the west side of the Bexar County Courthouse (between the Courthouse and the Paul Elizondo Tower), or as designated by the Commissioner's Court, and is open to the public for bidding.

Because the Deed of Trust may cover both real and personal property, notice is hereby given of Lender's election to proceed as to both the real and personal property covered thereby in accordance with Lender's rights and remedies in respect of the real property, pursuant to Section 9.501(a) of the Texas Business and Commerce Code.

The address of the undersigned Substitute Trustee (or William Nix III or Cleveland Burke) is 100 Congress Avenue, Suite 1800, Austin, Texas 78701.

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a**

Doc# 20230208114 11/13/2023 12:56 PM Page 2 of 7 Lucy Adame-Clark, Bexar County Clerk

member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.

      Executed as of November 13, 2023.

TRUSTEE

_____

Mark Taylor , Substitute Trustee

THE STATE OF TEXAS   §
                    §
COUNTY OF TRAVIS   §

      This instrument was acknowledged before me on November 13, 2023 by Mark Taylor, Trustee, in the capacity therein stated.



TAMMY GREENBLUM
NOTARY PUBLIC
ID# 322753-7
State of Texas
Comm. Exp. 01-13-2027

_____
Notary Public in the State of Texas

## EXHIBIT "A"

A 3.78 ACRE TRACT OF LAND OUT OF N.C.B. 558, BLOCK 39, CITY OF SAN ANTONIO, BEXAR COUNTY, TEXAS, AND BEING THAT SAME 3.452 ACRE TRACT DESCRIBED IN DEED TO LANE AVENUE ASSOCIATES, LW, OF RECORD IN VOLUME 15869, PAGE 1763 , OFFICIAL PUBLIC RECORDS, BEXAR COUNTY, TEXAS, A TRACT CALLED A PORTION OF LOT 1, BLOCK 39, N.C.B. 558, DESCRIBED IN DEED TO LANE AVENUE ASSOCIATES, LLC, OF RECORD IN VOLUME 16489, PAGE 716 , OFFICIAL PUBLIC RECORDS, BEXAR COUNTY, TEXAS, A TRACT CALLED THE NORTH 42.2 FEET OF LOT 8, BLOCK 39, N.C.B. 558, AS DESCRIBED 1/4 DEED TO LANE AVENUE ASSOCIATES, LLC, OF RECORD IN DOCUMENT NO. 20180083243 , OFFICIAL PUBLIC RECORDS, BEXAR COUNTY, TEXAS, A TRACT CALLED THE SOUTH 37.2 FEET OF THE NORTH 79.4 FEET OF LOT 8, BLOCK 39, N.C.B. 558, AS DESCRIBED IN DEED TO LANE AVENUE ASSOCIATES, LLC, OF RECORD IN DOCUMENT NO. 20180092983 , OFFICIAL PUBLIC RECORDS, BEXAR COUNTY, TEXAS, AND TRACTS I, II AND III, AS DESCRIBED IN DEED TO LANE AVENUE ASSOCIATES, LW, OF RECORD IN DOCUMENT NO. 20180130296 , OFFICIAL PUBLIC RECORDS, BEXAR COUNTY, TEXAS AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

NOTE: (BASIS OF BEARING IS TEXAS SOUTH CENTRAL ZONE, NAD83.)

BEGINNING: At a point in the west right of way line of Union Pacific Rail Road and the south right of way line of Nolan Street (Variable Width Right of Way), for the northeast corner of the 3.452 Acre Tract and This Tract, and the POINT OF BEGINNING, from which a PK nail found for reference bears S 00°16'46" E, a distance of 5.41 feet;

THENCE: S 00°16'46" E, 410.72 feet, departing the south right of way line of Nolan Street, with the west right of way line of the Union Pacific Rail Road and the east line of the 3.452 Acre Tract and This Tract to a VC iron rod found in the north right of way line of Dawson Street (33.2 Foot Right of Way), for the southeast corner of the 3.452 Acre Tract and This Tract;

THENCE: S 89°35'14" W, departing the west right of way line of Union Pacific Rail Road, with the north right of way line of Dawson Street and the south line of the 3.452 Acre Tract and This Tract, at a distance of 356.92 feet passing a 34" iron rod found for the southeast corner of the southern most tract conveyed to Lane Avenue Associates, LLC, of record in Document No. 20180130296 , Official Public Records, Bexar County, Texas, and the southwest corner of the 3.452 Acre Tract and continuing with the south line of the southern most Lane Avenue Associates; LLC Tract, This Tract and the north right of way line of Dawson Street, for a total distance of 416.47 feet to a 34" iron rod found in the east right of way line of Chestnut Street for the southwest corner of the southern most Lane Avenue Associates, LLC Tract, and This Tract;

THENCE: N 00°16'46" W, 194.91 feet, departing the north right of way line of Dawson Street, with the east right of way line of Chestnut Street, the west line of 3 tracts conveyed to Lane Avenue Associates, LLC., of record in Document No. 20180130296 , Official Public Records, Bexar County, Texas, a tract conveyed to Lane Avenue Associates, LLC, of record in Document No. 20180092983 , Official Public Records, Bexar County, Texas, and another tract conveyed to Lane Avenue Associates, LLC, of record in Document No. 20180083243 , Official Public Records, Bexar County, Texas, and a west line of This Tract to a W' iron rod with cap stamped

"RICKMAN" set in the south right of way line of Booker Street (27.8 Foot Right of Way — not open on the ground) for the northwest corner of the Lane Avenue Associates, LLC, Tract conveyed in Document No. 20180083243 , Official Public Records, Bexar County, Texas, and This Tract;

THENCE: With the south, east and north lines of Booker Street, a north line of the Lane Avenue Associates, LLC, Tract conveyed in Document No. 20180083243, Official Public Records, Bexar County, Texas, and a north, west and south line of the 3.452 Acre Tract and This Tract, the following calls and distances:

N 89°35'14" E, at a distance of 59.17 feet, passing a 'A" iron rod found for the northeast corner of the Lane Avenue Associates, LLC, Tract conveyed in Document No. 20180083243, Official Public Records, Bexar County, Texas, and a northwest corner of the 3.452 Acre Tract and This Tract and continuing for a total distance of 111.87 feet to a 14" iron rod found for the southeast corner of the east terminus of Booker Street and a reentrant corner of the 3.452 Acre Tract and This Tract;

N 00°16'46" W, 27.52 feet to a Y2" iron rod found for the northeast corner of the east terminus of Booker Street and a reentrant corner of the 3.452 Acre Tract and This Tract; S 89°35'14" W, 52.32 feet to a 'A" iron rod found for the southeast corner of a tract conveyed to Ricardo & Lourdes M. Ramirez, of record in Volume 15364, Page 494, Official Public Records, Bexar County, Texas, and a southwest corner of the 3.452 Acre Tract and This Tract;

THENCE: N 00°16'46" W, 45.37 feet, with the east line of the Ramirez Tract and the west line of the 3.452 Acre Tract and This Tract, to a 'A" iron rod with cap stamped "RICKMAN" set for the southeast corner of the Tract called a Portion of Lot 1, and the northeast corner of the Ramirez Tract, and a reentrant corner of This Tract;

THENCE: S 89°35'14" W, 59.55 feet, departing the west line of the 3.452 Acre Tract, with the north line of the Ramirez Tract, the south line of the Tract called a portion of Lot 1 and This Tract, to a 'A" iron rod with cap stamped "RICKMAN" set in the east right of way line of Chestnut Street (34 Foot Right of Way) for the northwest corner of the Ramirez Tract, the southwest corner of the Tract called a portion of Lot 1, and the most westerly southwest corner of This Tract;

THENCE: N 00°16'46" W, with the east right of way line of Chestnut Street, the west line of the Tract called a Portion of Lot 1, and This Tract, at a distance of 52 feet passing a 'A" iron rod found for the northwest corner of the Tract called a Portion of Lot 1 and the most westerly southwest corner of the 3.452 Acre Tract, continuing with the west line of the 3.452 Acre Tract for a total distance of 129.87 feet to a 1/2" iron rod found for the south corner of the southeast cutback corner of the intersection of Chestnut Street and Nolan Street, for a northwest corner of the 3.452 Acre Tract and This Tract;

THENCE: N 44°01'39" E, 8.54 feet, with the southeast line of the southeast cutback corner of Chestnut Street and Nolan Street, and a northwest line of the 3.452 Acre Tract and This Tract, to a 1/2" iron rod found for the north corner of the southeast cutback corner, and a northwest corner of the 3.452 Acre Tract and This Tract;

Doc# 20230208114 11/13/2023 12:56 PM Page 5 of 7 Lucy Adame-Clark, Bexar County Clerk

THENCE: With the south right of way line of Nolan Street, and the north line of the 3.452 Acre Tract and This Tract, the following calls and distances:

N 89°35'14" E, 53.58 feet to a 1/2" iron rod found for an angle point;

N 00°16'46" W, 6.95 feet to a point for an angle point;

N 89°35'14" E, 356.92 feet to the POINT OF BEGINNING and containing 3.78 acres of land in the City of San Antonio, Bexar County, Texas.

A-3

## EXHIBIT "A"

A 0.06 ACRE TRACT OF LAND OUT OF LOT 1, BLOCK 39, N.C.B. 558, CITY OF SAN ANTONIO, BEXAR COUNTY, TEXAS, AND BEING THAT SAME TRACT OF LAND DESCRIBED IN DEED TO RICARDO AND LOURDES M. RAMIREZ OF RECORD IN VOLUME 15365, PAGE 494, OFFICIAL PUBLIC RECORDS, BEXAR COUNTY, TEXAS, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS: NOTE: (BASIS OF BEARING IS TEXAS SOUTH CENTRAL ZONE, NAD83.)

BEGINNING: At a PK Nail found in the east right of way line Chestnut Street (34 Foot Right of Way), for a southwest corner of a 3.78 Acre Tract described in deed to 314 Nolan, LLC, of record in Document No. 20210048798, Official Public Records, Bexar County, Texas, and the northwest corner of This Tract and the POINT OF BEGINNING;

THENCE: N 89°35'14" E, 59.55 feet, departing the east right of way line of Chestnut Street, with a south line of the 3.78 Acre Tract and the north line of This Tract to a 'A" iron rod with cap stamped "RICKMAN" found for a reentrant corner of the 3.78 Acre Tract and the northeast corner of This Tract;

THENCE: S 00°16'46" E, 45.37 feet, with a west line of the 3.78 Acre Tract and the east line of This Tract to a' " iron rod with cap found in the north right of way line of Booker Street (27.8 Foot Right of Way) for the southeast corner of This Tract;

THENCE: S 89°35'14" W, 59.55 feet, with the north right of way line of Booker Street and the south line of This Tract to a V2" iron rod with cap stamped "RICKMAN" set for the intersection of the east right of way line of Chestnut Street and the north right of way line of Booker Street and the southwest corner of This Tract;

THENCE: N 00°16'46" W, 45.37 feet with the east right of way line of Chestnut Street and the west line of This Tract to the POINT OF BEGINNING and containing 0.06 acres of land in the City of San Antonio, Bexar County, Texas.

**File Information**

**eFILED IN THE OFFICIAL PUBLIC eRECORDS OF BEXAR COUNTY**
**LUCY ADAME-CLARK, BEXAR COUNTY CLERK**

| | |
|---|---|
| **Document Number:** | 20230208114 |
| **Recorded Date:** | November 13, 2023 |
| **Recorded Time:** | 12:56 PM |
| **Total Pages:** | 7 |
| **Total Fees:** | $46.00 |

**\*\* THIS PAGE IS PART OF THE DOCUMENT \*\***

**\*\* Do Not Remove \*\***

Any provision herein which restricts the sale or use of the described real property because of race is invalid and unenforceable under Federal law

STATE OF TEXAS, COUNTY OF BEXAR

I hereby Certify that this instrument was eFILED in File Number Sequence on this date and at the time stamped hereon by me and was duly eRECORDED in the Official Public Record of Bexar County, Texas on: 11/13/2023 12:56 PM



Lucy Adame-Clark
Bexar County Clerk

# Holland & Knight



100 Congress Avenue, Suite 1800 | Austin, TX 78701 | T 512.685.6400 | F 512.685.6417
Holland & Knight LLP | www.hklaw.com

Mark C. Taylor
+1 512-685-6404
Mark.Taylor@hklaw.com

November 13, 2023

Cruising Kitchens, LLC                    *(via Certified Mail RRR and First Class Mail)*
14732 Bulverde Road
San Antonio, TX 78257

Davies Enterprises, LLC                   *(via Certified Mail, RRR and First Class Mail)*
1314 East Sonterra Blvd.
San Antonio, TX 78258

Re:   That certain Deed of Trust, Security Agreement and Fixture Filing dated August
      25, 2021, executed by Grantor for the benefit of Beneficiary to secure, among other
      things, Borrower obligations under that certain Term Loan Facility in the original
      principal amount of $4,464,534.00 as evidenced by a Commercial Loan Agreement
      and associated promissory note (the "Note") in the original principal amount of
      $4,464,534.00 of even date (as may have been modified), and as guaranteed by
      Grantor pursuant to a Commercial Guaranty Agreement, and recorded as document
      number 20210236812 of the Official Records of Bexar County, Texas, covering the
      Subject Property.

To Whom It May Concern:

      The undersigned represents Blue Sky Bank, the Beneficiary of the Deed of Trust.  Due to
continuing defaults, the maturity of the Note has been accelerated.  Attached is a Notice of
Trustee's Sale under the Deed of Trust.  The sale is set for December 5, 2023.  The sale is set for
10:00 or at any time within 3 hours thereafter.

November 13, 2023
Page 2

To obtain a payoff, you may contact the undersigned.

HOLLAND & KNIGHT LLP

*/s/ Mark C. Taylor*

Mark C. Taylor
For the Firm

MCT:tlg

Enclosure

cc:    Client

*(via Certified Mail, RRR and First Class Mail*
Cameron Davies
305 Hill Country Lane
San Antonio, Texas 78232

Mary K. Davies
305 Hill Country Lane
San Antonio, Texas 78232

## NOTICE OF SUBSTITUTE TRUSTEE'S SALE

STATE OF TEXAS            §
                          §
COUNTY OF BEXAR           §

      Pursuant to authority conferred upon me by that certain Deed of Trust Security Agreement and Fixture Filing executed by Cruising Kitchens LLC dated August 25, 2021, and duly recorded under document number  20210236812 Official Public Records of Bexar County, Texas (the "Deed of Trust"), Mark Taylor, William Nix, III or Cleveland Burke will, as Substitute Trustee under the Deed of Trust, in order to satisfy certain indebtedness owed to Blue Sky Bank ("Lender"), secured by the Deed of Trust, and at the request of the holder of said indebtedness, default having been made in the payment thereof, sell on Tuesday, December 5, 2023 (that being the first Tuesday of said month), at public auction, to the highest bidder for cash, at 10:00 a.m. of that day or not later than three (3) hours after that time, the property described on *Exhibit A* attached hereto. The sale will occur at the west side of the Bexar County Courthouse (between the Courthouse and the Paul Elizondo Tower), or as designated by the Commissioner's Court, and is open to the public for bidding.

      Because the Deed of Trust may cover both real and personal property, notice is hereby given of Lender's election to proceed as to both the real and personal property covered thereby in accordance with Lender's rights and remedies in respect of the real property, pursuant to Section 9.501(a) of the Texas Business and Commerce Code.

      The address of the undersigned Substitute Trustee (or William Nix III or Cleveland Burke) is 100 Congress Avenue, Suite 1800, Austin, Texas 78701.

      **Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as**

a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.

Executed as of November 13, 2023.

TRUSTEE

_____
Mark Taylor , Substitute Trustee

THE STATE OF TEXAS     §
                       §
COUNTY OF TRAVIS       §

This instrument was acknowledged before me on November 13, 2023 by Mark Taylor, Trustee, in the capacity therein stated.

TAMMY GREENBLUM
NOTARY PUBLIC
ID# 322753-7
State of Texas
Comm. Exp. 01-13-2027

_____
Notary Public in the State of Texas

**Exhibit A**

**TRACT I**

A TRACT OR PARCEL OF LAND CONTAINING 8.8131 ACRES OF LAND, (383,899 SQUARE FEET), SITUATED IN THE LOUIS KNEIPP SURVEY NO. 11, ABSTRACT NO. 391, BEXAR COUNTY, TEXAS, BEING OUT OF AND A PART OF THAT CERTAIN CALLED 5.319 ACRE TRACT OF LAND AND THAT CERTAIN CALLED 9.479 ACRE TRACT OF LAND AS CONVEYED TO MARTIM, INC. BY INSTRUMENT RECORDED IN VOLUME 4176, PAGE 1816, OF THE DEED RECORDS OF BEXAR COUNTY, TEXAS, SAID 8.8131 ACRE TRACT OF LAND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS: (BEARING BASIS: VOLUME 4176, PAGE 1816, OF THE DEED RECORDS OF BEXAR COUNTY, TEXAS).

BEGINNING at a 1" iron pipe found on the east right-of-way line of Salverde Road for the southeast corner of Rob Cary Kennels Subdivision, a subdivision in Bexar County, Texas, according to the map or plat thereof recorded in Volume 9534, Page 3, of the Map Records of Bexar County, Texas, same being the northwest corner of said 5.319 Acre Tract, same being the most westerly northwest corner and POINT OF BEGINNING of the herein described tract;

Thence, S 29°39'25" E, with the common line of said Rob Cary Kennels Subdivision, a distance of 1602.36 feet to a calculated point for the southeast corner of said Rob Cary Kennels Subdivision, same being the northeast corner of said 5.319 Acre Tract, same being a corner of the herein described tract;

Thence, N 60°09'12" W, with the common line of said Rob Cary Kennels Subdivision, pass at a distance of 172.78 feet a 5/8" iron rod found for the southeast corner of said Rob Cary Kennels Subdivision, same being the southeast corner of that certain called 3.997 acre tract of land as conveyed to Matthew Gassner by instrument recorded in Document CF No. 20060259734 of the Official Public Records of Bexar County, Texas, for a total distance of 342.10 feet to a ½" iron rod found on the common line of Seven Oaks Subdivision, Unit 10, a subdivision in Bexar County, Texas, according to the map or plat thereof recorded in Volume 9300, Page 112, of the Map Records of Bexar County, Texas, for the northeast corner of said 3.997 Acre Tract, same being the northwest corner of said 9.479 Acre Tract, same being a corner of the herein described tract;

Thence, N 89°37'17" E, with the common line of said Seven Oaks Subdivision, Unit 10, a distance of 418.90 feet to a 5/8" iron rod found for the northwest corner of that certain called 6.00 acre tract of land as conveyed to Jameese Hundley by instrument recorded in Volume 5175, Page 1441, of the Deed Records of Bexar County, Texas, same being the northeast corner of said 9.479 Acre Tract, same being the northeast corner of the herein described tract;

Thence, S 04°53'25" E, with the common line of said 6.00 Acre Tract, a distance of 250.32 feet to a calculated point for a corner of the herein described tract;

Thence, S 74°19'46" W, across said 9.479 Acre Tract and said 5.319 Acre Tract, a distance of 460.56 feet to a calculated point for a corner of the herein described tract;

Thence, S 00°00'12" E, across said 9.479 Acre Tract and said 5.319 Acre Tract, a distance of 36.12 feet to a calculated point for a corner of the herein described tract;

Thence, S 74°19'46" W, across said 9.479 Acre Tract and said 5.319 Acre Tract, a distance of 722.58 feet to a calculated point for a corner of the herein described tract;

Thence, S 89°35'40" W, across said 9.479 Acre Tract and said 5.319 Acre Tract, a distance of 202.15 feet to a calculated point on the east right-of-way line of Bulverde Road, on the arc of a curve to the left, for the southwest corner of the herein described tract;

Thence, Northwesterly, with the east right-of-way line of Bulverde Road, along the arc of said curve to the left, having an included angle of 02°10'40", a radius of 1136.63 feet, a chord that bears, N 03°41'09" W, a chord distance of 42.97 feet, for an arc distance of 42.98 feet to a calculated point for the point of tangency of said curve to the left;

Thence, N 04°46'29" W, with the east right-of-way line of Bulverde Road, a distance of 261.00 feet to the POINT OF BEGINNING and containing 0.6131 acres of land, (383,299 square feet) more or less.

## TRACT II

A TRACT OR PARCEL OF LAND CONTAINING 1.5540 ACRES OF LAND, (67,693 SQUARE FEET), SITUATED IN THE LOUIS KNEPP SURVEY NO. 11, ABSTRACT NO. 391, BEXAR COUNTY, TEXAS, BEING OUT OF AND A PART OF THAT CERTAIN CALLED 5.319 ACRE TRACT OF LAND AND THAT CERTAIN CALLED 9.479 ACRE TRACT OF LAND AS CONVEYED TO MARITIM, INC. BY INSTRUMENT RECORDED IN VOLUME 4176, PAGE 1816, OF THE DEED RECORDS OF BEXAR COUNTY, TEXAS, SAID 1.5540 ACRE TRACT OF LAND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS: (BEARING BASIS: VOLUME 4176, PAGE 1816, OF THE DEED RECORDS OF BEXAR COUNTY, TEXAS).

BEGINNING at a calculated point on the east right-of-way line of Bulverde Road, on the arc of a curve to the left, for the for the southeast corner of Briarwick, Unit-4, a subdivision in Bexar County, Texas, according to the map or plat thereof recorded in Volume 7300, Page 202, of the Map Records of Bexar County, Texas, same being the southwest corner of said 9.479 Acre Tract, same being the southwest corner and POINT OF BEGINNING of the herein described tract;

Thence, Northwesterly, with the east right-of-way line of Bulverde Road, along the arc of said curve to the left, having an included angle of 02°01'41", a radius of 1136.63 feet, a chord that bears, N 01°34'30" W, a chord distance of 40.02 feet, for an arc distance of 40.02 feet to a calculated point for the northwest corner of the herein described tract;

Thence, N 89°35'40" E, across said 9.479 Acre Tract, a distance of 202.15 feet to a calculated point for a corner of the herein described tract;

Thence, N 74°19'49" E, across said 9.479 Acre Tract, a distance of 327.88 feet to a calculated point for the northeast corner of the herein described tract;

Thence, S 09°33'07" E, across said 9.479 Acre Tract, a distance of 155.74 feet to a calculated point on the common line of Briarwick, Unit-2, a subdivision in Bexar County, Texas, according to the map or plat thereof recorded in Volume 7300, Page 122, of the Map Records of Bexar County, Texas, for the southeast corner of the herein described tract;

Thence, S 89°35'40" W, in part with the common line of said Briarwick, Unit-2 and the common line of said Briarwick, Unit-4, a distance of 700.39 feet to the POINT OF BEGINNING and containing 1.5540 acres of land, (67,693 square feet) more or less.

## TRACT III

A TRACT OR PARCEL OF LAND CONTAINING 4.4304 ACRES OF LAND, (192,990 SQUARE FEET), SITUATED IN THE LOUIS KNEIPP SURVEY NO. 11, ABSTRACT NO. 391, BEXAR COUNTY, TEXAS, BEING OUT OF AND A PART OF THAT CERTAIN CALLED 3.319 ACRE TRACT OF LAND AND THAT CERTAIN CALLED 9.479 ACRE TRACT OF LAND AS CONVEYED TO MARTIM, INC. BY INSTRUMENT RECORDED IN VOLUME 4176, PAGE 1816, OF THE DEED RECORDS OF BEXAR COUNTY, TEXAS, SAID 4.4304 ACRE TRACT OF LAND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS: (BEARING BASIS: VOLUME 4176, PAGE 1816, OF THE DEED RECORDS OF BEXAR COUNTY, TEXAS).

BEGINNING at a calculated point on the north line of Briarwick, Unit-2, a subdivision in Bexar County, Texas, according to the map or plat thereof recorded in Volume 7500, Page 122, of the Map Records of Bexar County, Texas, same being the south line of said 9.479 Acre Tract, for the southwest corner and POINT OF BEGINNING of the herein described tract, from which a calculated point on the east right-of-way line of Bulverde Road for the southwest corner of said 9.479 Acre Tract, same being the northwest corner of Briarwick, Unit-1, a subdivision in Bexar County, Texas, according to the map or plat thereof recorded in Volume 7300, Page 203, of the Map Records of Bexar County, Texas, bears, S 89°53'40" W, a distance of 790.39 feet;

Thence, N 00°35'07" W, across said 9.479 Acre Tract, a distance of 151.74 feet to a calculated point for the northwest corner of the herein described tract;

Thence, N 74°15'46" E, across said 9.479 Acre Tract, a distance of 195.50 feet to a calculated point for a corner of the herein described tract;

Thence, N 00°00'12" W, across said 9.479 Acre Tract, a distance of 36.12 feet to a corner of the herein described tract;

Thence, N 74°15'46" E, across said 9.479 Acre Tract, a distance of 460.56 feet to a calculated point on the common line of that certain called 6.00 acre tract of land as conveyed to Jeaneen Handley by instrument recorded in Volume 5175, Page 1441, of the Deed Records of Bexar County, Texas, same being the common line of said 9.479 Acre Tract, for the northeast corner of the herein described tract;

Thence, S 04°52'28" E, in part with the common line of said 6.00 Acre Tract and the common line of that certain called 1.00 acre tract of land as conveyed to Rodger J. Burkhardt and Wife, Connie T. Burkhardt by instrument recorded in Volume 2502, Page 1351, of the Deed Records of Bexar County, Texas, same being the common line of said 9.479 Acre Tract, a distance of 395.65 feet to a calculated point on the common line of said Briarwick, Unit-2, for the southeast corner of said 1.00 Acre Tract, same being the southeast corner of the herein described tract;

Thence, S 89°55'40" W, with the common line of said Briarwick, Unit-2, a distance of 668.44 feet to the POINT OF BEGINNING and containing 4.4304 acres of land, (192,990 square feet) more or less.

**File Information**

**eFILED IN THE OFFICIAL PUBLIC eRECORDS OF BEXAR COUNTY
LUCY ADAME-CLARK, BEXAR COUNTY CLERK**

| | |
|---|---|
| **Document Number:** | 20230208120 |
| **Recorded Date:** | November 13, 2023 |
| **Recorded Time:** | 1:01 PM |
| **Total Pages:** | 6 |
| **Total Fees:** | $42.00 |

**\*\* THIS PAGE IS PART OF THE DOCUMENT \*\***

**\*\* Do Not Remove \*\***

Any provision herein which restricts the sale or use of the described real property because of race is invalid and unenforceable under Federal law

STATE OF TEXAS, COUNTY OF BEXAR

I hereby Certify that this instrument was eFILED in File Number Sequence on this date and at the time stamped hereon by me and was duly eRECORDED in the Official Public Record of Bexar County, Texas on: 11/13/2023 1:01 PM



Lucy Adame-Clark
Bexar County Clerk

Doc# 20210236808 08/26/2021 2:50PM Page 1 of 26 Lucy Adame-Clark, Bexar County Clerk



Recordation Requested By:
Blue Sky Bank
3353 East 41st Street
Tulsa, OK 74135

Send Tax Notices To:
Davies Enterprises, LLC
1314 East Sonterra Blvd.
San Antonio, TX 78258

---

(SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY)  7*Aff* 21006790

## DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING
## CITY OF SAN ANTONIO, COUNTY OF BEXAR, STATE OF TEXAS
[ 314 Nolan Street ]

**THIS DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING** (the "Deed of Trust") made this 25th day of August, 2021, by and between **DAVIES ENTERPRISES, LLC,** a Texas limited liability company, having a mailing address of 1314 East Sonterra Blvd., San Antonio, Texas 78258 ("Grantor"), party of the first part, **GENTNER F. DRUMMOND,** having a mailing address of Drummond Law, PLLC, 1500 South Utica Avenue, Suite 400, Tulsa, Oklahoma 74104 ("Trustee"), party of the second part, and **BLUE SKY BANK,** having a mailing address of 3353 East 41st Street, Tulsa, Oklahoma 74135 ("Beneficiary") party of the third part.

Capitalized terms herein are defined in Article 2.00.

**1.00   RECITALS**

1.01   *The Loan.*   Grantor is indebted to Beneficiary for a Term Loan Facility in the principal sum of FOUR MILLION FOUR HUNDRED SIXTY-FOUR THOUSAND FIVE HUNDRED THIRTY-FOUR AND 00/100 DOLLARS ($4,464,534.00), as evidenced by the Grantor's Commercial Loan Agreement of even date ("Loan Agreement") and its associated promissory note, as well as certain commercial guarantees of repayment of said Note to the Beneficiary under, in part, that certain Loan Agreement.

1.02   *Obligations Secured.*   This Deed of Trust secures (a) the full and punctual payment of the Loan according to the terms of the Note, (b) the payment of all sums due to Beneficiary according to the terms of any of the Loan Documents, and (c) the performance of, and compliance with, all of the obligations of Grantor (express or implied) contained in the Loan Documents.

**2.00   DEFINITIONS.**   Whenever capitalized in this Deed of Trust, the following terms shall have the meaning given in this Section 2.00, unless the context clearly indicates a contrary intent.

2.01   *Assignment of Leases And Rents.*   "Assignment of Leases and Rents" means the general Assignment Of Leases and Rents in favor of Beneficiary executed by Grantor of even date herewith, pursuant to which Grantor has, among other things, assigned rents under all Leases to Beneficiary as additional security for the Loan.

2.02 *Beneficiary.* "Beneficiary" means **BLUE SKY BANK**, Beneficiary's successors and assigns, and any subsequent holder of the Note.

2.03 *Controlling Party.* "Controlling Party" means any Person, directly or indirectly, possessing the power to direct or cause the direction of the management and policies of Grantor, whether through the ownership or control of voting securities or rights, by contract or otherwise.

2.04 *Deed of Trust.* "Deed of Trust" means this instrument, including all current and future supplements, amendments, and attachments thereto.

2.05 *Default.* "Default" means: (a) the failure of Grantor to perform, cause to be performed, abide by, comply with, or observe any duty or obligation imposed upon Grantor by the Loan Documents, if not cured within any applicable grace period; (b) the breach of any of Grantor's warranties or covenants contained in any of the Loan Documents; (c) a misrepresentation by Grantor, Grantor's counsel, or any other Person on behalf of Grantor, in any of the Loan Documents; and (d) any event, happening, or condition which would constitute an Event of Default if not cured within any applicable grace period.

2.06 *Encumbrances.* "Encumbrances" includes all liens, mortgages, rights, leases, restrictions, easements, deeds of trust, covenants, agreements, rights of way, rights of redemption, security interests, conditional sales agreements, land installment contracts, options, and all other burdens or charges.

2.07 *Event of Default.* "Event of Default" has the meaning given and provided in Section 10.01.

2.08 *Escrow Account.* "Escrow Account" means the Account which may be maintained pursuant to Section 6.02.

2.09 *Grantor.* "Grantor" means the party identified as such in the introductory paragraph of this Deed of Trust, and Grantor's successors and assigns, including any subsequent owner of all or any portion of Grantor's interest in the Trust Property.

2.10 *Guaranty.* "Guaranty" means the respective Commercial Guaranty in favor of Beneficiary executed by the following:

(i) Cruising Kitchens, LLC;
(ii) Cameron Davies, individually; and
(iii) Mary K. Davies, Individually,

pursuant to which the above-named guarantee, among other things, the full and prompt payment and performance of the Borrower's obligations under the Loan Documents.

Doc# 20210236808 08/26/2021 2:50PM Page 3 of 26 Lucy Adame-Clark, Bexar County Clerk

2.11  *Land.*  "Land" means the land more particularly described in <u>Exhibit "A"</u> to this Deed of Trust.

2.12  *Law.*  "Law" means all federal, state, county, and municipal laws, regulations, rules, and ordinances, and all rules, regulations and orders of any other governmental authority including common law and rulings, decisions and interpretations of all judicial, quasi-judicial, and administrative bodies.

2.13  *Lease.*  "Lease" means each lease which purports to convey any interest of Grantor in any portion of the Trust Property and includes subleases and assignments of leases.

2.14  *Legal Action.*  "Legal Action" includes all suits or other proceedings brought at law or in equity or before any administrative agency, governmental body, or arbitrator which in any manner relate to the Trust Property or arise out of or relate to any of the Loan Documents.

2.15  *Loan.*  "Loan" means the loan by Beneficiary to the Grantor in the principal amount of FOUR MILLION FOUR HUNDRED SIXTY-FOUR THOUSAND FIVE HUNDRED THIRTY-FOUR AND 00/100 DOLLARS ($4,464,534.00), as evidenced by the Note.

2.16  *Loan Documents.*  "Loan Documents" means this Deed of Trust, the Term Note, the Commercial Loan Agreement, the Security Agreement and the Limited Commercial Guaranties, and any and all certificates, opinions, assignments and other documents executed in connection herewith or therewith, and all current and future supplements, amendments, and attachments thereto.

2.17  *Note.*  "Note" shall mean the promissory note of Grantor of even date herewith in the principal sum of FOUR MILLION FOUR HUNDRED SIXTY-FOUR THOUSAND FIVE HUNDRED THIRTY-FOUR AND 00/100 DOLLARS ($4,464,534.00), payable to the order of Beneficiary and evidencing the Loan, including all current and future supplements, amendments and attachments thereto and having a maturity date of August 25, 2031, subject to future extensions or modifications.

2.18  *Operate.*  "Operate" means to operate, use, manage, lease, contract, and control, including the right to repair, renew, replace, alter, add, better, and improve.

2.19  *Penalty Rate.*  "Penalty Rate" means an interest rate of **five (5.00%) percentage** points per annum above the contract interest rate otherwise payable on the Loan pursuant to the terms and provisions of the Note, during the time period that the Penalty Rate is applicable.

2.20  *Permitted Encumbrances.*  "Permitted Encumbrances" means this Deed of Trust and all Encumbrances as to which Beneficiary has given Beneficiary's prior written approval, liens arising for real estate taxes or public charges for sewage, water, drainage or other public improvements not yet due and payable, liens being contested as permitted herein, and Leases not in violation of Section 7.04.

Doc# 20210236808 08/26/2021 2:50PM Page 4 of 26 Lucy Adame-Clark, Bexar County Clerk

2.21  *Person.* "Person" means any individual, corporation, partnership, association, trust, joint venture, or any other legal entity.

2.22  *Property.* "Property" has the meaning given in Section 3.03.

2.23  *Real Property.* "Real Property" means the Land, together with the improvements and rights identified in Section 3.01 and all other portions of the Trust Property which legally may be deemed to be real property under Section 3.07.

2.24  *Rents.* "Rents" includes all rents, profits, royalties, issues, revenues, income, proceeds, earnings, and products generated by or arising out of the Trust Property.

2.25  *Risk.* "Risk" includes risk of loss or damage by fire, lightning, windstorm, hail, explosion, riot, riot attending a strike, civil strife, civil commotion, aircraft, vehicles, smoke, vandalism, malicious mischief, boiler explosion, and any other risk customarily insured against by persons operating property similar in kind to the Trust Property.

2.26  *Taking.* "Taking" includes any taking by condemnation or eminent domain, any sale in lieu of condemnation under threat thereof, the alteration of the grade of any street, or any other injury to or decrease in the value of the Trust Property by any public or quasi-public authority or corporation or any other person having the power of eminent domain.

2.27  *Taxes.* "Taxes" includes all taxes, excises, documentary stamp and transfer taxes, recording taxes, assessments, and other public charges levied or assessed upon the Trust Property, upon the Loan, or upon any Loan Document.

2.28  *Tenant.* "Tenant" means any lessee of Grantor under any Lease, and any sub-lessee or assignee of a Lease.

2.29  *Title Policy.* "Title Policy" means that certain pro forma policy of title insurance issued by Fidelity National Title, File No. FAH21006790.

2.30  *Trustee.* "Trustee" means **Gentner F. Drummond,** or any additional, successor, replacement, or substitute trustee permitted by Section 9.02.

2.31  *Trust Property.* "Trust Property" has the meaning given in Section 3.06.

2.32  *Uniform Commercial Code.* "Uniform Commercial Code" means the Uniform Commercial Code as adopted by the States of Oklahoma and Texas, and any amendments thereto or reenactments thereof.

## 3.00  GRANTING CLAUSES.

3.01  *Lien on Real Property.* Grantor, in consideration of the Loan and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, grants and assigns to

Trustee, in trust for the benefit of Beneficiary, all the Land situated at **314 Nolan Street, City of San Antonio, County of Bexar, State of Texas**, described more particularly in **Exhibit "A"** attached hereto as a part hereof, together with (a) all buildings and improvements now or hereafter located thereon, (b) all rights, rights of way, air rights, riparian rights, franchises, licenses, easements, tenements, hereditaments, appurtenances, accessions and other rights and privileges now or hereafter belonging to the Land or the buildings and improvements thereupon, now owned or hereafter acquired by Grantor.

3.02 *Lien on Fixtures and Personal Property.* Grantor further grants and assigns to Trustee all of the machines, apparatus, equipment, fixtures and articles of personal property now or hereafter located on the Land or in any improvements thereon (other than that owned by any Tenant), and all the right, title and interest of the Grantor in and to any of such property which may be subject to any title retention or security agreement or instrument having priority over this Deed of Trust.

3.03 *Property.* All of the property described in Sections 3.01 and 3.02 is hereinafter collectively called the "Property."

3.04 *Lien on Rents and Other Rights.* Grantor further grants and assigns to Trustee, in trust for the benefit of Beneficiary, (a) all Rents, including, without limitation, to the extent permitted by applicable law, all cash or security deposits to secure performance by Tenants (whether such cash or securities are to be held until the expiration of the terms of Leases or are to be applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms), (b) all of the estate, right, title, use, claim and demand of every nature whatsoever, at law or in equity, which Grantor may now have or may hereafter acquire in and to the Property, and (c) all right, title and interest of Grantor in and to all extensions, betterments, renewals, substitutes and replacements of, and all additions and appurtenances to, the Property, hereafter acquired by or released to Grantor, or constructed, assembled or placed by or for Grantor on the Property, and all in conversion of the security constituted thereby.

3.05 *Lien on Insurance Policies and Condemnation Awards.* Grantor further grants and assigns to Trustee, in trust for the benefit of Beneficiary, all insurance policies and insurance proceeds pertaining to the Property and all awards or payments, including interest thereon and the right to receive the same, which may be made with respect to any of the Property as a result of any taking or any injury to or decrease in the value of the Property.

3.06 *The Trust Property.* All of the property described in this Article 3.00 is collectively called the "Trust Property."

3.07 *Security Interest under the Uniform Commercial Code.* Any portion of the Trust Property which by law is or may be real property shall be deemed to be a part of the Real Property for the purposes of this Deed of Trust. The remainder of the Trust Property shall be subject to the Uniform Commercial Code and this Deed of Trust shall constitute a Security Agreement with respect thereto. Grantor hereby grants to Beneficiary a security interest in that portion of the trust Property not deemed a part of the Real Property for the purpose of securing performance of all of Grantor's obligations under the Loan Documents. With respect to such security interest

(a) Beneficiary may exercise all rights granted or to be granted a secured party under the Uniform Commercial Code and (b) upon the occurrence of an Event of Default Beneficiary shall have a right of possession superior to any right of possession of Grantor or any person claiming through or on behalf of Grantor.

## 4.00    HABENDUM CLAUSE AND DEFEASANCES.

4.01    *Habendum Clause.*  Trustee shall have and hold the Trust Property in fee simple, upon the terms and trust herein set forth.

4.02    *Termination of the Trust.*  If all obligations of Grantor under this Deed of Trust and the other Loan Documents, are paid and satisfied in accordance with the terms hereof and thereof, the estate hereby granted shall cease and the Trust Property shall be released to Grantor, at the reasonable cost of Grantor, and Beneficiary shall promptly (within ten (10) business days) prepare and record a release, in form reasonably acceptable to Grantor, of the Deed of Trust and all other related instruments which have been previously recorded in connection with the Loan.

## 5.00    REPRESENTATIONS AND WARRANTIES.

5.01    *Warranty of Title and Further Assurances.*  Grantor warrants that it has the right and authority to convey the Trust Property and warrants generally title to the Trust Property and that Grantor will execute such further assurances as may be requested.

5.02    *Purpose of the Loan.*  Grantor warrants that the Loan is given for an actual loan of money for business purposes and not for personal, residential or agricultural purposes.

5.03    *Existence, Good Standing, Power and Authority of Grantor.* · Grantor is a limited liability company of the State of Delaware, is in good standing and doing business in the State of Texas, and will maintain Grantor's good standing and existence until all of Grantor's obligations under the Loan Documents have been performed and satisfied. The execution and delivery of the Loan Documents, the carrying out of the transactions contemplated by the loan Documents, and the performance of Grantor's and any guarantor's obligations under the Loan Documents, have been duly authorized by all necessary action and will not conflict with or result in a breach of Law or any agreement or other instrument to which Grantor or any guarantor is bound. The Loan Documents are valid and binding on Grantor and any guarantor thereof and are enforceable against Grantor and each such guarantor in accordance with their respective terms, as applicable.

## 6.0    COVENANTS, RIGHTS, AND DUTIES OF GRANTOR GENERALLY.

6.01    *Covenant to Pay Loan and to Perform Obligations under the Terms of the Loan Documents.*  Grantor covenants that Grantor shall punctually (a) pay to Beneficiary the principal and interest of the Loan and all other costs and indebtedness secured hereby according to the terms of the Note and other Loan Documents, and (b) perform and satisfy all other obligations of Grantor under the Loan Documents.

6.02    *Escrow Account*

6.02.1  Upon written request of Beneficiary, Grantor shall pay to Beneficiary monthly installments, each of which shall be equal to one-twelfth (1/12) of the sum of (a) the estimated annual premiums for all insurance policies required by Sections 8.01, 8.02 and 8.03 hereof, and (b) the estimated annual Taxes pertaining to the Trust Property, to be held by Beneficiary in the Escrow Account and disbursed by Beneficiary to pay the insurance premiums as they become due and Taxes before any penalty or interest shall accrue thereon.  Payments shall be made on the day of the month designated by Beneficiary.  No interest shall be payable by Beneficiary on the Escrow Account unless, and then only to the extent that, applicable Law shall otherwise require.  All overpayments to the Escrow Account shall be applied to reduce future payments to the Escrow Account, if any, or shall be returned to Grantor, in the sole discretion of Beneficiary.

6.02.2  Upon the reasonable written request of Beneficiary, Grantor shall pay such additional sums into the Escrow Account as Beneficiary reasonably determines are necessary, so that one month prior to the date Grantor is required to make payments of insurance premiums, or Taxes, as the case may be, payments can be made therefor out of the Escrow Account.

6.02.3  Grantor hereby grants Beneficiary a security interest in the sums on deposit in the Escrow Account to secure the obligations secured hereby, and upon the occurrence of an Event of Default, Beneficiary may, unless prohibited by applicable Law, apply the balance of the Escrow Account to Operate the Trust Property or to satisfy Grantor's obligations under the Loan Documents, as Beneficiary may reasonably elect.

6.03    *Compliance with Laws.*  Grantor shall materially comply with all Laws a breach of which would materially and adversely affect (a) the financial condition of Grantor, (b) the ability to use buildings and other improvements on the Land for the purposes for which they were designed or intended, (c) the value or status of the Trust Property, or (d) the value or status of the Trustee's title to the Trust Property.

6.04    *Notice with Respect to Ownership and Control of Grantor.*  If Grantor is a limited liability company Grantor will at all times promptly notify Beneficiary of all changes in ownership of membership interests of Grantor and any other change with respect to the identity of a Controlling Party. At any time Beneficiary may request, Grantor shall furnish a complete statement, sworn to under penalty of perjury by a manager/managing member of Grantor setting forth all of the members of Grantor and the extent of their respective membership interest or control (but not their financial interest or investment in same). In the event Grantor is aware of any other Person having a beneficial interest in such membership interests, the statement shall also set forth the name of such Person and the extent of all such interests.

6.05    *Statement of Amount Owing and Defenses.*  Within thirty (30) days after its actual receipt of a written request from Grantor, Beneficiary shall certify, in writing, the amount of principal and interest then owing on the Loan, with Beneficiary to reasonably assist with such calculations.

Doc# 20210236808 08/26/2021 2:50PM Page 8 of 26 Lucy Adame-Clark, Bexar County Clerk

6.06   *Changes in Applicable Tax Laws.*   In the event (a) any Law is hereafter enacted which imposes a Tax upon the Loan, any of the Loan Documents, or the transactions evidenced or contemplated by any (of the Loan Documents, or (b) any Law now in force governing the taxation of deeds of trust, debts secured by deeds of trust, or the manner of collecting any such Tax shall be changed or modified, in any manner so as to impose a Tax upon the Loan, any of the Loan Documents or the transactions evidenced or contemplated by any of the Loan Documents, (including, without limitation, a requirement that revenue stamps be affixed to any or all of the Loan Documents), Grantor promptly will pay any such tax. If Grantor fails to make prompt payment, or if any Law either prohibits Grantor from making the payment or would penalize Beneficiary if Grantor makes the payment, then the failure, prohibition, or penalty, shall entitle Beneficiary to exercise all rights hereunder as though an Event of Default had occurred.

6.07   *Further Assurances and Continuation Statements.*   Grantor from time to time (but no more often than quarterly) shall execute, acknowledge, deliver and record, at Grantor's sole cost and expense, all further instruments, deeds, conveyances, supplemental deeds of trust, assignments, financing statements, transfers, and assurances as in the reasonable opinion of Beneficiary's counsel may be reasonably necessary (a) to preserve, continue, and protect the interest of Trustee or Beneficiary in the Trust Property, (b) to perfect the grant to the Trustee of every part of the Trust Property, (c) to facilitate the execution of this trust, (d) to secure the rights and remedies of Trustee and Beneficiary under this Deed of Trust and the other Loan Documents, or (e) to transfer to any successor Trustee or purchaser at a sale hereunder the Trust Property, funds, and powers now or hereafter held in trust hereunder.  Grantor, at the prior written request of Beneficiary, shall promptly execute any continuation statements required by the Uniform Commercial Code to maintain the lien on any portion of the Trust Property subject to the Uniform Commercial Code.

6.08   *Expenses.*   Grantor shall reimburse Beneficiary and Trustee for any sums actually incurred, including attorney's fees and expenses, incurred or expended by them (a) in connection with any action or proceeding reasonably necessary to sustain the lien, security interest, priority, or validity of any Loan Document, (b) to protect, enforce, interpret, or construe any of their rights under the Loan Documents, (c) for any title examination or title insurance policy relating to the title of the Trust Property, or (d) for any other purpose contemplated by the Loan Documents.  Grantor shall, upon written demand, pay all such sums.   All such reasonable sums so expended by Beneficiary and/or Trustee shall be secured by this Deed of Trust.  In any action or proceeding to foreclose this Deed of Trust or to recover or collect the Loan, the provisions of Law allowing the recovery of costs, disbursements, and allowances shall be in addition to the rights given by this Section 6.08.

## 7.00   RIGHTS AND DUTIES OF GRANTOR WITH RESPECT TO MANAGEMENT AND USE OF THE TRUST PROPERTY.

7.01   *Control by Grantor.*   Until the happening of an Event of Default, Grantor shall have the right to possess and enjoy the Trust Property and, except as prohibited by the Loan Documents, to receive the Rents.

Doc# 20210236808 08/26/2021 2:50PM Page 9 of 26 Lucy Adame-Clark, Bexar County Clerk

7.02   *Management.*   At all times Grantor shall provide competent and responsible management to Operate the Trust Property. If Beneficiary so requests, all management and service contracts involving the Trust Property shall be subject to reasonable approval in writing by Beneficiary prior to their execution and, once approved by Beneficiary, shall not be amended or terminated without Beneficiary's prior written approval, which approval will not be unreasonably withheld.

7.03   *Financial Statements; Books and Records.*   Grantor shall furnish to Beneficiary annual financial and operating statements of Grantor and of the Trust Property. Such statements shall show all items of income and expense for the operation of the Trust Property, shall be certified by Grantor and shall be prepared in accordance with generally accepted accounting principles applied on a consistent basis. All such financial and operating statements shall be supplied not later than the dates provided for in the Loan Agreement. Grantor promptly will advise Beneficiary of any material change in such fiscal year. Grantor agrees to make Grantor's books and records relating to the operation of the Trust Property available for inspection by Beneficiary, upon request at any reasonable time (but not more often than quarterly), at Grantor's principal place of business or at such other location in the State of Texas as Beneficiary may reasonably request.

7.04   *Leases.*   All Leases shall be subject to the prior written approval of Beneficiary, which approval will not be reasonably withheld. Grantor will materially comply with Grantor's obligations under all Leases. Grantor, within thirty (30) days after the written request from Beneficiary, shall deliver to Beneficiary a detailed list and description of all Leases with copies thereof and such additional information as may be requested by Beneficiary. Upon demand by Beneficiary, Grantor will transfer and assign to Beneficiary or Trustee, in a form reasonably satisfactory to Beneficiary, Grantor's interest in any Lease as further security for the obligations secured hereby. No such assignment shall impose upon Trustee or Beneficiary any liability to perform Grantor's obligations under any Lease.

7.05   *Enforcement of Leases, Amendment, Waiver, etc.*   Grantor will reasonably enforce all Leases according to their terms and shall take such action to that end as may be reasonably requested by Trustee or Beneficiary, regardless of whether any such Lease has been assigned to Beneficiary or Trustee. Grantor shall not, without the prior written consent of Beneficiary, which consent will not be unreasonably withheld, (a) cancel or terminate, or consent to or accept any cancellation, termination, or surrender of any Lease, or permit any event with in Grantor's control to occur which would terminate or cancel any Lease, (b) amend or materially modify any Lease, (c) waive any material default under or breach of any Lease, (d) consent to or permit any prepayment or discount of rent or advance rent under any Lease, or (e) give any consent, waiver, or approval under any Lease or take any other action with respect to any Lease which may impair the value of Beneficiary's interest in the Trust Property or the position or interest of Trustee with respect to the Trust Property. Grantor shall materially comply with and perform all duties and obligations imposed upon or assumed by Grantor in all Leases.

7.06   *Subordination and Attornment.*   In the event of a foreclosure sale pursuant to this Deed of Trust, each Tenant shall, upon prior written request, attorn to and acknowledge any purchaser at foreclosure or grantee in lieu of foreclosure as landlord and the purchaser will not be

required to credit any Tenant under any Lease with rent paid more than one (1) month in advance. All Leases shall be subject and subordinate to modifications of and amendments to the Loan Documents and any additional financing or refinancing of the Trust Property by or for Beneficiary.

7.07   *Restriction on Assignment of Rents.*   Grantor shall not assign the Rents arising from the Trust Property or any part thereof or any interest therein without the prior written consent of Beneficiary. Any attempted assignment, pledge, hypothecation, or grant without such consent shall be null and void.

7.08   *Alterations and Additional Improvements.*   Grantor shall make no structural alterations or material nonstructural alterations to the Trust Property or construct any additional improvements on the Land without the prior written consent of Beneficiary, which consent will not be unreasonably withheld. All alterations or improvements shall be completed and paid for by Grantor within a reasonable time. All alterations or improvements shall be erected (a) in a good and workmanlike manner strictly in accordance with all applicable Law, (b) entirely on the Land, (c) without encroaching upon any easement, right of way, or land of others, (d) so as not to violate any applicable use, height, set-back or other applicable restriction, and (e) without permitting any mechanic's lien to attach to the Trust Property which is not being contested as permitted in Section 7.13. All alterations, additions, and additional improvements to the Trust Property shall automatically be a part of the Trust Property and shall be subject to this Deed of Trust.

7.09   *Restrictions on Sale and Transfer of the Trust Property.*   Grantor shall not permit the Trust Property, or any part or portion thereof or any interest therein, to be transferred (whether by voluntary or involuntary conveyance, merger, operation of law, or otherwise) without the prior written consent of Beneficiary, which consent will not be unreasonably withheld. Any transferee of the Trust Property or any part thereof or any interest therein, by virtue of its acceptance of the transfer, shall (without in any way affecting Grantor's liability under the Loan Documents) be conclusively deemed to have agreed to assume primary personal liability for the performance of the Grantor's obligations under the Loan Documents. This section shall not apply to any Taking, any disposition permitted by Section 7.12, any Lease entered into in compliance with Section 7.04, or any disposition by Trustee or Beneficiary by foreclosure hereunder or as otherwise permitted by the Loan Documents.

7.10   *Restriction on Encumbrances.*   Grantor shall not knowingly allow any Encumbrances on the Trust Property except the Permitted Encumbrances. Grantor shall give Beneficiary prompt written notice of any material default in or under any Permitted Encumbrances and any written notice of foreclosure or threat of foreclosure. Grantor shall materially comply with its obligations under all Permitted Encumbrances. Beneficiary may, at its election and after providing Grantor with prior written notice and allowing Grantor a ten (10) business day period in which to reasonably resolve the situation, satisfy any Encumbrance (other than a Permitted Encumbrance not then in default), and Grantor shall, on demand, reimburse Beneficiary for any reasonable sums advanced for such satisfaction together with interest at the Penalty Rate accruing from the date of satisfaction, which sums shall be secured hereby.

7.11   *Maintenance, Waste, Repair and Inspection.*   Grantor shall: (a) keep and maintain the Trust Property in good order, condition, and repair and make all equipment replacements and

repairs reasonably necessary to insure that the security for the Loan is not impaired; (b) not commit or suffer any waste of the Trust Property; (c) promptly protect and conserve any portion of the Trust Property remaining after any material damage to, or partial destruction of, the Trust Property; (d) promptly repair, restore, replace or rebuild any portion of the Trust Property which is materially damaged or destroyed; (e) promptly restore the balance of the Trust Property remaining after any Taking; (f) permit Beneficiary or Beneficiary's designee to inspect the Trust Property at all reasonable times (but not more often than twice per calendar year, and only after reasonable prior written notice to Grantor); and (g) not make any material change in the grade of the Trust Property or permit any excavation of or on the Trust Property (except as may be reasonably necessary in connection with Grantor's intended development).

7.12    *Removal and Replacement of Equipment and Improvements.*  No part of the Trust Property, except supplies consumed in the normal course of business and operations, and items consistent with Grantor's work on its intended development of the Land, shall be removed from the Land, demolished, or materially altered without the prior written consent of Beneficiary, with such consent not to be unreasonably withheld.  Grantor may, without consent and free from the lien and security interest of this Deed of Trust, remove and dispose of any worn out or obsolete fixtures or equipment which are a part of the Trust Property upon thirty (30) days prior written notice to Beneficiary.  Prior to or simultaneously with their removal, such fixtures and equipment shall be replaced (if consistent with Grantor's intended development of the Land) with fixtures or equipment of equal or greater value.  The replacement fixtures or equipment shall be free of all Encumbrances, shall be automatically subject to the lien and security interest of this Deed of Trust, and shall be automatically subject to the granting clauses hereof.  Upon the sale of any removed fixtures and equipment which are not replaced, the proceeds shall be applied as a prepayment of the Loan, to be applied in inverse order of maturity. All sales shall be conducted in a commercially reasonable manner with a bona fide effort to obtain a sale price of at least market value.

7.13    *Taxes and Permitted Contests.*  Grantor shall pay or cause to be paid: (a) all Taxes (other than those payable by Beneficiary from the Escrow Account) on or before the date any interest or penalty begins to accrue or attach thereto; and (b) all lawful claims which, if unpaid, might become a lien or charge upon the Trust Property to such an extent as to affect materially and adversely Grantor's ability to use the Trust Property for the purposes for which it was designed or intended.  Provided however, that Grantor shall not be required to pay any Taxes or claim the amount, validity or payment thereof which is being contested, in good faith, by appropriate legal proceedings, and so long as, in the sole reasonable opinion of Beneficiary, no part of the Trust Property is in material danger of being sold, forfeited or lost and the contest is not materially impairing the security for the Loan.  Upon payment thereof, Grantor shall promptly supply Beneficiary with receipts showing the payment of the Taxes or claim.

7.14    *Restrictive Covenants, Zoning, etc.*  No restrictive covenant, zoning change, or other restriction affecting the Trust Property may be entered into, requested by or consented to by Grantor without the prior written consent of Beneficiary with such consent not to be unreasonably withheld.

7.15    *Preservation of Appurtenances.*  Grantor will do all things reasonably necessary to preserve intact and unimpaired, all easements, appurtenances, and other interests and rights in favor of, or constituting any portion of, the Trust Property.

11

Doc# 20210236808 08/26/2021 2:50PM Page 12 of 26 Lucy Adame-Clark, Bexar County Clerk

**8.00   INSURANCE AND CONDEMNATION.**

8.01   *Casualty Insurance and Allocation in Event of Loss.*   Grantor shall maintain, keep and carry casualty insurance on the Trust Property, or shall cause to be maintained, kept or carried casualty insurance on the Trust Property, for the benefit of Grantor, Trustee and Beneficiary against all Risks.   The limits, form, co-insurance clauses, and insurer for all such policies shall be reasonably satisfactory to Beneficiary.   Grantor shall assign and deliver to Beneficiary copies of all such policies.   The policies shall contain a standard mortgagee loss payable endorsement providing that all payments shall be made to the sole order of Trustee and Beneficiary to be applied by them in accordance with the terms of this Deed of Trust.   Within ten (10) days prior to the expiration of any policy, Grantor shall supply Beneficiary with a renewal policy marked "Premium Paid."   All proceeds under such policies shall be paid to Trustee and Beneficiary to be applied, if no Default is then outstanding, in accordance with the provisions of any lease on the Trust Property, or, if none, then (a) if funds sufficient to restore the Trust Property are available from such insurance proceeds (together with other funds supplied or caused to be supplied by Grantor) and no Default is then outstanding, to the restoration of the Trust Property; or (b) if sufficient funds are not available to restore the Trust Property or a Default is then outstanding, to prepayment of amounts due under the Note, in inverse order of maturity.   All moneys not utilized for the restoration of the Trust Property shall be applied as a prepayment of amounts due under the Note, in inverse order of maturity.   If proceeds of insurance are used to restore the Trust Property, as aforesaid, neither Trustee nor Beneficiary shall be obligated to see to the proper allocation thereof, nor shall any such amount so used be deemed a payment of any indebtedness secured by this Deed of Trust. Proceeds of insurance to be used for restoration purposes shall be held by Beneficiary and disbursed under such terms and conditions, to such Persons, and at such times, as Beneficiary may reasonably determine.

8.02   *Liability Insurance.*   Unless waived by Trustee and Beneficiary, Grantor will maintain, or cause to be maintained, liability and indemnity insurance with respect to the Trust Property in such amounts, with such companies, and subject to such terms and conditions as Beneficiary may reasonably direct and approve.   Such policies of insurance shall name Trustee and Beneficiary as additional insureds thereunder and within ten (10) days prior to the expiration of any such policy Grantor shall supply Beneficiary with a renewal policy marked "Premium Paid".

8.03   *Business Interruption Insurance.*   Unless waived by Beneficiary, Grantor shall also carry and maintain, or cause to be carried and maintained, rental interruption insurance on the Trust Property in the same manner and under the same conditions (to the extent applicable) as provided in Section 8.02.

8.04   *Condemnation and Allocation of Condemnation Awards.*   Grantor, immediately upon obtaining knowledge of the institution of any proceeding for a Taking, will notify Trustee and Beneficiary of such proceedings.   Trustee or Beneficiary may participate in any such proceedings, and Grantor will, from time to time, deliver to Trustee or Beneficiary all instruments reasonably requested by them to permit such participation.   Any award or payment made as a result of any Taking shall be paid to Trustee and Beneficiary, jointly, to be applied, if no Default is then outstanding, in accordance with the provisions of any lease on the Trust Property, or, if none, then (a) if funds sufficient to restore the remainder Trust Property are available from such award or

Doc# 20210236808 08/26/2021 2:50PM Page 13 of 26 Lucy Adame-Clark, Bexar County Clerk

payment (together with other funds supplied or caused to be supplied by Grantor) and no Default is then outstanding, to the restoration of the remainder of the Trust Property, or (b) if sufficient funds are not available to restore the remainder of the Trust Property, or a default is then outstanding to prepayment of amounts due under the Note in inverse order of maturity. All moneys not utilized for the repair or restoration of the remainder of the Trust Property shall be applied as a prepayment of amounts due under the Note, in inverse order of maturity. The application of any award or payment as a prepayment of amounts due under the Note shall take effect only on the actual date of the receipt of the payment or award by Trustee and Beneficiary. In the event any payment or award is used to restore the Trust Property, as aforesaid, neither Trustee nor Beneficiary shall be obligated to see to the proper allocation thereof nor shall any amount so used be deemed a payment of any indebtedness secured by this Deed of Trust. Payments or awards to be used for restoration purposes, as aforesaid, shall be held by Beneficiary and disbursed under such terms and conditions, to such Persons, and at such times, as Beneficiary may determine.

## 9.00   THE TRUSTEE(S).

9.01   *Endorsement and Execution of Documents.*  Upon the written request of Beneficiary, Trustee shall, without liability or notice to Grantor, execute, consent to, or join in any instrument or agreement in connection with or reasonably necessary to effectuate the purposes of the Loan Documents. Grantor hereby irrevocably designates Trustee as Grantor's attorney-in-fact to execute, acknowledge, and deliver, on Grantor's behalf and in Grantor's name, all instruments or agreements necessary to implement the provisions of Section 3.07, contemplated by Section 6.07, or necessary to further perfect the lien created by this Deed of Trust on the Trust Property.  This power of attorney shall be deemed to be coupled with an interest and shall survive any disability of Grantor.

9.02   *Substitution of Trustee(s).*  Beneficiary may, by filing a deed of appointment in the office where this instrument is recorded, appoint additional or replacement trustees and may remove Trustee, from time to time, with notice to Grantor and Trustee and without specifying any reason. In the event of the death of Trustee, Beneficiary shall be entitled to seek the appointment of a successor Trustee pursuant to the provisions of the operative statutes then in effect.

9.03   *Terms of Trustee's Acceptance.*  Trustee accepts the trust created by this Deed of Trust upon the following terms and conditions.

9.03.1  Trustee may reasonably exercise any of Trustee's powers through appointment of attorneys-in-fact or agents.

9.03.2  Trustee shall not be liable for any matter or cause arising under this Deed of Trust or in connection therewith except by reason of Trustee's own willful misconduct.

9.03.3  Trustee may select and employ legal counsel at the reasonable expense of Grantor.

9.03.4  Trustee shall be under no obligation to take any action upon any Event of Default unless Trustee is furnished security or indemnify, in form reasonably satisfactory to Trustee, against costs, expenses, and liabilities actually incurred by Trustee.

Doc# 20210236808 08/26/2021 2:50PM Page 14 of 26 Lucy Adame-Clark, Bexar County Clerk

9.03.5  A Trustee may resign upon thirty (30) days written notice to Beneficiary and Grantor.

9.04   *Trustee's Reimbursement.*   Grantor shall reimburse Trustee for all reasonable disbursements and expenses incurred by reason of this Deed of Trust.

9.05   *Save Harmless Clause.*   Grantor shall indemnity and save harmless Beneficiary and Trustee, singularly and jointly, from all costs and expenses, including reasonable attorneys' fees, incurred by them or any of them by reason of this Deed of Trust, including any Legal Action to which Beneficiary or Trustee shall become a party.   Any money so paid or expended by Beneficiary or Trustee shall be due and payable upon demand and shall be secured by this Deed of Trust.

## 10.00   DEFAULT.

10.01   *Event of Default.*   Events of Default are expressed in <u>Article VIII</u> of the Loan Agreement.

10.02   *Payment or Performance by Trustees or Beneficiary.*   Upon Default, Trustee or Beneficiary may, at their option, make any payments or take any other actions they reasonably deem necessary or desirable to cure the Default or conserve the Trust Property.   Grantor shall, upon written demand, reimburse Trustee or Beneficiary for all reasonable sums so advanced or expenses incurred by them, together with interest at the Penalty Rate from the date of advance or payment of the same, which sums shall be secured by this Deed of Trust.   In such event, and to the extent permitted by applicable law, Trustee or Beneficiary may enter upon the Trust Property with prior written notice to Grantor or judicial process and may take any reasonable action to enforce Grantor's rights under this Section 10.02 without liability to Grantor.

10.03   *Possession by Trustees or Beneficiary.*   Upon the occurrence of an Event of Default and to the extent permitted by applicable law, Trustee or Beneficiary may enter upon and take possession of the Trust Property without notice to Grantor, judicial process, or the appointment of a receiver.   To the extent permitted by applicable law, Trustee or Beneficiary may exclude all persons from the Trust Property and may proceed to operate the Trust Property and receive all Rents. Trustee or Beneficiary and Trustee shall have the right as agent for Grantor, either in the name of Grantor or otherwise.   Neither Trustee nor Beneficiary shall be liable to Grantor for taking possession of the Trust Property, as aforesaid, nor shall they be required to make repairs or replacements, and they shall be liable to account only for Rents actually received by them. All Rents collected by Trustee or Beneficiary shall be applied to the extent permitted by applicable law (a) first, to pay all expenses incurred in taking possession of the Trust Property, (b) second, to pay costs and expenses to Operate the Trust Property and/or to comply with the terms of the Loan Documents, including reasonable attorney's fees, (e) third, to pay all sums secured by the Loan Documents in the order of priority selected by Beneficiary, and (d) fourth, with the balance, if any, to Grantor or such other Person as may be entitled thereto.   Neither the Assignment of Rents and Leases nor any other assignment of Leases shall impose upon Trustee or Beneficiary any liability to perform Grantor's obligations under any Lease.

Doc# 20210236808 08/26/2021 2:50PM Page 15 of 26 Lucy Adame-Clark, Bexar County Clerk

10.04   *Acceleration of the Note.*   Upon an Event of Default, pursuant to the grant of the power of sale as provided hereinabove, Beneficiary shall be entitled to exercise the provisions providing for a foreclosure by power of sale; PROVIDED, HOWEVER, that in connection with such election, Beneficiary shall first give Grantor a written notice of Beneficiary's intention to foreclose by power of sale hereunder addressed to Grantor as provided herein (the "Notice").  Such Notice shall (i) state with reasonable specificity, the nature of the events of default hereunder, (ii) advise Grantor that Grantor has the right to cure such default for a period of thirty-five (35) days from the date of sending of the Notice and thereby reinstate this Deed of Trust, (iii) advise Grantor of the amount of money or action necessary to effect a cure, and (iv) advise Grantor that the Loan secured hereby may be accelerated and the Deed of Trust foreclosed through power of sale if such event of default is not so cured within such 35-day period.  If Grantor fails to reasonably cure within such 35-day period Beneficiary, at Beneficiary's option, may then proceed to cause Trustee to exercise the power of sale granted herein, including all statutory notice and sale provisions.  Acceleration of maturity, once claimed by Beneficiary, may at the option of Beneficiary, be rescinded by written acknowledgment to that effect by Beneficiary, but the tender and acceptance of partial payments alone shall not in any way affect or rescind such acceleration of maturity.

10.05   *Collection of Rents.*   Upon the occurrence of an Event of Default and written demand by Beneficiary to the Tenants, all Rents shall be payable directly to Beneficiary.

10.06   *Judicial Foreclosure and Power of Sale.*   Beneficiary may, without notice, demand or presentment, which are hereby waived by Grantor, declare the entire unpaid balance immediately due and payable and Beneficiary may proceed to foreclose this Deed of Trust through judicial proceedings, and in the event of judicial foreclosure, the Court shall direct the sale of the Mortgaged Property to be with or without appraisement, as Beneficiary may elect at the time judgment is rendered.

As an alternative to the foregoing, Grantor assents to the sale of the Trust Property by Trustee upon the occurrence of an Event of Default and Grantor authorizes and empowers Trustee, upon the occurrence of an Event of Default, to sell Grantor's interest in the Trust Property, in accordance with the property laws of the State of Texas, in accordance with the Texas Property Code Section 51.004 ("the Act") or any other Law.  The Trust Property or any interest therein may be sold upon such terms and iii as many parcels as Trustee may, in Trustee's sole discretion, elect.

10.07   *Application and Proceeds of Sale.*   Upon a foreclosure sale, the purchaser shall receive that portion of or interest in the Trust Property purchased by it free from any claims of Grantor and without any liability to see to the application of the purchase money. The net proceeds from the sale, after deduction of all costs of the sale, shall be applied in accordance with applicable provisions of the Act.

10.08   *Deficiency of Proceeds.*   If, after a foreclosure sale, a deficiency exists in the net proceeds of such sale, Beneficiary shall be entitled to a deficiency judgment or decree for such deficiency which shall bear interest at the Penalty Rate.

Doc# 20210236808 08/26/2021 2:50PM Page 16 of 26 Lucy Adame-Clark, Bexar County Clerk

10.09 *Insurance or Condemnation after Deficiency.* If the Trust Property is sold at a foreclosure sale prior to receipt of a condemnation award or payment, Beneficiary shall receive and apply the proceeds of the award or payment toward the satisfaction of any deficiency resulting from the foreclosure sale, whether or not a deficiency judgment is sought, recovered, or denied.

10.10 *Right of the Beneficiary to Bid.* Beneficiary and/or Trustee may bid and become the purchaser at a foreclosure sale under this Deed of Trust.

10.11 *Trustee's Bond.* Grantor waives any right to require the person authorized to make the sale to post a bond in any foreclosure proceeding.

10.12 *Appointment of a Receiver.* Upon the occurrence of an Event of Default, Beneficiary shall be entitled to the immediate appointment of a receiver for the Trust Property, without regard to the value of the Trust Property or the solvency of any person liable for payment of the amounts due under the Loan Documents.

10.13 *Remedies Cumulative.* All rights, powers, and remedies of Beneficiary or Trustee provided for in the Loan Documents are cumulative and concurrent and shall be in addition to and not exclusive of any appropriate legal or equitable remedy provided by Law or contract. Exercise of any right, power, or remedy shall not preclude the simultaneous or subsequent exercise of any other by Beneficiary or Trustee.

10.14 *Rights under the Uniform Commercial Code.* Upon the occurrence of an Event of Default, Grantor shall assemble and make available to Beneficiary and Trustee those portions of the Trust Property which consist of personal property at a place to be designated by Trustee, and Beneficiary and Trustee may exercise all the rights and remedies of a secured party under the Uniform Commercial Code. Any notices required by the Uniform Commercial Code shall be deemed reasonable if mailed certified mail, return receipt requested, postage prepaid, by Beneficiary or Trustee to Grantor. Disposition of the Trust Property shall be deemed commercially reasonable if made pursuant to a public offering advertised at least twice in a newspaper of general circulation in the County where the Trust Property is located.

10.15 *Right to Determine Which Leases Survive.* If disclosed in the advertisement of a sale, a foreclosure sale may be made subject to one or more Leases of the Trust Property.

## 11.00 MISCELLANEOUS.

11.01 *Waivers.* No term of any Loan Document shall be deemed waived unless the waiver shall be in writing and signed by the parties making the waiver. Any failure by Beneficiary or Trustee to insist upon Grantor's strict performance of any of the terms of the Loan Documents shall not be deemed or construed as a waiver of those or any other terms. Any delay in exercising or enforcing any rights with respect to a Default or an Event of Default shall not bar Beneficiary or Trustee from exercising any rights under the Loan Documents, or at law or in equity.

11.02   *Consents.*

11.02.1   Beneficiary may (a) release any person liable under the Loan Documents, (b) release any part of the security, (c) extend the time of payment of the Loan, and/or (d) modify the terms of the Loan Documents, regardless of consideration and without notice to or consent by the holder of any subordinate lien on the Trust Property. No release, extension or modification of the security held under the Loan Documents shall impair or affect the lien of this Deed of Trust or the priority of such lien over any subordinate lien.

11.02.2   Regardless of whether a Person has been given notice or has given its prior consent, it shall not be relieved of any obligation under any Loan Document by reason of (a) the failure of Beneficiary, Trustee, or any other Person to take any action, foreclose, or otherwise enforce any provision of the Loan Documents, (b) the release of any other Person liable under any Loan Document, (c) the release of any portion of the security under the Loan Documents, or (d) any agreement or stipulation between any subsequent owners of the Trust Property and Beneficiary extending the time of payment or modifying the terms of any Loan Document.

11.03   *Headings.*  All Article and Section headings are for convenience only and shall not be interpreted to enlarge or restrict the provisions of this Deed of Trust.

11.04   Notices.  All notices shall be in writing and, unless otherwise specified in a written notice, shall be sent to the respective addresses of the parties as follows:

Beneficiary:  Blue Sky Bank
      3353 East 41st Street
      Tulsa, Oklahoma 74135
      Attention: Jay Swali, Vice President

Grantor:   Davies Enterprises, LLC
      1314 East Sonterra Blvd.
      San Antonio, Texas 78258
      Attention: Cameron Davies, Manager

Trustee:   Gentner F. Drummond, Esq.
      Drummond Law, PLLC
      1500 South Utica Avenue, Suite 400
      Tulsa, Oklahoma 74104

A notice may be hand-delivered or mailed, postage prepaid, first class, registered or certified mail or by a nationally recognized overnight delivery service.  Any notice sent by mail shall be deemed to have been received on the second (2nd) business day following the date of mailing. Notices sent by overnight delivery service shall be deemed to have been received on the first business day following deposit with such delivery service.

A notice may be hand-delivered or mailed, postage prepaid, first class, registered or certified mail or by a nationally recognized overnight delivery service. Any notice sent by mail shall be deemed to have been received on the second (2nd) business day following the date of mailing. Notices sent by overnight delivery service shall be deemed to have been received on the first business day following deposit with such delivery service.

11.05 *Binding Effect.* No transfer of any portion of the Trust Property or any interest thereon shall relieve any transferor of its obligations under the Loan Documents. No transferor of any obligation under any Loan Document shall be relieved of its obligations by any modification of any Loan Document subsequent to the transfer.

11.06 *Amendment.* No Loan Document may be modified except in writing signed by (a) Beneficiary and/or Trustee, and (b) Grantor.

11.07 *Severability.* In the event any provision of this Deed of Trust shall be held invalid or unenforceable by any court of competent jurisdiction, such holding shall not invalidate or render unenforceable any other provision hereof.

11.08 *Notices from Governmental Authorities Affecting the Trust Property.* Any notice from any governmental or quasi-governmental authority or corporation with respect to the Trust Property sent to or known by Grantor shall be promptly transmitted to Beneficiary and Trustee.

11.09 *Applicable Law.* All Loan Documents shall be governed by the Laws of the State of Oklahoma without regard to the principles of conflict of laws.

11.10 *Time of the Essence.* Time is of the essence with respect to the Loan Documents.

11.11 *Effect of Payments.* Any payment or other performance made in accordance with the Loan Documents by any Person other than Grantor shall not entitle such Person to any right of subrogation under the Loan Documents, unless expressly consented to in writing by Beneficiary.

11.12 *Word Forms.* The use of any gender, tense, or conjugation herein shall be applicable to all genders, tenses and conjugations. The use of the singular shall include the plural and the plural shall include the singular.

11.13 *Usury.* Notwithstanding any provision herein or in the Note, the total liability for payments in the nature of interest shall not exceed the limits now imposed by the usury laws of the State of Oklahoma, or if the holder of the Note and this Deed of Trust shall ever be entitled to receive, collect or apply, as interest on the indebtedness, any amount in excess of the maximum legal rate of interest permitted to be charged by applicable law, and, in the event any holder of the Note and this Deed of Trust ever receives, collects or applies, as interest, any such excess, such amount which would be excessive interest shall be applied to the reduction of the unpaid principal balance of the indebtedness, and if the principal balance of the indebtedness is paid in full, any remaining excess shall be forthwith paid to Beneficiary. In determining whether or not the interest paid or payable under any specific contingency exceeds the highest lawful rate, Beneficiary and

Grantor shall, to the maximum extent permitted under applicable law: (a) characterize any non-principal payment as an expense, fee or premium rather than as interest; (b) exclude voluntary prepayments and the effects thereof; and (c) "spread" the total amount of interest on this Note throughout the entire term hereof so that the interest rate is uniform throughout the entire term thereof.

**EXECUTED** the day and year first written hereinabove.

**GRANTOR:**

Signed, sealed and delivered
In the presence of:

**DAVIES ENTERPRISES, LLC**
a Texas Limited Liability Company

_____
Witness

C- D-                    (SEAL)
By:    Cameron Davies, Manager

State of _____Texas_____

County of _____Bexar_____

Sworn to and subscribed before me this _24_ day of August, 2021, by **Cameron Davies**, the Manager of Davies Enterprises, LLC, personally known to me or proved to me on the basis of satisfactory evidence to be the person who appeared before me, and he acknowledged said instrument to be his free act and deed and the free act and deed of the limited liability company.

_____
Notary Public

JOSHUA DAVIES
Notary ID #131731063
My Commission Expires
September 20, 2022

My Commission Expires: _9/20/22_

(AFFIX NOTARY SEAL)

THE STATE OF TEXAS          §
                             §
COUNTY OF BEXAR             §

**BEFORE ME**, the undersigned authority, on this day personally appeared Cameron Davies, Manager of Davies Enterprises, LLC, a Texas limited liability company, known to me to be the person whose name is subscribed to the foregoing instrument, and he acknowledged to me that he executed the same for the purposes and consideration therein expressed, in the capacity therein stated and as the act and deed of said limited liability company.

**GIVEN UNDER MY HAND AND SEAL OF OFFICE** on this the _24_ day of August, 2021.

STAMP NAME AND DATE OF          _____
EXPIRATION OF COMMISSION          NOTARY PUBLIC, STATE OF TEXAS
BELOW:

JOSHUA DAVIES
Notary ID #131731063
My Commission Expires
September 20, 2022

<u>Exhibit "A"</u>

Legal Description

(Property Address:  314 Nolan Street, San Antonio, Texas 78_____)

### EXHIBIT "A"

A 3.78 ACRE TRACT OF LAND OUT OF N.C.B. 558, BLOCK 39, CITY OF SAN ANTONIO, BEXAR COUNTY, TEXAS, AND BEING THAT SAME 3.452 ACRE TRACT DESCRIBED IN DEED TO LANE AVENUE ASSOCIATES, LW, OF RECORD IN VOLUME 15869, PAGE 1763 , OFFICIAL PUBLIC RECORDS, BEXAR COUNTY, TEXAS, A TRACT CALLED A PORTION OF LOT 1, BLOCK 39, N.C.B. 558, DESCRIBED IN DEED TO LANE AVENUE ASSOCIATES, LLC, OF RECORD IN VOLUME 16489, PAGE 716 , OFFICIAL PUBLIC RECORDS, BEXAR COUNTY, TEXAS, A TRACT CALLED THE NORTH 42.2 FEET OF LOT 8, BLOCK 39, N.C.B. 558, AS DESCRIBED 1/4 DEED TO LANE AVENUE ASSOCIATES, LLC, OF RECORD IN DOCUMENT NO. 20180083243 , OFFICIAL PUBLIC RECORDS, BEXAR COUNTY, TEXAS, A TRACT CALLED THE SOUTH 37.2 FEET OF THE NORTH 79.4 FEET OF LOT 8, BLOCK 39, N.C.B. 558, AS DESCRIBED IN DEED TO LANE AVENUE ASSOCIATES, LLC, OF RECORD IN DOCUMENT NO. 20180092983 , OFFICIAL PUBLIC RECORDS, BEXAR COUNTY, TEXAS, AND TRACTS I, II AND III, AS DESCRIBED IN DEED TO LANE AVENUE ASSOCIATES, LW, OF RECORD IN DOCUMENT NO. 20180130296 , OFFICIAL PUBLIC RECORDS, BEXAR COUNTY, TEXAS AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:
NOTE: (BASIS OF BEARING IS TEXAS SOUTH CENTRAL ZONE, NAD83.)

BEGINNING: At a point in the west right of way line of Union Pacific Rail Road and the south right of way line of Nolan Street (Variable Width Right of Way), for the northeast corner of the 3.452 Acre Tract and This Tract, and the POINT OF BEGINNING, from which a PK nail found for reference bears S 00°16'46" E, a distance of 5.41 feet;

THENCE: S 00°16'46" E, 410.72 feet, departing the south right of way line of Nolan Street, with the west right of way line of the Union Pacific Rail Road and the east line of the 3.452 Acre Tract and This Tract to a VC iron rod found in the north right of way line of Dawson Street (33.2 Foot Right of Way), for the southeast corner of the 3.452 Acre Tract and This Tract;

THENCE: S 89°35'14" W, departing the west right of way line of Union Pacific Rail Road, with the north right of way line of Dawson Street and the south line of the 3.452 Acre Tract and This Tract, at a distance of 356.92 feet passing a 34" iron rod found for the southeast corner of the southern most tract conveyed to Lane Avenue Associates, LLC, of record in Document No. 20180130296 , Official Public Records, Bexar County, Texas, and the southwest corner of the 3.452 Acre Tract and continuing with the south line of the southern most Lane Avenue Associates; LLC Tract, This Tract and the north right of way line of Dawson Street, for a total distance of 416.47 feet to a 34" iron rod found in the east right of way line of Chestnut Street for the southwest corner of the southern most Lane Avenue Associates, LLC Tract, and This Tract;

THENCE: N 00°16'46" W, 194.91 feet, departing the north right of way line of Dawson Street, with the east right of way line of Chestnut Street, the west line of 3 tracts conveyed to Lane Avenue Associates, LLC., of record in Document No. 20180130296 , Official Public Records, Bexar County, Texas, a tract conveyed to Lane Avenue Associates, LLC, of record in Document No. 20180092983 , Official Public Records, Bexar County, Texas, and another tract conveyed to Lane Avenue Associates, LLC, of record in Document No. 20180083243 , Official Public Records, Bexar County, Texas, and a west line of This Tract to a W' iron rod with cap stamped

"RICKMAN" set in the south right of way line of Booker Street (27.8 Foot Right of Way — not open on the ground) for the northwest corner of the Lane Avenue Associates, LLC, Tract conveyed in Document No. 20180083243 , Official Public Records, Bexar County, Texas, and This Tract;

THENCE: With the south, east and north lines of Booker Street, a north line of the Lane Avenue Associates, LLC, Tract conveyed in Document No. 20180083243, Official Public Records, Bexar County, Texas, and a north, west and south line of the 3.452 Acre Tract and This Tract, the following calls and distances:

N 89°35'14" E, at a distance of 59.17 feet, passing a 'A' iron rod found for the northeast corner of the Lane Avenue Associates, LLC, Tract conveyed in Document No. 20180083243, Official Public Records, Bexar County, Texas, and a northwest corner of the 3.452 Acre Tract and This Tract and continuing for a total distance of 111.87 feet to a 14" iron rod found for the southeast corner of the east terminus of Booker Street and a reentrant corner of the 3.452 Acre Tract and This Tract;

N 00°16'46" W, 27.52 feet to a Y2" iron rod found for the northeast corner of the east terminus of Booker Street and a reentrant corner of the 3.452 Acre Tract and This Tract; S 89°35'14" W, 52.32 feet to a 'A' iron rod found for the southeast corner of a tract conveyed to Ricardo & Lourdes M. Ramirez, of record in Volume 15364, Page 494, Official Public Records, Bexar County, Texas, and a southwest corner of the 3.452 Acre Tract and This Tract;

THENCE: N 00°16'46" W, 45.37 feet, with the east line of the Ramirez Tract and the west line of the 3.452 Acre Tract and This Tract, to a 'A' iron rod with cap stamped "RICKMAN" set for the southeast corner of the Tract called a Portion of Lot 1, and the northeast corner of the Ramirez Tract, and a reentrant corner of This Tract;

THENCE: S 89°35'14" W, 59.55 feet, departing the west line of the 3.452 Acre Tract, with the north line of the Ramirez Tract, the south line of the Tract called a portion of Lot 1 and This Tract, to a 'A' iron rod with cap stamped "RICKMAN" set in the east right of way line of Chestnut Street (34 Foot Right of Way) for the northwest corner of the Ramirez Tract, the southwest corner of the Tract called a portion of Lot 1, and the most westerly southwest corner of This Tract;

THENCE: N 00°16'46" W, with the east right of way line of Chestnut Street, the west line of the Tract called a Portion of Lot 1, and This Tract, at a distance of 52 feet passing a 'A' iron rod found for the northwest corner of the Tract called a Portion of Lot 1 and the most westerly southwest corner of the 3.452 Acre Tract, continuing with the west line of the 3.452 Acre Tract for a total distance of 129.87 feet to a 1/2" iron rod found for the south corner of the southeast cutback corner of the intersection of Chestnut Street and Nolan Street, for a northwest corner of the 3.452 Acre Tract and This Tract;

THENCE: N 44°01'39" E, 8.54 feet, with the southeast line of the southeast cutback corner of Chestnut Street and Nolan Street, and a northwest line of the 3.452 Acre Tract and This Tract, to a 1/2" iron rod found for the north corner of the southeast cutback corner, and a northwest corner of the 3.452 Acre Tract and This Tract;

A-2

THENCE: With the south right of way line of Nolan Street, and the north line of the 3.452 Acre Tract and This Tract, the following calls and distances:

N 89°35'14" E, 53.58 feet to a 1/2" iron rod found for an angle point;

N 00°16'46" W, 6.95 feet to a point for an angle point;

N 89°35'14" E, 356.92 feet to the POINT OF BEGINNING and containing 3.78 acres of land in the City of San Antonio, Bexar County, Texas.

### EXHIBIT "A"

A 0.06 ACRE TRACT OF LAND OUT OF LOT 1, BLOCK 39, N.C.B. 558, CITY OF SAN ANTONIO, BEXAR COUNTY, TEXAS, AND BEING THAT SAME TRACT OF LAND DESCRIBED IN DEED TO RICARDO AND LOURDES M. RAMIREZ OF RECORD IN VOLUME 15365, PAGE 494, OFFICIAL PUBLIC RECORDS, BEXAR COUNTY, TEXAS, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS: NOTE: (BASIS OF BEARING IS TEXAS SOUTH CENTRAL ZONE, NAD83.)

BEGINNING: At a PK Nail found in the east right of way line Chestnut Street (34 Foot Right of Way), for a southwest corner of a 3.78 Acre Tract described in deed to 314 Nolan, LLC, of record in Document No. 20210048798, Official Public Records, Bexar County, Texas, and the northwest corner of This Tract and the POINT OF BEGINNING;

THENCE: N 89°35'14" E, 59.55 feet, departing the east right of way line of Chestnut Street, with a south line of the 3.78 Acre Tract and the north line of This Tract to a 'A" iron rod with cap stamped "RICKMAN" found for a reentrant corner of the 3.78 Acre Tract and the northeast corner of This Tract;

THENCE: S 00°16'46" E, 45.37 feet, with a west line of the 3.78 Acre Tract and the east line of This Tract to a' " iron rod with cap found in the north right of way line of Booker Street (27.8 Foot Right of Way) for the southeast corner of This Tract;

THENCE: S 89°35'14" W, 59.55 feet, with the north right of way line of Booker Street and the south line of This Tract to a V2" iron rod with cap stamped "RICKMAN" set for the intersection of the east right of way line of Chestnut Street and the north right of way line of Booker Street and the southwest corner of This Tract;

THENCE: N 00°16'46" W, 45.37 feet with the east right of way line of Chestnut Street and the west line of This Tract to the POINT OF BEGINNING and containing 0.06 acres of land in the City of San Antonio, Bexar County, Texas.

**File Information**

**eFILED IN THE OFFICIAL PUBLIC eRECORDS OF BEXAR COUNTY**
**LUCY ADAME-CLARK, BEXAR COUNTY CLERK**

| | |
|---|---|
| **Document Number:** | 20210236808 |
| **Recorded Date:** | August 26, 2021 |
| **Recorded Time:** | 2:50 PM |
| **Total Pages:** | 26 |
| **Total Fees:** | $122.00 |

**\*\* THIS PAGE IS PART OF THE DOCUMENT \*\***

**\*\* Do Not Remove \*\***

Any provision herein which restricts the sale or use of the described real property because of race is invalid and unenforceable under Federal law

STATE OF TEXAS, COUNTY OF BEXAR

I hereby Certify that this instrument was eFILED in File Number Sequence on this date and at the time stamped hereon by me and was duly eRECORDED in the Official Public Record of Bexar County, Texas on: 8/26/2021 2:50 PM



Lucy Adame-Clark
Bexar County Clerk

**EXHIBIT**
**E**

# FORBEARANCE AGREEMENT

**THIS FORBEARANCE AGREEMENT** (the "Agreement") is made and entered into effective as of the __14th__ day of August, 2023 (the "Effective Date") by, between and among **DAVIES ENTERPRISES, LLC**, a Texas limited liability company ("Borrower"), **CRUISING KITCHENS, LLC**, a Texas limited liability company (the "Pledgor" and a "Guarantor"), **CAMERON DAVIES**, an individual, and **MARY K. DAVIES**, an individual (the "Guarantors"), and **BLUE SKY BANK** (the "Lender") (the Borrower, Pledgor, Guarantors and Lender may also be referred to herein individually as a "Party" and collectively as the "Parties") with reference to the following:

## WITNESSETH:

That for and in consideration of the mutual covenants contained herein, Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower, Pledgor and Lender agree as follows:

1.      **RECITALS.**  Lender, Borrower, Pledgor and Guarantors are parties to the following loans:

1.1.      **Commercial Loan Agreement.**  On or about August 24, 2021, Borrower executed and delivered to Lender a Commercial Loan Agreement ("Loan Agreement"), a Term Note in the original principal amount of $4,464,534.00 ("Note #1" #6001012457) and a Term Note in the original principal amount of $3,571,627.00 ("Note #2" #6001012473).  On October 25, 2022 and November 25, 2022, Borrower executed and delivered Change in Terms Agreements extending the maturity date of Note #2.

The Loan Agreement is secured by: (a) *Deed of Trust, Security Agreement And Fixture Filing* on real property located at 14732 Bulverde Road, San Antonio, Texas; (b) *Deed of Trust, Security Agreement and Fixture Filing* on real property located at 314 Nolan Street, San Antonio, Texas(c) *Second Deed of Trust, Security Agreement And Fixture Filing* on real property located at 314 Nolan Street, San Antonio, Texas; (d) *Security Agreement* granting a security interest in Borrower's business assets; and (f) *Commercial Guaranty Agreements* executed by Cameron Davies, Mary K. Davies, and Cruising Kitchens, LLC (the "Collateral Documents").

Copies of the Loan Agreement, Note #1, Note #2, Change in Terms Agreements and Collateral Documents are attached hereto as Exhibit "A".

1.2.      **Main Street Lending Loan And Security Agreement.**  On or about December 9, 2020, the Pledgor, **Cruising Kitchens, LLC**, executed and delivered to Lender a *Loan And Security Agreement* for a Main Street Priority Loan Facility (the "MSPLF Term Loan"), and Promissory Note in the original principal amount of $5,388,000.00 ("MSPLF Note").

The MSPLF Term Loan is secured by Pledgor's business assets, to include cash held in a Reserve Account and Equipment Purchase Account, and a Commercial Guaranty Agreement executed by Cameron Davies.

Copies of the Loan And Security Agreement, Promissory Note and Guaranty Agreement are attached hereto as <u>Exhibit "B"</u>.

**1.3.**   <u>**Revolving Line of Credit.**</u>   On or about May 5, 2021, Borrower executed and delivered to Lender a Business Loan Agreement for Loan #6001011607 ("Loan #1607"), and Promissory Note in the original principal amount of $1,250,000.00.   Borrower executed and delivered Change In Terms Agreements dated May 5, 2022, July 5, 2022 and October 5, 2022.

The Loan #1607 is secured by a *Commercial Security Agreement* granting a security interest in Borrower's business assets, and *Commercial Guaranty Agreements* executed by Cameron Davies, Mary Kaycee Davies, and Cruising Kitchens, LLC

Copies of the Business Loan Agreement, Promissory Note and Commercial Guaranty Agreements are attached hereto as <u>Exhibit "C"</u>.

The Loan Agreement governing Notes #6001012457 and #6001012473, MSPLF Term Loan #6001007404 and Loan #6001011607 shall collectively be referred to as the Loans, and as used herein, shall mean and include all documents executed and delivered to the Lender which evidence, secure, guarantee or relate to the Loans in any way.

**1.4**   <u>**Loan Documents.**</u>   The Loan Agreements, Notes and Collateral instruments, inclusive of amendments to the same, shall collectively be referred to as the "<u>Loan Documents</u>". The current outstanding principal balance of the Loans, plus interest accrued and accruing, plus late charges shall be referred to as the Borrower's "<u>Obligations</u>".   Pursuant to the terms of the Loan Documents, Borrower granted to the Lender security interests and mortgages in certain real and personal property (both tangible and intangible) described as follows:

i)   Deed Of Trust, Security Agreement And Fixture Filing (14732 Bulverde Road, San Antonio, TX) dated August 25, 2021 by Pledgor, recorded August 26, 2021 as Doc# 20210236812, in the records of the Bexar County Clerk's Office;

ii)   Deed Of Trust, Security Agreement And Fixture Filing (314 Nolan Street, San Antonio, TX) dated August 25, 2021 by Pledgor, recorded August 26, 2021 as Doc# 20210236810, in the records of the Bexar County Clerk's Office;

iii)   Second Deed Of Trust, Security Agreement And Fixture Filing (314 Nolan Street, San Antonio, TX) dated August 25, 2021 by Borrower, recorded August 26, 2021 as Doc# 202210236810, in the records of the Bexar County Clerk's Office;

iv)   Assignment Of Leases And Rents (14732 Bulverde Road, San Antonio, TX), dated August 25, 2021 by Pledgor, recorded August 26, 2021 at Doc# 20120236813, in the records of the Bexar County Clerk's Office;

v)   Assignment Of Leases And Rents (314 Nolan Street, San Antonio, TX), dated August 25, 2021 by Borrower, recorded August 26, 2021 at Doc# 20210236809, in the records of the Bexar County Clerk's Office;

vi)   Second Assignment Of Leases And Rents (314 Nolan Street, San Antonio, TX), dated August 25, 2021 by Borrower, recorded August 26, 2021 at Doc #20210236811, in the records of the Bexar County Clerk's Office; and

vii)    Security Agreement dated August 25, 2021, and related UCC Financing Statements recorded in the records of the Bexar County Clerk's Office.

(cumulatively, the "Collateral").

**1.5**    **Guaranty Agreements.** To induce Lender to fund the Obligations and make the Loans to Borrower, the Guarantors made, executed and delivered the respective Guaranty agreements.

**1.6**    **Default.** The following Events of Default (the "Existing Defaults") exist under the Loans: (i) payment default on the Loans, (ii) payment default by Pledgor Cruising Kitchens, LLC's Main Street Priority Loan Facility dated December 9, 2020, (iii) Borrower's failure to remit payment of ad valorem taxes, (iv) collateral deficiency, and (v) a material adverse change in Borrower's financial condition and Lender's belief that prospects of payment or performance of the indebtedness is impaired.

The enumerated events of default have not been cured and are continuing. Accordingly, the Lender has the present right, pursuant to the terms of the Loan Documents, to exercise its rights and remedies, including, without limitation, (i) the right to impose the default rate of interest, (ii) the right to declare the Borrower's obligations immediately due and payable, and (iii) the right to take whatever action is necessary to collect the amounts due under the Loan Documents.

**1.7**    **Amount Owed.** The amount of principal, interest and late fees due and owing by the Borrower to the Lender under the terms of the Loans are:

| | |
|---|---|
| Note #1(6001012457) | $4,393,109.60 |
| Note #2(6001012473) | $2,458,161.00 |
| MSPLF Term Note(6001007404) | $5,724,599.09 |
| Note #6001011607 | $313,243.88 |

(the "Indebtedness").

**1.8**    **Defaults.** The Borrower hereby acknowledges that it is presently in default under the Loan Documents by, among other things, the Existing Defaults that are set out above. The Borrower acknowledges that the Indebtedness is due and owing to the Lender and that the Existing Defaults do, in fact, still exist and are not being waived by the Lender entering into this Agreement.

**1.9**    **Request of Borrower.** The Borrower has requested that Lender forbear from exercising its rights and remedies related to the Defaults under the Loan Documents for a period of time as specified below in reliance upon the covenants, representations, agreements and warranties of the Borrower and for other good and valuable consideration. The Lender, although under no obligation to do so, is willing to forbear from exercising its rights and remedies under the Loan Documents for a period of time as specified herein, and on the terms and conditions set forth herein.

2.    **TERMS OF FORBEARANCE.**

    2.1    **Forbearance Period**.    Lender agrees to forbear from exercising its rights and remedies under the Loan Documents through December _7th__, 2023 (the "Forbearance Period"), subject to paragraph (b) below and to the terms and conditions set forth herein.

        2.1.1    Termination of Forbearance Period.    The Forbearance Period shall terminate and end on the first of the following to occur, at which time all obligations owed by the Borrower under the Loan Documents shall be paid in full:

(a)    **December _7th__, 2023**; (b) any failure of Borrower to fully comply with any other term, condition or covenant of this Agreement, (c) the Borrower, Pledgor or any Guarantor files for bankruptcy under any chapter of the United States Bankruptcy Code (Title 11, U.S.C.) or takes advantage of any other debtor relief law, or any involuntary petition for bankruptcy under any chapter of the U.S. Bankruptcy Code is filed against any such party or if any legal action of any kind is taken against such party; or (d) except for the Defaults, any default, occurrence or event which would constitute a default under any Loan Document (an "Additional Default"); or
(e) any lien, claim or charge is filed against or with respect to the real or personal property securing the indebtedness owed the Lender and the Borrower fails to cure such event within ten (10) calendar days; or (f) the Borrower initiates any judicial, administrative or arbitration proceeding against Lender or makes any assignment for the benefit of creditors; or (g) the Borrower is in default of any material obligation owed to any other creditor and Borrower fails to cure such event within ten (10) calendar days; or (h) the Borrower fails to comply with any condition or provision of this Agreement.

(b)    **Receiver**:    Borrower has fourteen (14) days from the Effective Date to obtain additional funds to bring the Loans current.    If the Loans are not brought current, Debtor agrees that Erik White of Harney Partners shall be appointed to serve as Private Receiver / Finance Administrator and consents to Mr. White's operational and financial control over the Debtor-companies with full authority to communicate freely with the Lender and with specific authority to proceed to (i) auction the Borrower's assets and (ii) market and sell the real property.

    2.2.    **Forbearance for Defaults Only.**    Lender's forbearance shall be limited solely to the exercise of its rights and remedies arising under the Loan Documents as a result of the Defaults and Lender shall not be deemed to have waived any rights or remedies it may have with respect to any other Event of Default under the Loan Documents (as defined therein) or any breach of this Agreement.

    2.3.    **No New Defaults.**    During the Forbearance Period there shall occur no new Event of Default or event which, with the passage of time or the giving of notice or both, would constitute an Event of Default under any one or more of the Loan Documents or this Agreement.

**2.4.    Notice Requirements Satisfied.**  The Borrower acknowledges that all notice requirements embodied in the Loan Documents and imposed upon the Lender in connection with the Existing Defaults, and/or the exercise of its remedies therefore (together with all applicable cure and/or grace periods) have been satisfied (or shall be deemed to have been satisfied by this Agreement) without exception, and that upon the expiration of the Forbearance Period, Lender shall have the full right and power to immediately and unconditionally exercise all rights and remedies granted to it thereunder without further notice to the Borrower.

**2.5.    Conditional Forbearance.**  The Borrower acknowledges that the Lender's obligations under this Agreement are in the nature of a conditional forbearance only, and that the Lender has made no agreement or commitment to modify or extend the Loan Documents beyond the Forbearance Period, and upon the termination of the Forbearance Period, Lender shall have the immediate and unconditional right to exercise its rights and remedies under the Loan Documents.

**2.6.    Financing Statements.**  The Borrower hereby irrevocably authorizes the Lender at any time and from time to time to file in any Uniform Commercial Code jurisdiction any financing statements and amendments thereto that: (i) indicate the Collateral as all assets of Borrower or words of similar effect, regardless of whether any particular asset comprised in the Collateral falls within the scope of Article 9 of the Uniform Commercial Code, or as being of an equal or lesser scope or with greater detail, (ii) contain any other information required by part 5 of Article 9 of the Uniform Commercial Code for the sufficiency or filing office acceptance of any financing statement or amendment, including (a) whether the Borrower is an organization, the type of organization and any organization identification number issued to the Borrower, and (b) in the case of a financing statement filed as a fixture filing or indicating Collateral as as-extracted collateral or timber to be cut, a sufficient description of real property to which the Collateral relates. Borrower agrees to furnish any of the foregoing information to the Lender promptly upon request. Borrower hereby ratifies its authorization for the Lender to have filed any like initial financing statements or amendments thereto if filed prior to the date hereof.  The Lender may add any supplemental language to any such financing statement as the Lender may determine to be necessary or helpful in acquiring or preserving rights against third parties.

**3.1    Ad Valorem Taxes.**  The Lender will advance funds for payment of ad valorem taxes due and owing on Borrower's mortgaged properties (in excess of $200,000.00).

**3.2    Additional Collateral.**  As consideration for the additional advancement of funds and this Forbearance Agreement, Borrower will grant a second liens on certain real property located in San Antonio, Bexar County, Texas.  Borrower will execute and deliver the following Deed Of Trust instrument(s) at execution of this Agreement for the following two property addresses.

a) 9503 Middlex Drive, San Antonio, Texas 78217

b) 2100 Mannix Drive, San Antonio, Texas 78217

**3.3**     **Expenses.**  The Borrower shall pay (i) all costs and expenses incurred by the Lender in connection with this Agreement, and (ii) all costs and expenses associated with their compliance with this Agreement.

**3.4**     **Consequences.**  If Borrower shall fail to fulfill each obligation of Sections 3.1 through 3.4 through December _7th__, 2023, Lender shall initiate foreclosure and replevin actions on the Loans and associated Collateral.

**4.**     **REPRESENTATIONS AND WARRANTIES.** To induce the Lender to execute, deliver, and perform this Agreement, the Borrower warrants and represents to the Lender that:

**4.1.**     **No Intent to Hinder or Delay.** This Agreement is not being made or entered into with the actual intent to hinder or defraud any entity or person.

**4.2.**     **No Novation of Loan Documents.** This Agreement is not intended by the Parties to be a novation of the Loan Documents and, except as expressly modified herein, all terms, conditions, rights and obligations as set out in the Loan Documents are hereby reaffirmed and shall otherwise remain in full force and effect as originally written and agreed including, without limitation, the financial reporting obligations and all other covenants and the representations and warranties of the Borrower.

**4.3.**     **No Bankruptcy.** No action or proceeding, including, without limitation, a voluntary or involuntary petition for bankruptcy under any chapter of the Federal Bankruptcy Code, has been instituted by or against the Borrower.

**4.4.**     **Promptly Inform Lender of Financial Facts.** During the term of this Agreement, the Borrower agrees to advise the Lender promptly in writing of any and all new information, facts, or occurrences that would in any way materially supplement, contradict, or affect any financial statements, balance sheets, cash flow statements, or similar items furnished to the Lender.

**4.5.**     **Capacity; No Violation.** The Borrower has the full capacity and authority to enter into, execute, deliver and perform this Agreement, and the foregoing does not violate any contractual or other obligation by which the Borrower is bound.

**4.6**     **Pledgor's Consent.** The Pledgor hereby consents to the terms, conditions and provisions of this Agreement and the transactions contemplated by it. The Pledgor hereby reaffirms the full force and effectiveness of the deeds of trust(s) and assignments of leases and rents previously executed.

5.     **GENERAL TERMS AND CONDITIONS.**

     **5.1**    **Governing Law.**  This Agreement and any other documents referred to herein shall be governed by, construed and enforced in accordance with the laws of the State of Oklahoma without regard to conflict of law principles thereof.

     **5.2**    **Benefit and Burden.**  This Agreement shall be binding upon, and inure to the benefit of, the Parties hereto and their respective heirs, executors, administrators, representatives, successors, employees, agents and assigns.

     **5.3**    **Survival of Provisions of Agreement.**  Wherever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law. If any provision of this Agreement shall be invalid, illegal or unenforceable in any respect under any applicable law, the validity, legality and enforceability of the remaining provisions of this Agreement shall not be affected or impaired thereby.

     **5.4**    **Independent Advice of Counsel.**  All Parties represent and declare that in executing this Agreement each relied solely upon their own judgment, belief and knowledge, and the advice and recommendations of their own independently selected counsel, concerning the nature, extent and duration of their rights and claims, and that they have not been influenced to any extent whatsoever in executing the same by any representations or statements governing any matter made by any other Parties hereto or by any person representing any of such other Parties hereto.

     **5.5**    **Authorization.**  The Parties represent and warrant that each are duly and lawfully authorized to enter into this Agreement.

     **5.6**    **Voluntary Agreement.**  All Parties further represent and declare that each has carefully read this Agreement and know the contents thereof and that they sign the same freely and voluntarily.

     **5.7**    **Captions.**  Paragraph titles or captions contained in this Agreement are used for convenience or reference only and are not intended to and shall not in any way enlarge, define, limit, extend or describe the rights or obligations of the Parties or affect the meaning or construction of this Agreement, or any provision hereof.

     **5.8**    **Counterparts.**  This Agreement may be executed in any number of counterparts, each of which, when so executed, shall be deemed an original.  All such counterparts, when taken together, shall constitute but one and the same agreement.

     **5.9**    **Signatures by Facsimile or E-Mail.**  Signatures transmitted via facsimile or by e-mail in portable document format (PDF) of an executed counterpart of this Agreement by any Party shall be deemed to constitute due and sufficient delivery of such counterpart.  Such counterpart shall be deemed to be an original counterpart, shall be binding upon the Parties hereto and shall be as effective as originals.

**5.10** **No Construction Against Any Party.** Each Party is cooperating in the drafting and preparation of this Agreement. Hence, in any construction being made of this Agreement, the same shall not be construed either for or against any Party.

**5.11** **Post Default Waivers.** Borrower, Pledgor and Guarantors acknowledge the Existing Defaults and, as a result, now waive, pursuant to Section 1-9-624 of the Uniform Commercial Code of the State of Oklahoma ("UCC"), its and his right to require disposition of collateral under subdivision (e) of Section 1-9-620 of the UCC, its right to receive notification of any liquidation, settlement or other disposition of collateral pursuant to Section 1-9-611 of the UCC and its right to redeem collateral pursuant to Section 1-9-623 of the UCC.

**5.12** **Release.** In consideration of the agreements set forth in this Agreement, the Borrower, the Pledgor, the Guarantors and their heirs, personal representatives, predecessors, successors and assigns (individually and collectively, the "Releasors"), hereby fully release, remise, and forever discharge Lender, the parent of Lender and all other affiliates and predecessors of Lender, and all past and present officers, directors, agents, employees, servants, partners, shareholders, attorneys and managers of Lender, the parent of Lender, and all other affiliates, and predecessors of Lender and all of their respective heirs, personal representatives, predecessors, successors and assigns ("Lender-Related Parties"), for, from, and against any and all claims, liens, demands, causes of action, controversies, offsets, obligations, losses, damages and liabilities of every kind and character whatsoever, including, without limitation, any action, omission, misrepresentation or other basis of liability founded either in tort, contract or equity and the duties arising thereunder (collectively "Claims"), that the Releasors, or any of them, has had in the past, or now has, whether known or unknown, whether asserted or unasserted, by reason of any matter, cause or thing set forth in, relating to or arising out of, or in any way connected with or resulting from, the Loan Documents or any real or personal property now or at any time securing the Indebtedness. It is the express intent of the Lender and Releasors that the release and discharge set forth in this Section be construed as broadly as possible in favor of Lender-Related Parties so as to foreclose forever the assertion by any of Releasors of any Claims, as defined above, against Lender-Related Parties or any of them.

**5.13** **Further Amendments.** Any future waiver, alteration, amendment or modification of any of the provisions of the Loan Documents or this Agreement shall not be valid or enforceable unless in writing and signed by all applicable parties, it being expressly agreed that neither the Loan Documents, nor this Agreement can be modified orally, by course of dealing or by implied agreement. Moreover, any delay by Lender in enforcing its rights after an event of default shall not be a release or waiver of the event of default and shall not be relied upon by the Borrower or Guarantor as a release or waiver of the default. Except as specifically provided in this Agreement, no express or implied consent to any further forbearance or modifications involving any of the matters set forth in this Agreement or otherwise shall be inferred or implied by Lender's execution of this Agreement or any other action of Lender.

**5.14** **Integration.** The Loan Documents, including this Agreement, (a) integrate all the terms and conditions mentioned in or incidental to the Loan Documents; (b) supersede all oral negotiations and prior and other writings with respect to their subject matter; and (c) are intended by the Parties as the final expression of the agreement with respect to the terms and conditions set forth

in those documents, including this Agreement, and as the complete and exclusive statement of the terms agreed to by the Parties.  If there is any conflict between the terms, conditions and provisions of this Agreement and those of any other agreement or instrument, including the other Loan Documents, the terms, conditions and provisions of this Agreement shall prevail.  No supplement, modification or amendment of this Agreement or the other Loan Documents shall be effective unless in writing and signed by the Parties being bound thereby.  Unless modified by this Agreement, the terms, conditions and requirements of the Loan Documents shall remain in effect.

   **5.15**   **Notices.**  All notices, requests, demands, consents or other communications under this Agreement shall be given in writing and shall be delivered via first class mail, postage prepaid, and electronic transmission, as follows:

| | |
|---|---|
| To Lender: | Blue Sky Bank |
| | 3353 East 41st Street |
| | Tulsa, Oklahoma 74135 |
| | Attention:     Barry Gibson |
| | Via Electronic Mail:  bgibson@bluesky.bank |
| | |
| With copy to: | Garry M. Gaskins, Esq. |
| | Via Electronic Mail:  Garry.Gaskins@Drummond.Law |
| | |
| To Private Receiver: | Erik White |
| | Harney Partners |
| | Via Electronic Mail:  ewhite@harneypartners.com |
| | |
| To Borrower: | Davies Enterprises, LLC |
| | 1314 East Sonterra Blvd. |
| | San Antonio, Texas 78258 |
| | Attention:     Cameron Davies |
| | Via Electronic Mail:  cameron@cruisingkitchens.com |
| | |
| To Pledgor/Guarantor: | Cruising Kitchens, LLC |
| | 1314 East Sonterra Blvd. |
| | San Antonio, Texas 78258 |
| | Attention:     Cameron Davies |
| | Via Electronic Mail:  cameron@cruisingkitchens.com |
| | |
| To Guarantors: | Cameron Davies |
| | Mary K. Davies |

   **5.16**   **Time is of the Essence.**  The Parties agree that time is of the essence in each provision hereof.

**THIS AGREEMENT** is executed effective the date first above written.

BORROWER:                          DAVIES ENTERPRISES, LLC

                                   By: _____
                                        Cameron Davies, Manager

PLEDGOR/GUARANTOR:                 CRUISING KITCHENS, LLC

                                   By: _____
                                        Cameron Davies, Manager

GUARANTORS:

                                   _____
                                   Cameron Davies, individually

                                   _____
                                   Mary K. Davies, individually

LENDER:                            BLUE SKY BANK

                                   _____
                                   By:    Barry Gibson, Vice President

EXHIBIT
F

NO. 2023-CI-25557

| | | |
|---|---|---|
| **DAVIES ENTERPRISE, LLC, CRUISING** | § | **IN THE DISTRICT COURT** |
| **KITCHENS, LLC, CAMERON DAVIES** | § | |
| **And MARY K. DAVIES** | § | |
| *Plaintiffs* | § | |
| | § | |
| **v.** | § | **438th JUDICIAL DISTRICT** |
| | § | |
| **BLUE SKY BANK and MARK C.** | § | |
| **TAYLOR** | § | |
| *Defendant* | § | **BEXAR COUNTY, TEXAS** |

<u>TEMPORARY RESTRAINING ORDER</u>

On December 4, 20023, the Plaintiffs Original Petition for Injunctive Relief and Damages filed by Plaintiffs, **DAVIES ENTERPRISE, LLC, CRUISING KITCHENS, LLC, CAMERON DAVIES AND MARY K. DAVIES,** seeking a Temporary Restraining Order was heard before this Honorable Court.

Based upon the pleadings, records, documents filed by counsel, and the arguments of counsel at the hearing, IT CLEARLY APPEARS:

A. The unless Defendants, Blue Sky Bank and Mark C Taylor, Substitute Trustee, are immediately restrained from proceeding with a non-judicial foreclosure of the real property and improvements described on the Exhibits to the three (3) Notices of Substitute Trustee's Sale attached to Plaintiffs Original Petition for Injunctive Relief and Damages as Exhibits A, B and C, Defendants, Blue Sky Bank and Mark C Taylor, will proceed with the non-judicial foreclosure sale on December 5th, 2023 beginning at 10:00 a.m. which is before notice and a hearing on Plaintiff's request for a temporary injunction can be held.

B. Plaintiffs will suffer irreparable harm if Defendants, Blue Sky Bank and Mark C. Taylor, are not immediately restrained because no adequate remedy at will give Plaintiffs complete, final relief because once the non-judicial foreclosure sale is complete it is final.

DOCUMENT SCANNED AS FILED

IT IS THEREFORE ORDERED, ADJUGED AND DECREED that Defendants, BLUE SKY BANK and MARK C TAYLOR, and all of Defendants officers, agents, servants, employees, successors and assigns, and the attorneys are ORDERED to immediately cease and desist from proceeding with the non-judicial foreclosure sale of the real property and improvements previously noticed and scheduled for December 5, 2023 beginning at 10:00 a.m. from the date of entry of this order until fourteen (14) days thereafter, or until further order of this Court.

IT IS FURTHER ORDERED ADJUDGED AND DECREED that Plaintiff's request for a temporary injunction is set to be heard on December 18th, 2023 at 9:00 a.m. in the Presiding District Courtroom (Room 109/ 1st floor) located in Bexar County Courthouse, 100 Dolorosa, San Antonio, Texas 78205. Defendants, Blue Sky Bank and Mark C Taylor, are commanded to appear at that time and show cause, if any exist, why a temporary injunction should not be issues against said Defendants.

At the designated time above, report in-person to the Presiding Civil District Courtroom (Room 109) located at the Bexar County Courthouse. 100 Dolorosa, San Antonio, Texas 78205. If you plan to introduce documents and evidence during your hearing, you must prepare to share them on Zoom using personal computer or smart device equipped with a wireless modem or air card and Zoom app or Zoom software installed, Wi-Fi may not be available at court.

1.  Time Announced is 2 hours
2.  Telephone number and emails for all attorneys or self-represented litigants

Mark C Taylor Mark.Taylor@hklaw.com

Blue Sky Bank c/o Lydia Gonzales 13750 San Pedro, Suite 275, San Antonio, Texas 78232.

The Clerk of the above-entitled Court shall issue a temporary restraining order in conformity with the law and the rems of this order upon the filing by Plaintiffs of the bond hereinafter set.

This Order shall not be effective until Plaintiff's deposit with the Clerk, a bond in the amount of $ _1000⁰⁰_____ in conformity with the law.

**DEC 0 4 2023**

SIGNED and ENTERED on _____ at _____

_____
Judge Presiding

Respectfully submitted,

Rosie Alvarado
Presiding Judge
438th Judicial District
Bexar County, Texas

GRANSTAFF, GAEDKE & EDGMON, P.C.
5535 Fredericksburg Rd., Suite 110
San Antonio, Texas 78229
Telephone: (210) 348-6600
Facsimile: (210) 366-0892
Email: dstrolle@caglaw.net

By: _____
David P. Strolle, Jr.
State Bar No. 19408700

**ATTORNEY FOR PLAINTIFFS**